IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARVIN G. JOHNSON,

    Petitioner,

v.

DAVID BOBBY, Warden,

    Respondent.

Case No. 2:08-cv-55
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this

Court a habeas corpus action under 28 U.S.C. §2254. This matter is before the Court upon

Respondent's motion to dismiss procedurally defaulted claims (Doc. # 15) and Petitioner's

memorandum in response (Doc. # 18). Also before the Court, within Petitioner's memorandum

in response, is Petitioner's motion for discovery. (Doc. # 18.)

I. Factual History

The Supreme Court of Ohio set forth the facts and procedural history of this case in *State*

*v. Johnson*, 112 Ohio St. 3d 210 (2006):

> Marvin G. Johnson appeals from his convictions entered pursuant to jury
> verdicts finding him guilty of the aggravated murder of 13-years-old Daniel Bailey
> and the rape and aggravated robbery of Tina Bailey, Daniel's mother, and from
> the trial court's imposition of the death penalty.
>
> Johnson raises twenty-three propositions of law; however, after review,
> none are well taken, and pursuant to our independent review of the death sentence
> in accordance with R.C. 2929.05(A), we affirm these convictions and the sentence
> imposed.
>
> The record reveals that Tina Bailey lived on Stewart Avenue in
> Cambridge, Ohio. Marvin Johnson first met her in 1998 or 1999, and he
> eventually began living with her on Stewart Avenue. Between 2000 and 2002, an

Alabama court incarcerated him for violating parole in connection with a 1988 arson conviction in that state. Upon his release, however, Johnson returned to Ohio and resided with Tina until July 2003.

During the time Johnson lived with Tina, his use of crack cocaine became problematic. Frequently, Johnson did not come home on payday but would instead disappear for a night or two to spend his paycheck on crack. And, due to his drug habit, he only reluctantly contributed money to the household. He also had a strained relationship with Tina's two children, especially Daniel, because he resented Tina's generosity toward them.

Both Johnson and Tina were friends of Utelius "Eric" Barnes. Johnson occasionally became jealous of Barnes, and he suspected that Tina and Barnes had relations.

On July 3, 2003, after several weeks of anger and tension, Tina told Johnson to leave. Though she later allowed him back into her house two or three times, she made it clear to him that he did not have permission to enter the house in her absence.

Nevertheless, twice during the two or three weeks before August 15, 2003, Johnson entered her house while she was at work. On the second occasion, she returned to find him there, and she ordered him to leave. Johnson refused, and he dared her to call the police. As they argued, according to Tina's trial testimony, Johnson "pulled his arm back," as if to strike her, and he warned that she "shouldn't be surprised if [she] found [her] house in ashes." Eventually, he voluntarily left her home.

Tina worked as a nurse at the Southeastern Ohio Regional Medical Center, a hospital in Cambridge, Ohio, and during the summertime, she often worked the 11:00 p.m. to 7:00 a.m. shift. Her son, Daniel, who would stay at home alone while Tina worked, customarily stayed up until 4:00 or 5:00 a.m. and would phone her at work to say goodnight before he went to bed. On the night of August 14, 2003, Tina worked the late shift while Daniel stayed at home alone, and, in keeping with his habit, he phoned his mother in the early morning hours of August 15 to say goodnight before he went to bed.

That same evening, Johnson stayed at the home of Lisa Wilson, an acquaintance of his and a drug dealer. David Jones, another Wilson acquaintance, also spent the night at Wilson's home. At midnight, Wilson went on what she described as a "crack run," and she testified that she saw Johnson asleep on her couch when she left. When she returned at 3:00 a.m., she remembered seeing him in the same position, and, at 3:30 a.m., when she left a second time, she also

noticed him there.

Around 5:30 a.m., when Wilson returned, she did not see Johnson but learned from David Jones that he "had gotten up about 5:00." According to Wilson, Jones also told her that "ten minutes after I had left at 3:30," he heard Johnson "rummaging through a bag in the kitchen" before he left. The bag contained old shoes that Wilson had collected.

Sometime after Daniel's phone call to his mother saying goodnight, Johnson beat 13-year-old Daniel Bailey to death. The presence of blood spatters in the living room of the Bailey home established that the beating occurred there.

According to Dr. Charles Lee, the physician who performed the autopsy, Daniel suffered multiple skull fractures, bruising on his face, and two long lacerations on his head caused by five or six blows from a blunt instrument, possibly a two-by-four. The blows caused Daniel's brain to swell within the skull cavity until his breathing stopped. In such cases, according to Dr. Lee, death "typically takes anywhere from a couple to several minutes."

After beating Daniel, Johnson gagged and hogtied him with shoelaces taken from the bag in Lisa Wilson's home. According to Dr. Lee, Daniel's head injuries occurred before Johnson tied his hands and feet. Dr. Lee also concluded that Daniel was still alive when he was tied up: "Yes, there's no question he was alive. *** [T]he skin reaction, the red hyperemia next to the bindings around his wrists shows that *** the heart was still pumping while these tight bindings were around the wrists.

After beating Daniel and tying him up, Johnson carried him to the basement of the Bailey home.

Tina returned from work around 8:00 a.m. and spoke briefly with Utelius Barnes, as he prepared to start his second day of work on the remodeling project at her home. The two went inside and discussed the work for another 20 minutes. Tina then went upstairs.

When she reached the top of the stairs, she saw Johnson coming out of the bathroom wearing an olive-colored T-shirt and carrying a knife in his hand. As Johnson held the knife up in front of her, Tina asked him to put it down, and said, "where's Daniel, what did you do to Daniel [?]"

Johnson walked Tina into her bedroom. When Tina began to hyperventilate, Johnson told her to "calm down" and to "keep quiet" because Barnes and another home-remodeler were nearby. According to Tina, Johnson

warned that if she did not obey, "he couldn't guarantee that Daniel would be okay." She testified that Johnson told her that Daniel "would be okay," provided that she complied with three demands: first, Johnson wanted to watch Barnes and Tina have sex; second, he wanted to have sex with Tina "one last time" himself; and, third, he wanted $ 1,000. Tina asked Johnson why he was doing this, and he replied, "this [is] the only way I know how to hurt you."

She disrobed and performed oral sex on him, and he placed his fingers in her vagina. He continued to hold the knife during these acts. Tina testified that she would not have done this had she not been afraid for Daniel or if Johnson had not held the knife.

Afterward, according to Tina, Johnson told her to "get up and get dressed, we ha[ve] to go to the bank." She got dressed and walked out of the bedroom ahead of Johnson, who still held the knife. She again asked him to put it down, and he returned to the bedroom and placed the knife under the mattress on the bed. Police later recovered it there with Johnson's thumbprint on it.

Johnson persuaded Tina to drive him to her bank where, using the drive-through window, she withdrew $ 1,000 and handed it to him. Bank records and the teller's testimony reveal that this transaction occurred between 8:48 and 8:50 a.m. on August 15. Johnson then had Tina drive him to the parking lot of the local Elks Lodge, and he told her to go home and said he would call to tell he what he had done with Daniel.

Tina went home and found Daniel in the basement behind her washing machine, gagged, tied and lying face down in a blanket. She tried to remove the gag and tried to revive him before she ran upstairs and asked one of the home-remodelers to call the police.

Meanwhile, Johnson went to the home of his friend, Matthew H[a]skett, where he took off his bloodstained shirt, left it on the floor, and borrowed a clean one from Heskett. He then called a taxi and left for Zanesville.

While Johnson was en route to Zanesville, the Cambridge police learned of Johnson's departure and radioed the Zanesville police to look for the cab.

Patrolman Mike Choma of the Zanesville police spotted the cab and saw Johnson walking away from it. Choma and another officer approached Johnson and ordered him to the ground. However, Johnson fled to an abandoned park and hid the money that he had taken from Tina. The police later recovered both the money and the bank envelope.

4

The police also recovered Johnson's bloody shirt from the Haskett residence and sent it to the Bureau of Criminal Identification and Investigation ("BCI") for analysis. BCI found the bloodstains on the shirt to be consistent with the DNA profile of Daniel Bailey. According to BCI, the chance of finding the same DNA profile in a random member of the population is one in more than 320 trillion.

The Guernsey County Grand Jury indicted Johnson on two counts of aggravated murder: Count 1, pursuant to the felony-murder provision in R.C. 2903.01(B), and Count 2, pursuant to the "prior calculation and design" provision in R.C. 2903.01(A). Each aggravated-murder count carried a death penalty specification charging Johnson as the principal offender in felony-murder, pursuant to R.C. 2929.04(A)(7). The indictment also contained counts for kidnapping, rape, and aggravated robbery. The jury convicted him of all counts and all specifications, and, following the jury's recommendation, the trial judge sentenced him to death.

*Johnson*, 112 Ohio St. 3d at 210-13; App. Vol. 6, at 134-36.

## II. State Court History

### A. Direct Appeal

Represented by attorneys Dennis L. Sipe and Kathleen McGarry–Petitioner had been represented at trial by attorneys Andrew J. Warhola, Jr. and Jack A. Blakeslee–Petitioner appealed his conviction and death sentence directly to the Supreme Court of Ohio. In a merit brief filed on January 24, 2005, Petitioner raised the following propositions of law:

Proposition of Law No. I: A trial court must conduct a reasonable inquiry when an indigent defendant, prior to trial, requests the appointment of different counsel.

Proposition of Law No. II: A trial court is constitutionally obligated to conduct an evidentiary hearing concerning a defendant's competency when there is sufficient indicia in the record to call into doubt the defendant's competency to stand trial.

Proposition of Law No. III: A trial court is precluded from repeatedly interrupting the proceedings in such a manner that it conveys to the jury his or her belief in one party's position.

Proposition of Law No. IV: The trial court must allow for complete and thorough

questioning in voir dire and must excuse those jurors who cannot be fair and impartial. A capital defendant's conviction and death sentence must be overturned where he was denied his right to a fair and impartial jury.

Proposition of Law No. V: When a juror indicates by their answers that they cannot be a fair or impartial juror that juror should be excused for cause.

Proposition of Law No. VI: A prospective juror should be removed for cause when he or she discloses by their answers that they cannot be a fair and impartial juror or if the court has any doubt as to the juror's being entirely unbiased.

Proposition of Law No. VII: A trial court cannot order a criminal defendant to wear a stun belt absent the conducting of a hearing at which the prosecution demonstrates the need for the restraint.

Proposition of Law No. VIII: Victim character evidence is inadmissible in the guilt-innocence phase of a capital trial.

Proposition of Law No. IX: Law enforcement agents may not employ an undercover agent to solicit inculpatory statements from an incarcerated defendant after formal proceedings should have been instituted.

Proposition of Law No. X: After an outburst by a spectator, and upon request of the defense, the trial court should voir dire the jury to insure that they have not been prejudiced by the remark.

Proposition of Law No. XI: A defendant's right under the due process clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment are violated when a trial court prohibits defense counsel from reviewing police narratives.

Proposition of Law No. XII: When an indictment charges a defendant with aggravated murder, the trial court should not charge the jury as to the "gist of the offense" portion of the definition of "purposely."

Proposition of Law No. XIII: A defendant cannot be found to having [sic] kidnapped if either the victim died prior to the restraint or the defendant inflicted serious physical harm prior to the imposition of restraints.

Proposition of Law No. XIV: When the State fails to present sufficient evidence to sustain a conviction for rape or aggravated robbery or when those convictions are against the weight of the evidence, the conviction cannot stand.

Proposition of Law No. XV: A rape and robbery of victim two which occurs hours after the aggravated murder of victim one cannot be used to support the felony of felony murder in an aggravated murder charge or a capital specification.

Proposition of Law No. XVI: A trial court in a case involving the offense of rape should charge the jury as to sexual battery when there is evidence that the coerce involved may not have constituted force.

Proposition of Law No. XVII: When a jury is misled throughout a capital trial concerning the aggravating circumstance that makes the defendant death eligible, the death sentence cannot stand.

Proposition of Law No. XVIII: In order to establish an effective waiver of the right to counsel, a trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right.

Proposition of Law No. XIX: A defendant is deprived of effective assistance of counsel when the attorney appointed to represent him fails to lodge the appropriate objections, makes prejudicial comments and engages in communications, which violate the attorney/client privilege.

Proposition of Law No. XX: When a trial court opinion, filed pursuant to Ohio Rev. Code Ann. § 2929.03(F), fails to indicate the court engaged in a proper weighing process the appropriate remedy is to vacate the death penalty.

Proposition of Law No. XXI: An appellate court can grant relief based upon cumulative error.

Proposition of Law No. XXII: This court cannot affirm a death [sentence], when it is not supported by the facts adduced in the court below.

Proposition of Law No. XXIII: Ohio's death penalty law is unconstitutional. Ohio Rev. Code Ann. §§ 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 do not meet the prescribed constitutional requirements and are unconstitutional on their face and as applied to Marvin Johnson. U.S. Const. Amends. V, VI, VIII, and XIV; Ohio Const. Art. I, §§ 2, 9, 10, and 16. Further, Ohio's death penalty statute violates the United States' obligations under international law.

(App. Vol. 5, at 57-227.) On December 13, 2006, the Ohio Supreme Court issued a decision overruling Petitioner's propositions of law and finding after independent review that Petitioner's

7

death sentence was appropriate and proportional. *Johnson*, 112 Ohio St. 3d 210; App. Vol. 6, at 128. Petitioner filed a motion for reconsideration on December 26, 2006 arguing that his death sentence was based on an invalid aggravating circumstance and that the prosecution produced insufficient evidence that Petitioner kidnapped the decedent. (App. Vol. 6, at 163-175.) The Ohio Supreme Court summarily denied the motion for reconsideration on February 7, 2007. (*Id.* at 176.)

Petitioner sought a writ of certiorari in the United States Supreme Court on May 4, 2007. (*Id.* at 242.) The United States Supreme Court denied certiorari on October 1, 2007. (*Id.* at 243.)

B. Application for Reopening Pursuant to S.Ct.Prac.R. XI, Section 5

Represented by Assistant State Public Defenders Kimberly S. Rigby and Pamela Prude-Smithers, on March 31, 2007, Petitioner filed an application for reopening of his direct appeal in the Ohio Supreme Court–the procedure in Ohio for raising claims of ineffective assistance of appellate counsel. He argued that his appellate attorneys performed unreasonably and to his prejudice when they failed to raise the following meritorious issues:

> Proposition of Law No. I: A defendant's right to confront a witness under the Confrontation Clause of the Sixth Amendment to the United States Constitution is violated when the State introduces and the trial court admits hearsay statements of an available witness through the testimony of another witness. U.S. Const. VI and XIV.

> Proposition of Law No. II: A capital defendant is denied the right to the effective assistance of trial counsel when trial counsel fails to object to the admission of improper hearsay evidence. U.S. Const. VI and XIV.

> Proposition of Law No. III: Johnson was sentenced to more than minimum, concurrent sentences by the trial court, despite the fact that the State must prove the statutory criteria for increasing the sentence to a jury beyond a reasonable doubt. U.S. Const. V, VI, and XIV.

(App. Vol. 6, at 203-12.) Subsequently, on April 25, 2007, Petitioner withdrew the third proposition of law set forth above. (*Id.* at 239.) The Ohio Supreme Court summarily denied the application on June 25, 2007. (*Id.* at 216.)

C. Postconviction Proceedings Pursuant to O.R.C. § 2953.21

Represented by Assistant State Public Defenders Kimberly S. Rigby and Pamela Prude-Smithers, Petitioner initiated postconviction proceedings on January 13, 2005 by filing a motion asking the state trial court to re-set the deadline for filing his postconviction action, based on the absence from the trial record of juror questionnaires and court records concerning Lisa Wilson. (App. Vol. 7, at 7, at 21.) Petitioner argued that the statutory time limit for the filing of his postconviction action should be tolled until the record was complete. The trial court agreed and issued a judgment entry on January 19, 2005 ordering that the 180-day period for the filing of Petitioner's postconviction action would commence upon the receipt by the Clerk of the Supreme Court of Ohio of the complete and full record of Petitioner's trial proceedings. (*Id.* at 26.)

On May 16, 2005, Petitioner filed a motion in the state trial court for funds to conduct DNA testing on the rape kits taken from Tina Bailey and Petitioner. (*Id.* at 39.) The State filed a memorandum in opposition on June 9, 2005. (*Id.* at 50.) On August 19, 2005, the trial court issued an entry denying Petitioner's motion. (App. Vol. 8, at 55.)

On July 20, 2005, Petitioner filed his postconviction action raising the following grounds for relief:

> First Ground for Relief: Petitioner Johnson's convictions and sentences are void or voidable because he was denied the effective assistance of counsel at the trial phase of his capital trial by his trial counsel's failure to properly voir dire the jurors that actually sat on Petitioner's panel. Therefore, Petitioner's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United

9

States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

Second Ground for Relief: Petitioner Johnson's convictions and sentences are void and/or voidable because at least one of the jurors on Petitioner's sentencing jury shifted the burden of proof from the prosecution and placed it on the defense during the mitigation phase of Petitioner's trial. This is in direct contradiction to O.R.C. 2929.03, and therefore, Petitioner's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, under Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution, and under O.R.C. 2929.03.

Third Ground for Relief: Petitioner Johnson's conviction and sentences are void or voidable because he was denied effective assistance of counsel during his capital trial as guaranteed by the Sixth and Fourteenth Amendment[s] to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668 (1984) and Article I, Sections 2, 5, 9, 10, 16, and 20 of the Ohio Constitution. As a result of counsel's ineffectiveness, Johnson was prejudiced.

Fourth Ground for Relief: Petitioner's convictions and sentence are void or voidable because he was denied effective assistance of counsel during his capital trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and *Strickland v. Washington*, 466 U.S. 668, 673 (1984). As a result of counsel's ineffectiveness, Petitioner was prejudiced.

Fifth Ground for Relief: Petitioner's death sentence is void or voidable because his trial counsel unreasonably and prejudicially discouraged family members living in Alabama from traveling to Ohio to attend and testify at the penalty phase of Petitioner's trial. By discouraging his family from traveling to Ohio, the sentencing jury was deprived of relevant mitigating evidence that would have been given weight and effect against imposing death. Therefore, Petitioner Johnson's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution and he was prejudiced.

Sixth Ground for Relief: Petitioner's death sentence is void or voidable because he received the ineffective assistance of counsel during the mitigation phase of his capital trial. Defense counsel were ineffective for failing to conduct an adequate and reasonable investigation of Petitioner's background, and as a result, crucial mitigating evidence was not presented to the jury. Because of counsel's omissions, Petitioner Johnson was denied his rights as guaranteed under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 5, 9, 10, 16, [and] 20 of Article I of the Ohio Constitution.

10

Seventh Ground for Relief: Petitioner's death sentence is void or voidable because his counsel did not provide him with effective assistance during the mitigation phase of his capital trial. Due to the defense counsel's failure to reasonably investigate and present available evidence to mitigate the sentence of death after Petitioner was convicted of aggravated murder. Petitioner was denied his rights as guaranteed under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 5, 9, 10, 16, [and] 20 of Article I of the Ohio Constitution. *See also Strickland v. Washington*, 466 U.S. 668, 673 (1984); *Williams v. Taylor*, 529 U.S. 362, 391 (2000); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003).

Eighth Ground for Relief: Petitioner Johnson's conviction and sentence are void or voidable because his trial counsel failed to present adequate expert psychological assistance in his defense during the capital trial and mitigation hearing. This action by the defense attorneys violated Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

Ninth Ground for Relief: Petitioner's conviction and sentence are void or voidable because his trial counsel failed to present competent expert psychological evidence in the penalty phase of his capital trial. This violated Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

Tenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to reasonably investigate, prepare, and present mitigating evidence regarding Petitioner's character, history, and background, namely the culture in which he raised in Wilcox County, Alabama. Petitioner Johnson's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

Eleventh Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to reasonably investigate, prepare, and present mitigating evidence regarding Johnson's character, history, and background, namely that he may have suffered from neurological deficits due to his extensive history of substance abuse. Petitioner Johnson's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

11

Twelfth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to reasonably investigate, prepare, and present mitigating evidence regarding Johnson's character, history, and background, namely that he suffered from Type 2 diabetes. Petitioner Johnson's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

Thirteenth Ground for Relief: Petitioner's judgment and sentences are void or voidable because his trial attorneys failed to present evidence to support their argument that the death penalty is applied in an arbitrary manner. As a result, Petitioner was denied his right to effective assistance of counsel, due process, and a fair trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20, of Article I of the Ohio Constitution.

Fourteenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his death sentence was disproportionate to similarly situated capital defendants in Guernsey County, Ohio. As a result, Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and §§ 2, 5, 9, 10, 16, and 20 of Article I of the Ohio [Constitution].

Fifteenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because the death penalty law permits the imposition of capital punishment in an arbitrary, capricious, and discriminatory manner due to the uncontrolled discretion afforded elected Guernsey County prosecutors in determining when to seek the death penalty. The arbitrary, capricious, and discriminatory application of the death penalty in Guernsey County is obvious from the analysis of Guernsey County's indictments and case dispositions. As a result, Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and §§ 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution are violated.

Sixteenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because the statutory proportionality reporting system for death penalty cases is inaccurately and ineffectively processed in Guernsey County, Ohio. Consequently, Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and §§ 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution are violated.

Seventeenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because Petitioner Johnson will be unable to rationally understand the

connection between his acts and the punishment to be inflicted. This will deny Petitioner's rights under the Eighth and Fourteenth Amendment[s] to the United States Constitution.

Eighteenth Ground for Relief: Petitioner's conviction and sentence are void or voidable because the death penalty as administered by lethal injection in the State of Ohio violates his constitutional rights to protection from cruel and unusual punishment and to due process of law. U.S. Const. Amends. VIII, IX, XIV; Sections 1, 2, 5, 9, 10, 16, and 20, Article I of the Ohio Constitution; *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 281 (1998) (five justices holding that the Due Process Clause protects the "life" interest at issue in capital cases).

Nineteenth Ground for Relief: Petitioner's judgment and sentence are void or voidable because, assuming *arguendo* that none of the grounds for relief in his post-conviction petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions presented in the petition's foregoing paragraphs have been prejudicial and have denied Petitioner his rights secured by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

(App. Vol. 7, at 77.)

On July 20, 2005, Petitioner filed in the Ohio Supreme Court an application for disqualification of Guernsey County Common Pleas Judge David A. Ellwood from Petitioner's postconviction proceeding. (App. Vol. 8, at 1.) Chief Justice Moyer denied Petitioner's application in a judgment entry dated July 25, 2005. (*Id.* at 9.)

On July 29, 2005, Petitioner filed his first amendment to his postconviction action withdrawing the previous nineteenth ground for relief; adding grounds nineteen and twenty; replacing grounds thirteen, fourteen, fifteen, and sixteen with new grounds designated by the same numbers; and adding exhibit BB to support the new thirteenth, fourteenth, fifteenth, and sixteenth grounds for relief. (*Id.* at 13.) The new grounds for relief were as follows:

Thirteenth Ground for Relief: Petitioner's judgment and sentence are void or voidable because his trial attorneys failed to present evidence to support their

13

argument that the death penalty is applied in an arbitrary manner. As a result, Petitioner was denied his right to effective assistance of counsel, due process, and a fair trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20, of Article I of the Ohio Constitution.

Fourteenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his death sentence was disproportionate to similarly situated capital defendants in Guernsey County, Ohio. As a result, Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and §§ 2, 5, 9, 10, 16, and 20 of Article I of the Ohio [Constitution were violated].

Fifteenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because the death penalty law permits the imposition of capital punishment in an arbitrary, capricious, and discriminatory manner due to the uncontrolled discretion afforded elected Guernsey County prosecutors in determining when to seek the death penalty. The arbitrary, capricious, and discriminatory application of the death penalty law in Guernsey County is obvious from the analysis of Guernsey County's indictments and case dispositions. As a result, Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and §§ 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution are violated.

Sixteenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because the statutory proportionality reporting system for death penalty cases is inaccurately and ineffectively processed in Guernsey County, Ohio. Consequently, Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and §§ 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution are violated.

Nineteenth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to present competent expert evidence regarding Petitioner's drug abuse during the penalty phase of his capital trial in violation of Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

Twentieth Ground for Relief: Petitioner's judgment and sentence are void or voidable because, assuming *arguendo* that none of the grounds for relief in his postconviction petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions presented in the petition's foregoing paragraphs have been prejudicial and have denied Petitioner his rights

secured by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

(App. Vol. 8, at 13.)

On August 2, 2005, Petitioner filed his second amendment to his postconviction action to withdraw ground twenty, add grounds twenty and twenty-one, and replace the previously filed Exhibit K with a new Exhibit K. (App. Vol. 8, at 33.) The new grounds for relief were as follows:

Twentieth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to reasonably investigate, prepare, and present mitigating evidence regarding Johnson's character, history, and background, namely that he may have neurological problems caused by his extensive history of substance abuse. Petitioner Johnson' rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

Twenty-first Ground for Relief: Petitioner's judgment and sentence are void or voidable because, assuming *arguendo* that none of the grounds for relief in his postconviction petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions presented in the petition's foregoing paragraphs have been prejudicial and have denied Petitioner his rights secured by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

(App. Vol. 8, at 33.)

On August 5, 2005, Petitioner filed his third amendment to his postconviction action to replace his previously filed twentieth and twenty-first grounds for relief with the following new twentieth and twenty-first grounds for relief:

Twentieth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to reasonably investigate, prepare, and present mitigating evidence regarding Johnson's character, history, and

15

background, namely that he may have neuropsychological problems caused by his extensive history of substance abuse. Petitioner Johnson's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

Twenty-first Ground for Relief: Petitioner's judgment and sentence are void or voidable because, assuming *arguendo* that none of the grounds for relief in his postconviction petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions presented in the petition's foregoing paragraphs have been prejudicial and have denied Petitioner his rights secured by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

(App. Vol. 8, at 40.) It appears from the record that the state trial court accepted and considered

all three amendments to Petitioner's postconviction action. (App. Vol. 8, at 46.)

On August 24, 2005, Petitioner filed a motion for funds for a "PET" scan (Positron

Emission Tomography)–*i.e.*, a detailed 3-D image of healthy and/or injured areas of the human

brain. (App. Vol. 8, at 57.) On the same day, Petitioner filed a fourth amendment to his

postconviction action to replace the previously filed eleventh, twelfth, twentieth, and twenty-first

grounds for relief with new grounds designated with the same numbers and to add exhibits DD,

EE, FF, GG, HH, II, JJ, KK, and LL. The new grounds for relief were as follows:

Eleventh Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to reasonably investigate, prepare, and present mitigating evidence regarding Johnson's character, history, and background, namely that he may have suffered from neurological deficits due to his extensive history of substance abuse, a childhood head injury, and hyperglycemia-inducted seizures. Petitioner Johnson's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

Twelfth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to reasonably investigate, prepare, and

16

present mitigating evidence regarding Johnson's character, history, and background, namely that he suffered from Type 2 diabetes. Petitioner Johnson's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

Twentieth Ground for Relief: Petitioner's convictions and sentence are void or voidable because his trial counsel failed to reasonably investigate, prepare, and present mitigating evidence regarding Johnson's character, history, and background, namely that he may have neuropsychological problems caused by his extensive history of substance abuse, a childhood head injury, and hyperglycemia-induced seizures. Petitioner Johnson's rights were denied under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 2, 5, 9, 10, 16, and 20 of Article I of the Ohio Constitution.

Twenty-first Ground for Relief: Petitioner's judgment and sentence are void or voidable because, assuming *arguendo* that none of the grounds for relief in his postconviction petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions presented in the petition's foregoing paragraphs have been prejudicial and have denied Petitioner his rights secured by the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

(App. Vol. 8, at 72.) It appears from the record that the state trial court accepted and considered

Petitioner's motion for funds for a PET scan and fourth amendment to his postconviction action.

(App. Vol. 8, at 94.)

On August 26, 2005, Petitioner filed his first motion for leave to conduct discovery in

connection with his postconviction action. (App. Vol. 8, at 95.) On August 30, 2005, the state

trial court accepted Petitioner's motion and also placed a moratorium on Petitioner filing any

new motions without leave of the trial court in order to give the court the opportunity to rule on

Petitioner's pending motions. (App. Vol. 8, at 106.)

On September 30, 2005, the State filed its response to Petitioner's postconviction action

as well as a motion for summary judgment on the same. (App. Vol. 8, at 111.) On the same day,

17

Petitioner filed a motion for leave to file a motion for a continuance of the court's hearing without oral argument set for September 30, 2005 because Petitioner sought to obtain additional neuropsychological testing. (App. Vol. 8, at 133.) A few days later, on October 3, 2005, Petitioner filed a motion for a continuance of the court's September 30, 2005 hearing without oral argument in order to file a reply to the State's response/motion for summary judgment. (App. Vol. 8, at 148.) The trial court granted Petitioner's motion requesting an opportunity to file a reply and continuing the hearing without oral argument to October 14, 2005. (App. Vol. 8, at 151.) Petitioner filed his reply to the State's response/motion for summary judgment on October 14, 2005. (App. Vol. 8, at 152.)

Several days later, on October 19, 2005, Petitioner filed a motion for an order to allow Petitioner to undergo neuropsychological testing. (App. Vol. 8, at 171.) The state filed a memorandum in opposition on October 27, 2005. (App. Vol. 8, at 181.) The trial court scheduled that motion, as well as Petitioner's postconviction action itself, for a hearing without oral argument on December 15, 2005 and reiterated its previous order placing a moratorium on Petitioner filing any additional motions without leave of the court. (App. Vol. 8, at 179.)

On December 13, 2005, two days before the court was to hold its hearing without oral argument, Petitioner filed a motion for leave to file a motion for a competency determination and to stay the proceedings. (App. Vol. 8, at 183.) The trial court issued an entry on December 16, 2005 denying Petitioner's request to stay proceedings as to motions pending as of the date of filing, granting Petitioner's request to stay any future filings, and scheduling the motion for a competency determination for a non-oral hearing on December 29, 2005. (App. Vol. 8, at 205.)

On December 19, 2005, the trial court issued a two-page entry rejecting the claims for

18

relief set forth in Petitioner's postconviction action, first amendment, second amendment, third amendment, and fourth amendment. (App. Vol. 8, at 207.) On December 20, 2005, the trial court issued an entry denying Petitioner's motion for an order to allow Petitioner to undergo neuropsychological testing. (App. Vol. 8, at 209.) On that same day, the trial court issued a separate entry denying Petitioner's motion for funds for a Positron Emission Tomography (PET) scan. (App. Vol. 8, at 210.)

On December 28, 2005, Petitioner filed a notice of incompetence and a motion to stay the proceedings. (App. Vol. 8, at 211.) The state opposed Petitioner's motion. (App. Vol. 8, at 231.) On January 6, 2006, the trial court issued an entry denying Petitioner's motion for a competency determination and denying Petitioner's motion to stay the proceedings. (App. Vol. 8, at 237.)

Petitioner appealed the trial court's December 19, 2005 judgment to the Ohio Court of Appeals for the Fifth Appellate District and filed a merit brief filed on March 14, 2006 raised the following assignments of error:

Assignment of Error No. I: The trial court erred by denying Appellant's motion for a competency determination when he presented sufficient operative facts to merit an evidentiary hearing.

Issue Presented for Review: A trial court must grant an evidentiary hearing to determine an appellant's competency when a motion challenging his competency is presented during post-conviction proceedings and such motion contains sufficient operative facts and is supported by evidence dehors the record.

Assignment of Error No. II: The trial court erred by applying the doctrine of res judicata to bar appellant's first, third, fourth, sixteenth, seventeenth, and eighteenth grounds for relief.

Issue Presented for Review: The Doctrine of Res Judicata does not

19

bar a ground for relief that is supported by evidence outside of the
record.

Assignment of Error No. III: The trial court erred in dismissing appellant's post-
conviction petition when he presented sufficient operative facts to merit relief or,
at minimum, an evidentiary hearing.

Issues Presented for Review:

1) A trial court may not deny relief to meritorious post-conviction
claims that prove a constitutional violation with sufficient
operative facts and evidence dehors the record.

2) A trial court must grant an evidentiary hearing to post-
conviction claims containing sufficient operative facts and
supported by evidence dehors the record.

Assignment of Error No. IV: The trial court erred when it denied appellant's post-
conviction petition without first affording him the opportunity to conduct
discovery.

Issue Presented for Review: A trial court must provide a post-
conviction Appellant with the opportunity to conduct discovery
pursuant to the civil rules of procedure.

(App. Vol. 9, at 21.) On April 10, 2007, the court of appeals issued an opinion overruling

Petitioner's assignments of error and affirming the trial court's judgment rejecting Petitioner's

postconviction action. (App. Vol. 9, at 169.)

Petitioner filed a notice of appeal in the Ohio Supreme Court on May 25, 2007. (App.

Vol. 10, at 3.) In a memorandum in support of jurisdiction filed on the same day, Petitioner

raised the following propositions of law:

Proposition of Law No. I: Under both the United States and Ohio Constitutions, a
criminal defendant has the constitutional right to be competent, which derives
from his constitutional rights to due process, equal protection, and the right to
freedom from a capital sentence rendered arbitrarily and capriciously.

Proposition of Law No. II: The doctrine of res judicata does not bar meritorious

post-conviction claims that are supported by sufficient evidence dehors the record.

Proposition of Law No. III: A trial court may not deny relief to meritorious post-conviction claims that prove a constitutional violation with sufficient operative facts and evidence dehors the record; further, a trial court must grant an evidentiary hearing to post-conviction claims containing sufficient operative facts and evidence dehors the record.

Proposition of Law No. IV: A trial court must provide a post-conviction petitioner with the opportunity to conduct discovery pursuant to the rules of civil procedure.

(App. Vol. 10, at 6.) It appears that the Ohio Supreme Court summarily dismissed Petitioner's appeal as not involving any substantial constitutional question. (App. Vol. 10, at 116.)

### III. Habeas Corpus Petition

Petitioner informally initiated these proceedings on January 17, 2008 by filing a notice of intention to file a habeas petition (Doc. # 2), a motion for leave to proceed *in forma pauperis* (Doc. # 3), and a motion for appointment of counsel (Doc. # 4). The Court issued a January 22, 2008 order granting those motions. (Doc. # 6.) These proceedings were formally initiated on September 28, 2008 when the habeas corpus petition (Doc. # 13) was filed raising the following grounds for relief:

**First Ground for Relief:** The trial court violated the Sixth and Fourteenth Amendments when it failed to conduct a reasonable inquiry when Petitioner, prior to trial, requested the appointment of different counsel.

**Second Ground for Relief:** The trial court failed to make a sufficient inquiry to determine whether Petitioner fully understood and intelligently relinquished his right to counsel.

**Third Ground for Relief:** [The] trial court erred in not complying with its constitutional obligation to conduct a competency hearing when there was sufficient indicia in the record to call into doubt Petitioner's competency to stand trial.

**Fourth Ground for Relief:** Trial counsel were ineffective when they failed to

object to constitutionally improper and inadmissible victim impact evidence [during] the trial phase of Petitioner's trial.

**Fifth Ground for Relief:** There was insufficient evidence that a kidnapping occurred – because the victim died prior to the restraint or Petitioner inflicted serious physical harm prior to the imposition of restraints.

**Sixth Ground for Relief:** Petitioner was deprived of the right to the effective assistance of trial counsel contrary to the Fifth, Sixth, Eighth and Fourteenth Amendments when counsel failed to present any testimony or evidence of Petitioner's family, character, upbringing and background.

**Seventh Ground for Relief:** Petitioner was deprived of the right to the effective assistance of trial counsel contrary to the Fifth, Sixth, Eighth and Fourteenth Amendments when counsel failed to investigate and provide its psychologist with the necessary records, failed to have the psychologist spend sufficient time to evaluate Petitioner, failed to properly prepare the psychologist for testimony and allowed the psychologist to present evidence that provided the jury additional reasons to impose the death penalty.

**Eighth Ground for Relief:** Petitioner was deprived of the right to the effective assistance of trial counsel contrary to the Fifth, Sixth, Eighth and Fourteenth Amendments when counsel failed to investigate and failed to present expert testimony regarding Petitioner's neurological deficits, behavioral issues due to diabetes, and cultural differences due to his race and where he was raised.

**Ninth Ground for Relief:** Petitioner was deprived of the effective assistance of trial counsel contrary to the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments when counsel failed to present competent expert evidence regarding Petitioner's substance abuse during the mitigation phase of his capital trial.

**Tenth Ground for Relief:** Petitioner was deprived of the effective assistance of trial counsel contrary to the Sixth and Fourteenth Amendments when counsel permitted the jury to hear repeated testimony about Petitioner's criminal history.

**Eleventh Ground for Relief:** Petitioner was deprived of the effective assistance of trial counsel contrary to the Sixth and Fourteenth Amendments when counsel failed to have the alleged victim's rape kit tested.

**Twelfth Ground for Relief:** Law enforcement agents may not employ an undercover agent to solicit inculpatory statements from an incarcerated defendant after formal proceedings have been instituted.

**Thirteenth Ground for Relief:** Petitioner's appellate counsel were ineffective in failing to present and argue meritorious constitutional claims.

*Trial Court Error*–Petitioner's appellate counsel failed to allege a Sixth and Fourteenth Amendment argument that Petitioner's right to confront a witness, Mickey Alexander, was violated when the State introduces and the trial court admits hearsay statements of an available witness through the testimony of another witness.

*Ineffective Assistance of Trial Counsel*–Petitioner's trial counsel rendered deficient performance by failing to object to the above admission of hearsay testimony. Trial counsel's failure prejudiced Petitioner because the State was able to introduce prejudicial information without Petitioner being able to test the credibility of the witness against him.

**Fourteenth Ground for Relief:** Petitioner's rights under the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment are violated when a trial court prohibits defense counsel from reviewing police narratives.

**Fifteenth Ground for Relief:** A trial court cannot order a criminal defendant to wear a stun belt absent a hearing at which the prosecution demonstrates the need for the restraint is established [sic].

**Sixteenth Ground for Relief:** When a juror indicates by their answers that they cannot be a fair and impartial juror, that juror should be excused for cause.

**Seventeenth Ground for Relief:** The trial court's failure to strike unqualified jurors for cause violated Petitioner's rights to an impartial jury and the unimpaired use of his allotted peremptory challenges.

*Failure to Excuse James Craig.*

*Failure to Excuse Phyllis Kritz.*

*Failure to Excuse Delbert Bumgarder.*

**Eighteenth Ground for Relief:** The trial court should have voir dired the jury to insure that they had not been prejudiced by an outburst by a witness/spectator.

**Nineteenth Ground for Relief:** Petitioner was deprived of the effective assistance of trial counsel at the trial and penalty phases of his trial in violation of the Sixth and Fourteenth Amendments.

23

Prior to trial, defense counsel filed a suggestion of incompetence. Counsel then withdrew that suggestion. Defense counsel subsequently admitted that they may have erred when they did not push the competency issue prior to trial.

Trial counsel also failed to object when the trial court read to prospective jurors a list of all mitigating factors.

The prosecution was obligated to provide defense counsel with the pre-trial statements of its witnesses at the completion of their direct examination if defense counsel so requested. Defense counsel repeatedly failed to ask to review witness statements.

After Petitioner announced his intention to testify in the trial phase, defense counsel placed the following statement on the record:

> The defendant has expressed his desire to get it all over and he wants the death penalty... Inasmuch I don't know what he's going to say I believe that the proper method of doing this would be for a narrative account where I simply call him to the stand and ask him to tell the jury, just give his statement but I don't think I should ask any questions because I don't know the answers to the questions. I don't know what he's going to say, whether it's going to be truthful – whether or not it's going to be truthful. So I believe that under the rules of ethics the safest thing to do is to just give a narrative account....

Trial counsel's statement violated the Sixth Amendment. Trial counsel should not be calling his client a liar to the judge, especially a judge who would ultimately determine if Petitioner would live or die.

Trial counsel also failed to insure the instruction included all necessary elements, therefore there was no instruction on the definition of "while", nor were they instructed on the capital specification and the appropriate findings they were to make.

At the conclusion of the trial phase, the court ordered a competency evaluation of Petitioner to be conducted by the Forensic Diagnostic Center of District Nine, Inc. Trial counsel failed to request the appointment of an examiner chosen by the defense. As a result, defense counsel had no evidence to go forward with at the competency hearing.

Trial counsel gave a weak unpersuasive opening statement in the mitigation phase. Counsel told the jury "Now we realize, ladies and gentlemen,

even though the State has the burden of proof here that Mr. Blakeslee and I have an uphill battle." Counsel remarked about himself "I'm supposed to know what I'm doing and think I do." Counsel asserted about the photograph "it's real you've seen the pictures of this boy, you've seen what happened, you are going to be emotionally affected." Trial counsel provided the jury that we "are going to try to be as honest with you as we can."

Trial counsel failed to object to the verdict forms that included an uncharged aggravating circumstance – a felony specification where Petitioner acted with prior calculation and design, non-triggerman. As a result, the jury and trial court considered the improper specification in the weighing process.

(Doc. # 13, at 58-60 (citations omitted).)

**Twentieth Ground for Relief**: The State failed to present sufficient evidence to sustain a conviction for aggravated robbery.

**Twenty-First Ground for Relief**: It violates the Eighth and Fourteenth Amendments to rest an aggravated murder conviction and/or a death sentence on a rape and robbery of a different victim which occurred two hours after the aggravated murder of a separate victim.

**Twenty-Second Ground for Relief**: Petitioner was deprived of the right to due process of law and the effective assistance of trial counsel contrary to the Fifth, Sixth, Eighth, and Fourteenth Amendments when counsel failed to properly voir dire jurors that actually sat on Petitioner's case.

**Twenty-Third Ground for Relief**: When the record and other supporting documentation call into question the competency of the petitioner, it is a violation of the petitioner's constitutional rights to rule that he is not entitled to be competent during post-conviction proceedings.

**Twenty-Fourth Ground for Relief**: In Guernsey County, the death penalty is applied in an arbitrary, capricious, and discriminatory manner and Petitioner was deprived of the effective assistance of counsel due to their failure to present statistical evidence of the arbitrary, capricious and discriminatory nature of the death penalty in Guernsey County.

**Twenty-Fifth Ground for Relief**: The trial court's independent review of whether to impose the death sentence violated the Eighth and Fourteenth Amendment[s].

**Twenty-Sixth Ground for Relief**: Ohio's death penalty statute [is]

unconstitutional.

*ARBITRARY AND UNEQUAL PUNISHMENT.*

*UNRELIABLE SENTENCING PROCEDURES.*

*O.R.C. § 2929.04(A)(7) IS CONSTITUTIONALLY INVALID WHEN USED TO AGGRAVATE O.R.C. § 2903.01(B) AGGRAVATED MURDER.*

*O.R.C. § 2929.03(D)(1) AND 2929.04 ARE UNCONSTITUTIONALLY VAGUE.*

**Twenty-Seventh Ground for Relief:** Cumulative Error.

(Doc. # 13.)

## IV. Procedural Default Discussion

This matter is before the Court upon respondent's motion to dismiss procedurally defaulted claims. (Doc. # 15.) It does not appear that every claim that Petitioner has raised in his habeas corpus petition was presented to the Ohio courts either during the direct appeal or on collateral review. As a general matter, a defendant who is convicted in Ohio of a criminal offense has available to him more than one method of challenging that conviction. Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175 (1967). Issues that must be raised in a postconviction action pursuant to R.C. §2953.21 include claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial. *State v. Cole*, 2 Ohio St. 3d 112 (1982). In 1992, a third procedure of review emerged. Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration pursuant to *State v. Murnahan*, 63 Ohio St. 3d 60 (1992) and Ohio R.

26

App. P. 26(B).

In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Thus, the judgment of conviction on direct appeal, and any adverse decision rendered by the trial court in postconviction, must be appealed to both the Ohio Court of Appeals and the Supreme Court of Ohio. Likewise, any adverse decision rendered by the Ohio Court of Appeals on a motion for delayed reconsideration must be timely appealed to the Supreme Court of Ohio.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal, or stay and abey, for failure to exhaust state remedies. *Id.*; *Rhines v. Weber*, 544 U.S. 269 (2005); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule.

27

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Respondent alleges in his motion to dismiss that several of petitioner's grounds for relief, in their entirety or in part, are subject to procedural default. (Doc. # 15.) Specifically, Respondent asks the Court to dismiss grounds three, ten, fourteen, fifteen, sixteen, seventeen, twenty-one, twenty-two, twenty-five, and twenty-six as procedurally defaulted. Petitioner opposes Respondent's motion to dismiss as to each claim, arguing either that the claim at issue is not procedurally defaulted or that Petitioner can demonstrate cause and prejudice to excuse default. (Doc. # 18.) In the same memorandum in opposition, Petitioner also requests leave to conduct discovery on cause and prejudice arguments that he seeks to present to excuse the alleged default of his fourteenth ground for relief. (*Id.* at 12-18.) The Court will address each of the claims individually to determine whether those claims are subject to the procedural defaults that Respondent alleges.

28

A.    Third Ground for Relief: [The] trial court erred in not complying
       with its Constitutional obligations to conduct a competency hearing
       when there was sufficient indicia in the record to call into doubt
       Petitioner's competency to stand trial.

In his third ground for relief, Petitioner argues that the trial court's failure to conduct a

competency evaluation after Petitioner's behavior during trial became erratic violated Petitioner's

rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments. (Doc. # 13, at 11 (citing

*Dusky v. United States*, 362 U.S. 402 (1960), and *Drope v. Missouri*, 420 U.S. 162, 171 (1975)).)

Respondent moves the Court to dismiss Petitioner's claim as procedurally defaulted,

arguing that Petitioner raised the claim improperly in postconviction instead of on direct appeal.

(Doc. # 15, at 27-29.)  Respondent reasons that because the claim appeared on the face of the

trial record and did not rely on evidence outside of the record, Petitioner violated Ohio's *res*

*judicata* rule when he raised the claim in postconviction instead of on direct appeal.

Petitioner disputes Respondent's allegation, arguing not only that Petitioner raised his

third ground on direct appeal but also that the Ohio Supreme Court addressed and rejected the

claim on the merits.  (Doc. # 18, at 10.)

The first part of the *Maupin* test requires the Court to determine whether a state

procedural rule was applicable to petitioner's claim, and, if so, whether petitioner violated that

rule.  As noted *supra*, claims appearing on the face of the record must be raised on direct appeal

or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175.

Claims that involve matters outside the record must be raised and supported by evidence *dehors*

the record in state postconviction proceedings.

Review of the record supports Petitioner's argument.  The allegations that comprise

29

Petitioner's third ground for relief (Doc. # 13, at 11-13) repeat almost verbatim the factual and legal allegations that Petitioner first presented on direct appeal to the Ohio Supreme Court in his second proposition of law (App. Vol. 5, at 89-94). Further, this Court was unable to find in Petitioner's postconviction petition and amendments thereto any claim resembling the third ground for relief before this Court. That being so, the Court concludes that Respondent's argument that Petitioner defaulted his third ground for relief by raising it improperly in postconviction instead of on direct appeal is belied by the record. Respondent's motion to dismiss Petitioner's third ground for relief as procedurally defaulted is **DENIED**.

B.    Tenth Ground for Relief: Petitioner was deprived of the effective assistance of trial counsel contrary to the Sixth and Fourteenth Amendments when counsel permitted the jury to hear repeated testimony about Petitioner's criminal history.

In his tenth ground for relief, Petitioner argues that his trial counsel performed unreasonably and to his prejudice when, after securing a pre-trial ruling limiting the State's ability to reference Petitioner's criminal history, counsel permitted the jury to hear multiple references to Petitioner's criminal history. (Doc. # 13, at 37-39.) Petitioner points out that during opening statements, defense counsel reviewed for the jury all of Petitioner's prior contacts with the criminal justice system, including charges Petitioner had faced for arson, domestic violence, and escape. Revealing the escape charge, Petitioner argues, put Petitioner's future dangerousness at issue for a jury tasked with deciding whether to recommend a death sentence or one of the life sentence options. Petitioner argues that some jurors did in fact consider as a non-statutory aggravating factor the fact that Petitioner had escaped from prison once before and the possibility that Petitioner might escape from prison again if the jury returned a verdict of any

sentence less than death.

Respondent moves the Court to dismiss Petitioner's claim as procedurally defaulted, arguing that Petitioner raised the claim improperly in postconviction instead of on direct appeal. (Doc. # 15, at 27-29.) Respondent reasons that because the claim appeared on the face of the trial record and did not rely on evidence outside of the record, Petitioner violated Ohio's *res judicata* rule when he raised the claim in postconviction instead of on direct appeal.

Petitioner offers several arguments disputing Respondent's assertion that he defaulted ground ten. (Doc. # 18, at 11-12.) First, Petitioner argues that he did raise this claim on direct appeal as his nineteenth proposition of law on direct appeal and that the Ohio Supreme Court addressed and rejected the claim on the merits. Petitioner goes on to argue that his reassertion of the claim in postconviction, supported by affidavits from postconviction counsel and a mitigation specialist detailing interviews with several jurors, does not result in procedural default because the matter had already been raised and addressed on direct appeal. Petitioner argues that his reassertion of the issue in postconviction did not convert the merits ruling from direct appeal to a default ruling for purposes of federal habeas corpus review. Petitioner argues in the alternative that sufficient evidence *dehors* the record, namely the affidavit from postconviction counsel detailing interviews with several jurors, justified Petitioner's raising the claim in postconviction instead of on direct appeal.

Turning to Petitioner's first argument, namely that he did preserve the claim by raising it on direct appeal, review of the record confirms Petitioner's argument. Petitioner styled his nineteenth proposition of law as follows: "A defendant is deprived of effective assistance of counsel when the attorney appointed to represent him fails to lodge the appropriate objections,

31

makes prejudicial comments and engages in communications, which violate the attorney/client privilege." (App. Vol. 5, at 182.) In the body of his argument to the Ohio Supreme Court, Petitioner challenged as ineffective assistance a host of counsel's actions and inactions before and during Petitioner's trial. Included among those challenges were arguments that counsel during opening statements conceded Petitioner's guilt and reviewed with the jury Petitioner's prior contacts with the criminal justice system, and that counsel during trial failed to object to testimony concerning Petitioner's prior legal problems. (*Id.* at 184.)

Thus, Respondent's argument that Petitioner defaulted his tenth ground for relief by raising it improperly in postconviction instead of on direct appeal must fail, *but only as to the specific arguments* from Petitioner's tenth ground for relief that also appeared in Petitioner's nineteenth proposition of law on direct appeal–namely that trial counsel performed unreasonably and to Petitioner's prejudice by conceding Petitioner's guilt and detailing Petitioner's criminal history during opening statements, as well as by failing to object to testimony concerning Petitioner's prior legal problems. Were Petitioner arguing that his tenth ground for relief is preserved only to the extent and in the form that he raised it in his nineteenth proposition of law, then the Court's inquiry would end here. Petitioner appears to argue, however, that to the extent that his tenth ground for relief sets forth additional facts beyond those that he had made in his nineteenth proposition of law–specifically that counsel's mention of Petitioner's escape from prison put Petitioner's future dangerousness at issue and that several jurors did in fact consider that matter, improperly, during their sentencing deliberations–those additional facts relied on evidence *dehors* the record and thus were properly raised in postconviction and supported with affidavits detailing postconviction counsel's interviews with several jurors about the jury's

sentencing deliberations.

Petitioner is correct that authority exists supporting his assertion that once a petitioner raises a claim properly and obtains a merits ruling, subsequent reassertion of that claim in other forums does not defeat preservation of the claim for purposes of habeas corpus review. (Doc. # 18, at 12.) In *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), the United States Supreme Court, in recognizing a presumption that unexplained state court orders have no effect and should be "looked through" to the last reasoned state court orders, remarked:

> The only common circumstance in which the presumption is unrealistic is that in which the later state decision rests upon a prohibition against *further* state review–for example, an unexplained denial of state habeas resting in fact upon a rule (such as petitioner contends exists in California) preventing the relitigation on state habeas of claims raised on direct appeal. In that circumstance, even though the presumption does not posit the real reason for the later denial, it does produce a result ("looking through" to the last reasoned decision) that is the correct one for federal habeas corpus courts. Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a preexisting procedural default, its effect upon the availability of federal habeas is nil–which is precisely the effect accorded by the "look-through" presumption.

*Id.* at 803-804 n.3. In *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), the Sixth Circuit found no procedural bar regarding ineffective assistance claims that apparently the petitioner raised first on direct appeal and then in his postconviction action, when the state trial court denied the claims on the basis of *res judicata* before the Ohio Supreme Court addressed them on direct appeal and the Ohio Supreme Court eventually addressed those claims on the merits. The Sixth Circuit explained:

> The State of Ohio contends that various sub-parts of Mason's ineffective assistance claim were not raised on direct appeal and thus were procedurally defaulted. Respondent's Br. at 25. Mason replies that he raised these issues to the Ohio Supreme Court in his brief. Final Reply Br. at 12; *see also* J.A. at 1517-18 (continuance), 1597 (expert assistance), 1598 (suppression motion), 1599 (jury

> selection). The problem arises because Mason filed his petition for post-
> conviction relief while his direct appeal was pending. Because the trial court
> found Mason's ineffective assistance claims to be barred by res judicata before the
> Ohio courts had decided his direct appeal, and because the Ohio Supreme Court
> eventually addressed the merits of Mason's ineffective assistance claims, we do
> not find procedural default and will review whether the state courts' adjudication
> was contrary to or involved an unreasonable application of *Strickland* and its
> progeny.

*Id.* at 617 n.4. *See also Cone v. Bell*, – U.S. – , 129 S.Ct. 1769, 1781 (2009) (holding that when a

state court declines to review a claim on the basis that it has done so already, it creates no bar

precluding federal habeas review).

It bears noting, however, that *Ylst* was addressing a hypothetical situation and an arguably

different procedural posture than that presented herein, and that *Mason* and *Cone* appeared to

address a situation where *identical* claims were first presented on direct appeal and subsequently

reasserted in postconviction. Where, as here, the subsequent reassertion of the claim at issue

raises additional facts or legal arguments, it stands to reason that those additional facts or legal

arguments are preserved for habeas corpus review only if Petitioner presented the additional facts

or legal arguments properly to the state courts. Thus, the issue before the Court with respect to

the allegations set forth in Petitioner's tenth ground for relief that Petitioner did not present on

direct appeal and presented only in postconviction is whether those allegations were present to

the state courts properly or are barred by procedural default. Resolving that issue requires the

Court to apply the *Maupin* test.

The first part of the *Maupin* test requires the Court to determine whether a state

procedural rule was applicable to petitioner's claim, and, if so, whether petitioner violated that

rule. By way of reminder, Ohio's *res judicata* rule prevents a criminal defendant from litigating

34

in postconviction any claim that was or could have been litigated on direct appeal. Claims

appearing on the face of the trial record must be raised on direct appeal or they will be barred by

*res judicata. State v. Perry*, 10 Ohio St. 2d 175. Claims that involve matters outside the record

must be raised and supported by evidence *dehors* the record in state postconviction proceedings.

In determining whether *res judicata* applies to a constitutional claim, the inquiry is properly

focused on whether the claim genuinely relies on and is supported by evidence that was not a

matter of record. *State v. Cole*, 2 Ohio St. 3d 112. Thus, non-record evidence submitted during

postconviction proceedings to support a constitutional claim cannot be superfluous or cumulative

to the evidence of record; rather, that evidence must genuinely support the claim in a manner that

no record evidence could. *See State v. Powell*, 90 Ohio App. 3d 260, 268 (Ohio App. 1 Dist.

1993) (holding that additional evidence offered in postconviction to support claim of trial

counsel ineffectiveness during mitigation was merely cumulative to evidence presented at trial).

In the instant case, the precise claim at issue is that defense counsel, by referencing a

previous escape charge that Petitioner had faced, put Petitioner's future dangerousness at issue

when it came time for the jury to decide whether to recommend the death penalty or one of the

life sentence options. According to Petitioner, several jurors did in fact consider improperly the

non-statutory aggravating circumstance that Petitioner's future dangerousness made it necessary

for them to recommend a death sentence rather than one of the life sentence options. That

component of Petitioner's tenth ground for relief was not litigated on direct appeal and therefore

Petitioner did not violate the aspect of *res judicata* that prevents defendants from re-litigating in

postconviction claims they had litigated on direct appeal already. To determine whether this

component of Petitioner's tenth ground for relief could and should have been litigated on direct

35

appeal as required by Ohio's *res judicata* rule, the Court must determine whether the facts supporting that component of Petitioner's tenth ground for relief appeared on the face of the trial record. It does not appear that they did.

When Petitioner presented the allegation to the state courts in postconviction that counsel's reference to Petitioner's escape charge had injected the issue of his future dangerousness into the jury's sentencing deliberations, Petitioner supported the allegation with affidavits detailing postconviction counsel's interviews with various jurors who admitted that, based on information that Petitioner had been charged with escape, they feared the possibility that he might attempt to escape again and decided accordingly that death was the only appropriate sentence. In an affidavit by attorney Kimberly Rigby recounting her interview of juror Judith Conaway, Ms. Rigby stated:

> She [juror Conaway] does not think there was anything the defense attorneys could have done during mitigation to persuade her to give Marvin anything other than death. He had a prior escape conviction from when he escaped in Alabama. That escape conviction impacted her decision. If Marvin ever got out and did something to Tina or another juror or even someone that she did not know, she could not live with that. She would have been the person who let him out. She could not live with it if he got out or if she gave him life and he killed again.

> Another juror, Jennifer Hicks was frightened that Marvin would come after her or her family if he was ever released or if he ever escaped from prison.

(App. Vol. 7, at 140.) In the same affidavit, Ms. Rigby recounted the following statement from juror Sara Danadic:

> She [juror Danadic] thinks Marvin's escape conviction affected Jennifer Hicks because she has small children. Anyone with kids was affected by it. They all feared for their safety, especially the women on the jury. It became a factor at that time of the outburst.

(*Id.* at 141.) An affidavit by mitigation specialist Pam Swanson regarding her interviews of juror

Jennifer Hicks included the following excerpts:

> She [juror Hicks] was afraid of him. He had the same papers his attorneys had during voir dire. Mrs. Hicks was afraid that he had their addresses.
>
> She admitted that she is afraid that the client will get out of prison.
>
> She was worried that the client would get out of prison someday.

(*Id.* at 143-44.) Nowhere does the information set forth above exist on the face of the trial record. And without the information set forth above, this component of Petitioner's tenth ground for relief could not have been fully and fairly decided on direct appeal because any assertion by Petitioner that he was prejudiced by defense counsel's mention of Petitioner's escape conviction insofar as jurors considered his future dangerousness as a non-statutory aggravating circumstance would have been purely speculative. Because this component of Petitioner's tenth ground for relief relied on and was supported by evidence outside the trial record, this Court is of the view that Petitioner did not violate Ohio's *res judicata* rule when he presented the claim in postconviction instead of on direct appeal.

In so holding, the Court is mindful that its conclusion is at odds with that reached by the state courts, which rejected Petitioner's claim in postconviction on the basis of *res judicata*. Although generally it is not within the province of a federal court to determine whether a state court misapplied a state law for purposes of granting habeas corpus relief, *see Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006), the very language of the Sixth Circuit's *Maupin* decision makes clear that it is exclusively within the province of a federal habeas corpus court to determine whether a state court misapplied a state procedural rule for purposes of enforcing procedural default in habeas corpus. *Maupin* states:

37

"First, the (federal district) court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Maupin v. Smith*, 785 F.2d at 138. Nowhere in *Maupin* does the Sixth Circuit state or even suggest that the district court should simply accept the state court's determination that a state procedural rule was applicable and that the petitioner failed to comply with the rule. In *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001), the Sixth Circuit emphasized this point as follows:

> Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law. (citation omitted). Nevertheless, when the record reveals that the state court's reliance upon its own procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded.

*Id.* at 675. The Sixth Circuit's reasoning in *Greer* permits, if not requires, this Court to conclude that Petitioner did not violate Ohio's *res judicata* rule by raising in postconviction instead of on direct appeal the allegation in Petitioner's tenth ground that defense counsel's mention of Petitioner's escape conviction prejudiced Petitioner by causing some jurors to consider Petitioner's future dangerousness as a non-statutory aggravating circumstance.

For the foregoing reasons, the Court concludes that Petitioner's tenth ground for relief is properly before the Court for review on the merits–most of the ground because it was raised and addressed on direct appeal, and the allegation concerning the effect on the jury of defense counsel's mention of Petitioner's prior escape conviction because it was raised properly in postconviction.[1] Respondent's motion to dismiss Petitioner's tenth ground for relief as

---

[1]     The Court is also mindful that the only evidence outside the record supporting the allegation that Petitioner presented only in postconviction–statements by jurors that were related to and recounted by postconviction counsel in affidavits–would appear to fall squarely within the aliunde rule prohibiting consideration of any evidence concerning a juror's mental processes during deliberations. *See* Ohio R. Evid. 606(B); *see also State v. Elmore*, No. 2005-CA-32, 2005 WL 2981797, at *23 (Ohio App. 5 Dist. Nov. 03, 2005) (finding incompetent as evidence to

procedurally defaulted is **DENIED**.

      C.      Fourteenth Ground for Relief: Petitioner's rights under the due process clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment are violated when a trial court prohibits defense counsel from reviewing police narratives.

Petitioner argues in his fourteenth ground for relief that the trial court violated his rights under the Sixth and Fourteenth Amendment by denying defense counsel's request, following the direct examination of chief investigator Detective Harbin, to review under Criminal Rule 16 any narrative reports that Detective Harbin had prepared. (Doc. # 13, at 49.) Petitioner argues that the trial court's denial of the request left defense counsel unable to prepare a proper cross-examination of Detective Harbin to expose witness errors and inconsistencies.

Respondent argues that Petitioner procedurally defaulted ground fourteen by failing to preserve the alleged error for review. (Doc. # 15, at 20-21.) Specifically, Respondent argues that Petitioner, by virtue of defense counsel's failure to move to make the narratives a part of the record, violated Ohio's *Williams* rule holding that an appellate court need not consider an issue that the appellant could have called but did not call to the trial court's attention at a time when the trial court could have corrected the alleged error. Respondent further argues that the *Williams* rule provides the foundation of Ohio's plain error and contemporaneous objection rules.

Petitioner argues that he did not violate Ohio's contemporaneous objection rule, to the

---

defeat application of *res judicata* in postconviction investigator's affidavit recounting jurors' statements about confusing jury instructions). But in denying Petitioner's claim on the basis of *res judicata* due to the fact that Petitioner had litigated the claim already on direct appeal–a finding that is not factually accurate–the state courts did not express an opinion about the cogency or competency of the evidence *dehors* the record that Petitioner supplied in support of his claim. And that is not an argument that Respondent makes now in support of his motion to dismiss this claim as procedurally defaulted. That being so, this Court is not inclined to *sua sponte* invoke Ohio's aliunde rule to conclude that Petitioner, by failing to support his claim with *competent* evidence outside the record, violated Ohio's *res judicata* rule.

extent that Respondent suggested as much. Petitioner concedes, however, that his claim is subject to another procedural default–specifically the waiver that ensued due to counsel's failure to attach the police narratives in question–and that Petitioner fails the first three parts of the *Maupin* test as to that procedural default. (Doc. # 18, at 9-15.) Petitioner believes that he can demonstrate a claim of ineffective assistance of counsel as cause and prejudice to excuse the default, *but only if* the Court grants him leave to conduct discovery. Specifically, Petitioner asks the Court for leave to obtain the police narratives at issue, noting that he has never had access to the narratives and admitting that he does not know at this point whether those narratives contain valid impeachment, or material inconsistencies or discrepancies in trial testimony. (*Id.* at 17-18.)

Respondent opposes Petitioner's request to conduct discovery on the issue of whether Petitioner can demonstrate ineffective assistance of counsel as cause and prejudice to excuse the procedural default of Petitioner's fourteenth ground for relief. (Doc. # 19.) First, Respondent argues that federal habeas corpus courts should not grant discovery on procedurally defaulted claims. Second, pointing to the requirement that a petitioner who seeks to offer an ineffective assistance of counsel claim as cause to excuse a procedural default must first present that identical claim properly to the state courts (*Id.* at 4 (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)), Respondent argues that Petitioner failed to present his ineffective assistance claim in a manner in which the Ohio Supreme Court could consider it consistent with that court's procedural rules. Respondent reasons that Petitioner accordingly cannot offer this ineffective assistance claim as cause to excuse procedural default. Finally, Respondent argues in the alternative that to the extent that the Ohio Supreme Court did consider and reject Petitioner's claim of ineffective assistance of counsel due to counsel's failure to request and review witness

40

statements or police narratives, this Court must assess the objective reasonableness of the Ohio

Supreme Court's rejection of the claim based on the evidence that was presented to the Ohio

Supreme Court. Respondent reasons that it is therefore unnecessary to conduct discovery for the

purpose of developing evidence that the Ohio Supreme Court did not have available to it when it

rejected Petitioner's claim of trial counsel ineffectiveness for the failure to request witness

summaries or police narratives following the direct examination testimony of the State's

witnesses. For these reasons, Respondent argues, it is neither appropriate nor necessary for this

Court to allow Petitioner to conduct the discovery that Petitioner requests.

　　　In response, Petitioner insists that the precise ineffective assistance claim that he seeks to

present now as cause–ineffective assistance of trial counsel for the failure to request witness

summaries and police narratives–was presented to and rejected on the merits by the Ohio

Supreme Court on direct appeal. (Doc. # 20, at 1-3.) With respect to Petitioner's failure, as

alleged by Respondent, to present the claim to the state courts in the manner he seeks to present it

to this Court–namely, complete with the police narratives themselves–Petitioner argues that there

is no requirement that he choose a better or best process available for factual development. (*Id.*

at 2-3.) In this regard, Petitioner argues that had the Ohio Supreme Court been of the view that

the record was insufficient to decide Petitioner's claim of ineffective assistance for trial counsel's

failure to request police narratives and that the claim belonged in postconviction, the Ohio

Supreme Court could have said as much but did not. (*Id.* at 3.) Petitioner disputes Respondent's

argument that discovery is never warranted on a procedurally defaulted claim, asserting that

habeas corpus rules impose no bar to discovery on a cause and prejudice issue and that this very

Court has recently held as much. (*Id.* at 3-4 (citing *Hill v. Mitchell*, 2007 U.S. Dist. LEXIS

41

71974 at *18 (S.D. Ohio 2007)).) Finally, Petitioner points out that Respondent did not contest Petitioner's arguments for why good cause exists pursuant to the standard set forth in Habeas Corpus Rule 6(a) and *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) to permit discovery.

Petitioner concedes that the first three parts of the *Maupin* test have been satisfied and the record demonstrates as much. Petitioner violated a state procedural rule requiring him to make a part of the record police narratives that he had requested to review during trial. *State v. Keenan*, 81 Ohio St. 3d 133, 147 (1998); *State v. Jenkins*, 15 Ohio St. 3d 164, 226 (1984); *State v. Brock*, No. 96-T-5564, 1998 WL 553033, at *6 (Ohio App. 11 Dist. Jun. 26, 1998). The Ohio Supreme Court clearly and expressly denied Petitioner's claim challenging the trial court's refusal to allow review of the police narratives on the basis of waiver and nothing else. (App. Vol. 6, at 154.) The rule at issue is an adequate and independent state procedural rule in that it is clearly stated and routinely enforced, serves important state interests in promoting judicial efficiency and the accuracy of records on appeal, and relies in no way on federal law.

The first three parts of the *Maupin* test having been satisfied, the issue before the Court is whether the fourth part of the *Maupin* test is satisfied. In other words, the Court must determine whether Petitioner can demonstrate cause and prejudice to excuse the apparent default of his fourteenth ground for relief. To resolve this issue, the Court must determine whether Petitioner is entitled to conduct discovery on the cause and prejudice argument that he offers–specifically, ineffective assistance of trial counsel for counsel's failure to request police narratives following the direct examination testimony of chief investigator Detective Brian Harbin. The discovery that Petitioner seeks in order to establish that he was prejudiced by counsel's failure to request those narratives is production of the narratives themselves. Petitioner argues that if the narratives

42

contain valuable impeachment evidence or evidence of material consistencies in the testimony of state witnesses, then he can establish that counsel performed unreasonably and to Petitioner's prejudice in failing to request them, sufficient to establish cause and prejudice to excuse the default of his fourteenth ground for relief. By way of reminder, Petitioner argues in his fourteenth ground for relief that the trial court erred in denying trial counsel's request following Detective Harbin's testimony on direct examination to review any police narratives that Detective Harbin prepared.

Petitioner's discovery request must be denied and Respondent's motion to dismiss granted. To the extent that Petitioner seeks discovery on a claim of ineffective assistance due to trial counsel's failure to request police narratives following Detective Harbin's direct examination testimony, Petitioner is alleging an omission that counsel did not make. To be clear, at the conclusion of Detective Harbin's testimony on direct examination, trial counsel *did* request an opportunity to review any police narratives that Detective Harbin may have prepared. (Tr. Vol. 7, at 1660.) The trial court denied the request and it is that denial that forms the basis of Petitioner's fourteenth ground for relief. Because Petitioner cannot establish objectively unreasonable performance on the part of counsel, it is unnecessary to conduct discovery to determine whether Petitioner was prejudiced. To the extent that Petitioner seeks discovery on a claim of ineffective assistance due to trial counsel's failure to move to make the narratives they had requested a part of the record, Petitioner may not offer that claim as cause because Petitioner never presented that precise claim to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (holding that an ineffective assistance of counsel claim offered as cause for the default of a substantive federal claim must first be properly presented to the state courts).

43

Petitioner offers the nineteenth proposition of law that he raised on direct appeal as the ineffective assistance claim that he preserved as his cause and prejudice argument; having scoured that claim, nowhere did this Court find an assertion that trial counsel were ineffective for failing to move to make a part of the record the police narratives they had requested to review following Detective Harbin's direct examination testimony, only a claim generally that counsel failed repeatedly to request witnesses' statements. Witness statements are factually and legally distinct from police narratives; alleging generally deprivation of the former does not amount to alleging specifically deprivation of the latter. Petitioner cannot demonstrate good cause to conduct discovery on a cause and prejudice claim that is not properly before this Court. Accordingly, the Court finds that Petitioner's request to conduct discovery is not well taken and that all four parts of the *Maupin* test have been satisfied as to the default of his fourteenth ground for relief.

For the foregoing reasons, Petitioner's motion for leave to conduct discovery (Doc. # 18, at 14-18) is **DENIED** and Respondent's motion to dismiss Petitioner's fourteenth ground for relief as procedurally defaulted is **GRANTED**.

> D.     Fifteenth Ground for Relief: A trial court cannot order a criminal
>         defendant to wear a stun belt absent a hearing at which the
>         prosecution demonstrates the need for the restraint is established.

Petitioner argues that the trial court violated Petitioner's rights to a fair and impartial trial, due process, the presumption of innocence, and to counsel when, without any sort of hearing, the trial court required Petitioner to wear a stun belt throughout the proceedings. (Doc. # 13, at 49-50.) Respondent argues that Petitioner defaulted his fifteenth ground for relief by failing either to object to the trial court's decision or to request a hearing. (Doc. # 15, at 21-23.) Respondent

argues that the Ohio Supreme Court actually enforced the procedural rule, reviewing Petitioner's claim only for plain error, and that the rule is an adequate and independent state ground upon which to preclude federal habeas corpus review.

Petitioner disagrees, arguing that the Ohio Supreme Court's review was more extensive than a plain error review, was tantamount to a ruling on the merits of Petitioner's claim, and effectively forgave any default that Petitioner had committed by not preserving the issue at trial. (Doc. # 18, at 18-22.) Petitioner reasons that because the Ohio Supreme Court conducted a harmless error analysis in determining that Petitioner was not prejudiced from having worn the stun belt, the Ohio Supreme Court did not clearly and expressly enforce waiver, but rather, rejected Petitioner's claim on the merits. In so arguing, Petitioner asserts that there is a substantial difference between plain error review under Ohio law and the harmless error review pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993), that the Ohio Supreme Court actually performed in rejecting Petitioner's claim. Petitioner also argues that the Ohio Supreme Court's reliance on federal law defeats any finding under the third part of the *Maupin* test that the state court's purported enforcement of a procedural rule was independent of federal law. Petitioner argues in the alternative that the procedural rule was not an adequate and independent state ground because it was not firmly established at the time of Petitioner's trial. (*Id.* at 22-23.) Petitioner argues that his trial concluded five months before the Ohio Supreme Court's *State v. Adams*, 103 Ohio St. 3d 508 (2004), decision, which decision, according to Petitioner, formed the basis of the waiver that the Ohio Supreme Court purported to enforce against Petitioner's claim.

The issue before the Court is whether the second part of the *Maupin* test has been

45

satisfied with respect to the procedural default alleged by Respondent against Petitioner's fifteenth ground for relief. Under the second part of the *Maupin* test, violation of a state procedural rule will not preclude habeas corpus review unless the state courts actually enforced the procedural rule. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). In other words, violation of a state procedural rule will not preclude federal habeas corpus review if the state courts did not enforce the procedural rule. As another district court within the Southern District of Ohio observed, "[u]nder certain circumstances, a merits ruling by the last reviewing state court will 'forgive' a procedural default finding made by the lower court, so as to permit federal court review of the claim." *Jamison v. Collins*, 100 F. Supp. 2d 521, 553-54 (S.D. Ohio 1998) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991)); *see also Harris v. Reed*, 489 U.S. at 262; *County Court of Ulster County, New York v. Allen*, 442 U.S. 140 (1979); *Abela v. Martin*, 380 F.3d 915, 922-24 (6th Cir. 2004) (declining to enforce procedural default where last reviewing state court did not clearly and unambiguously indicate that denial of claim was based on procedural rule).

      In order to determine whether the state courts clearly and expressly relied on a state procedural default, this Court must look to the last state court disposition providing reasons for its decision. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In *McBee*, it appears that the state appeals court expressly applied the procedural default rule, and proceeded to only a limited review of the merits in order to determine whether the fundamental miscarriage of justice exception was applicable. *Id.* at 266. The Sixth Circuit enforced the state court procedural default, holding that the state courts had clearly and expressly relied upon two alternative grounds, procedural default or substantive lack of merit, in rejecting the petitioner's federal claim. *Id.* at 267.

46

The last state court to review Petitioner's claim that the trial court erred in requiring

Petitioner to wear a stun belt was the Ohio Supreme Court on direct appeal. That court addressed

Petitioner's claim as follows:

> During his trial, the court required Johnson to wear a security device known as a "stun belt," though he wore it on his leg rather than his waist. The record does not reveal that the court heard evidence to justify the use of this restraint, and the court did not state its reasons for ordering Johnson to wear it. In his seventh proposition of law, Johnson contends that the trial court erred by requiring him to wear this device without first conducting a hearing.

> He relies on *State v. Adams*, 103 Ohio St.3d 508, 2004 Ohio 5845, 817 N.E.2d 29, in which the defendant objected to the court's order to wear a stun belt and challenged the court's justification for the device. In considering that claim, we observed that "[c]ourts elsewhere have upheld the use of electronic stun belts when specifically justified," and that "courts have reversed when stun belts have not been amply justified on the record." *Id.* at P 105. We implicitly agreed that stun-belt restraints must be justified, and our review of the record revealed that the trial court held a hearing on the need for a stun-belt and that the evidence presented justified the court's order. *Id.* at PP 106-110.

> We agree with Johnson that the trial court erred, pursuant to *Adams*. However, because Johnson neither objected to the court's order nor requested a hearing on the matter, *Adams* is inapposite.

> Generally, the failure to object waives the error and requires the aggrieved party to demonstrate prejudice. Other courts addressing this issue in the context of a stun-belt order have applied this type of review. For example, in *Adams*, at P 105, we cited both *Scieszka v. State* (2003), 259 Ga.App. 486, 578 S.E.2d 149, and *Simms v. State* (Tex.App. 2004), 127 S.W.3d 924; in both cases, the courts rejected the defendants' claims because they failed to object and because the respective records contained no evidence of prejudice.

> In *Hernandez-Reyes v. Lampert* (C.A.9, 2004), 105 Fed. Appx. 916, 917-918, 2004 WL 1687945, the Ninth Circuit rejected the defendant's claim regarding the use of a stun-belt for two reasons: First, "Hernandez-Reyes' failure to object to the restraining device negates the presence of compulsion necessary to establish a due process violation" and second, "he has not shown that he was prejudiced by wearing the device during his trial. A defendant's restraint at trial is subject to harmless error analysis. * * * As such, we must determine whether the error had a 'substantial and injurious effect on the jury's verdict.'" (quoting *Ghent*

*v. Woodford* (C.A.9, 2002), 279 F.3d 1121, 1132 fn. 9). The court determined that the error had no effect. Id.

And, the Supreme Court of Illinois recently held the following in regard to a trial court's order for the defendant to wear a stun belt: "although the failure to conduct a * * * hearing under these circumstances is an error, defendant's failure to object and to carry his burden of persuasion amounts to forfeiture of the error, where he cannot establish that it prevented him from obtaining a fair trial." *People v. Allen* (2006), 222 Ill.2d 340, 856 N.E.2d 349, 305 Ill. Dec. 544, citing *Estelle v. Williams* (1976), 425 U.S. 501, 512-513, 96 S.Ct. 1691, 48 L.Ed.2d 126.

Therefore, in light of these decisions and our holding in *Adams*, we hold that although a trial court errs when it orders a defendant to wear a stun belt without sufficient justification in the record, the defendant waives the error by failing to object. Thus, we turn to the record in this case to determine whether Johnson suffered prejudice due to the stun belt.

The record contains no evidence that indicates that the jury could see or had knowledge of the stun belt that Johnson wore on his leg. The court ordered Johnson to wear the stun belt under civilian clothing that defense counsel purchased with court funds, and the court reminded counsel to buy pants large enough to accommodate it. The court noted that it could not see the device, and that, during trial, the defendant sat behind an enclosed desk or table.

The record does not reveal that the device caused Johnson any physical discomfort. When the trial court asked, "Are you able to wear that device?' Johnson answered, "Yes." The record does not reveal that the stun belt increased any risk of injury to Johnson or that it caused him any nervousness or other psychological distress. Nothing in the record suggests that the device in any way inhibited Johnson's ability to consult with his counsel or assist in his defense. And, no evidence exists that the stun belt ever activated during trial.

We conclude that his record does not show prejudice in this regard. See, e.g. *United States v. McKissick* (C.A. 10, 2000), 204 F.3d 1282, 1299 (no evidence that the jury knew about the device); *United States v. Joseph* (C.A.5, 2003), 333 F.3d 587, 591 (the jury could not see device, and the device did not activate during trial); *Washington v. Fla. Atty. Gen.* (M.D.Fla. 2005), 2005 U.S. Dist. LEXIS 35218, 2005 WL 2580686 (no evidence that the jury knew of the stun belt or that it caused the defendant physical discomfort); *Scieszka*, 259 Ga.App. At 487, 578 S.E.2d 149 (same); *Simms*, 127 S.W.3d at 928-929 (the jury could not see stun belt); *Allen*, 222 Ill.2d 340, 856 N.E.2d 349, 305 Ill. Dec. 544 (the trial court took care to prevent the jury from seeing the stun belt; no evidence of distress, nervousness, or that the device hindered the defense).

> In the absence of any evidence in the record that the stun belt prejudiced
> Johnson, we overrule this proposition of law.

*Johnson*, 112 Ohio St. 3d at 243-45; (App. Vol. 6, at 154-55.)

Although this issue presents a "close call," it does appear to this Court that the Ohio

Supreme Court's decision satisfies the second part of the *Maupin* test because it does appear that

the Ohio Supreme Court made a clear enough statement enforcing a state procedural bar. The

Sixth Circuit's *Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003), decision is instructive. There,

the Kentucky Supreme Court noted that seven additional claims of ineffective assistance of

counsel had been raised only in supplemental pleadings that had been stricken, but then stated

that notwithstanding that fact, the court would, in the interest of judicial economy, review the

additional claims. The Sixth Circuit concluded that the state appellate court had not made an

unambiguous statement enforcing a state procedural bar because the wording of the state court's

decision yielded two equally plausible interpretations:

> The use of the word "notwithstanding" could suggest either that the Kentucky
> Supreme Court was enforcing the procedural default or that it was waiving it.
> Moreover, the possibility that the Kentucky Supreme Court was in fact waiving
> the default is amplified by the fact that it went on to consider Bowling's claims on
> the merits. *See Harris*, 489 U.S. at 266 n.13, 109 S.Ct. 1038 (noting that "[w]hile
> it perhaps could be argued that this statement would have sufficed had the state
> court never reached the federal claim," the fact that "the state court clearly went
> on to reject the federal claim on the merits" makes it less clear that the state court
> actually relied on the procedural bar). Ultimately, the fact that both interpretations
> are sensible settles this issue in Bowling's favor, for there must be unambiguous
> state-court reliance on a procedural default for it to block our review. *See Gall v.
> Parker*, 231 F.3d 265, 321 (6th Cir. 2000), *cert. denied*, 533 U.S. 941, 121 S.Ct.
> 2577, 150 L.Ed.2d 739 (2001).

*Bowling*, 344 F.3d at 498-99. Unlike *Bowling*, this Court cannot find that the Ohio Supreme

Court was ambiguous in relying on a procedural default to reject Petitioner's stun belt claim.

It is well settled in the Sixth Circuit that review by a state appellate court of an otherwise waived claim for plain error does not forgive the waiver or otherwise revive the claim for purposes of habeas corpus review. *See e.g., Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir. 2000); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). In Ohio, "[a]n alleged error 'does not constitute a plain error or defect under Crim. R. 52(B) unless but for the error, the outcome of the trial clearly would have been otherwise.' " *State v. Campbell*, 69 Ohio St. 3d 38, 41 (1994) (quoting *State v. Long*, 53 Ohio St. 2d 91, paragraph two of the syllabus (1978).) Thus, the Ohio Supreme Court's determination that Petitioner was not prejudiced by having been required to wear a stun belt, however fact-intensive, nonetheless fell within Ohio's provision for plain error review. Further, it bears reminding that the Ohio Supreme Court clearly remarked that Petitioner's stun belt claim was waived.

Similarly, an alternative ruling on the merits by a state appellate court of an otherwise waived claim does not forgive the waiver or otherwise revive the claim for purposes of habeas corpus review. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding"); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (stating that where state court's dismissal of claim on merits constitutes an alternative holding, federal habeas court will consider the claim procedurally defaulted); *Kenney v. Haviland*, No. 1:04 CV 2194, 2006 WL 2792171, at *6 n.8 (N.D. Ohio Sep. 26, 2006) ("The mere existence of the clear statement rule confirms that an alternative holding on the merits cannot save a claim where the court clearly and expressly enforces a state procedural bar"). Even assuming that the Ohio Supreme Court's determination that Petitioner was not prejudiced by having been required to wear a stun belt went beyond the scope of plain error

review, this Court would regard the Ohio Supreme Court's determination to be an alternative ruling on the merits because, as noted above, the Ohio Supreme Court clearly stated that Petitioner's stun belt claim was waived.

By making a clear enough statement that it was rejecting Petitioner's claim as waived and was addressing whether he had suffered prejudice from the stun belt as a sort of plain error review or alternative ruling, the Ohio Supreme Court left no ambiguity that its decision rested on a state procedural default. Accordingly, this Court concludes that the Ohio Supreme Court unambiguously relied on a state procedural rule–Petitioner's failure to object–in rejecting Petitioner's stun belt claim, thereby satisfying the second part of the *Maupin* test.

Turning to the third part of the *Maupin* test, it is well settled that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to preclude review in federal habeas corpus. Petitioner argues first that the state rule was not firmly established at the time of Petitioner's trial because the *State v. Adams* decision establishing that stun belts may not be used absent a showing of ncessity was issued five months after Petitioner's trial and also that the Ohio Supreme Court's enforcement of the rule was not independent of federal law. Petitioner's arguments are misplaced. The rule at issue is not the substantive standards set forth in *Adams* but Ohio's contemporaneous objection rule. And that rule, according to the Sixth Circuit, is clearly stated and routinely enforced, serves important state interests in promoting judicial efficiency and the accuracy of records on appeal, and relies in no way on federal law. *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006); *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004); *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000).

The fourth part of the *Maupin* test requires the Court to determine whether Petitioner has

demonstrated cause and prejudice sufficient to excuse the procedural default and permit review in federal habeas corpus. Petitioner offers no cause and prejudice arguments, instead requesting leave to address those issues should the need arise. (Doc. # 18, at 23.) Out of an abundance of caution, the Court will entertain in its final decision on the merits any *good faith* cause and prejudice arguments that Petitioner might raise.

For the foregoing reasons, Respondent's motion to dismiss Petitioner's fifteenth ground for relief as procedurally defaulted is **GRANTED**, subject to reconsideration should Petitioner establish cause and prejudice sufficient to excuse the apparent default of his stun belt claim.

E.    Sixteenth Ground for Relief: When a juror indicates by their
      answers that they cannot be a fair and impartial juror, that juror
      should be excused for cause.

In his sixteenth ground for relief, Petitioner offers two jurors whom, based on some of the statements they made during voir dire, the trial court should have excluded for cause. (Doc. # 13, at 50-51.) Petitioner argues that Ms. Barbara Grant indicated that she supported the death penalty, was concerned about the amount of money it would cost to support a person in prison for life, and feared that absent the death penalty society would not be protected. According to Petitioner, she also equivocated on whether she could vote for a life sentence for a defendant found to have deliberately killed a child. Petitioner also argues that Ms. Sara Danadic voiced a belief that death was appropriate for a defendant who committed an intentional, premeditated murder of a child. According to Petitioner, she also stated that she had held such views for a long time, that they were firmly held beliefs, and that she would have a difficult time setting them aside. Petitioner concludes by arguing that, because these jurors held views that would have prevented or substantially impaired their ability to be fair to Petitioner, trial counsel were

52

ineffective for failing to challenge them for cause. Thus, Petitioner appears to be challenging not only the trial court's failure to *sua sponte* remove the jurors for cause but also counsel's failure to challenge the jurors for cause.

Respondent argues that Petitioner defaulted this claim by raising it in postconviction in violation of Ohio's *res judicata* rule. (Doc. # 15, at 28-29.) Petitioner argues that he presented this claim on direct appeal, that the Ohio Supreme Court rejected it on the merits, and that there is no procedural default. (Doc. # 18, at 23.)

The record confirms Petitioner's assertion that he presented this claim to the Ohio Supreme Court on direct appeal. The fifth proposition of law set forth in Petitioner's direct appeal brief is virtually identical to the sixteenth ground for relief set forth above. (App. Vol. 5, at 105-07.) Petitioner is correct that the Ohio Supreme Court rejected his claim on the merits, concluding that the jurors' answers had not established that they were biased against Petitioner or in favor of the death penalty. (App. Vol. 6, at 144.) In so ruling, the Ohio Supreme Court addressed Petitioner's claim only as an ineffective assistance claim for counsel's failure to challenge the jurors for cause, not as a claim challenging the trial court's failure to remove the jurors for cause. It is also true, as asserted by Respondent, that Petitioner subsequently raised a similar–albeit not identical–claim in his postconviction action. (App. Vol. 7, at 84-86.) Petitioner supported that claim with two affidavits from his postconviction attorneys recounting their interviews with various jurors who had sat on Petitioner's panel.

Turning to the first part of the *Maupin* test, the Court is not persuaded that Petitioner violated a state procedural rule sufficient to preclude habeas corpus review of his sixteenth ground for relief. As the Court observed earlier in connection with Petitioner's tenth ground for

53

relief, once a petitioner raises a claim properly and obtains a merits ruling, subsequent reassertion of that claim in other forums does not defeat preservation of the claim for purposes of habeas corpus review. *Cf. Ylst v. Nunnemaker*, 501 U.S. at 803-804 n.3; *see also Cone v. Bell*, 129 S.Ct. at 1781; *Mason v. Mitchell*, 320 F.3d at 617 n.4. Petitioner's sixteenth ground for relief, as set forth and preserved on direct appeal, is properly before this Court for review on the merits. Respondent's procedural default argument having failed the first part of the *Maupin* test, Respondent's motion to dismiss Petitioner's sixteenth ground for relief as procedurally defaulted is **DENIED**.

      F.      <u>Seventeenth Ground for Relief: The trial court's failure to strike unqualified jurors for cause violated Petitioner's rights to an impartial jury and the unimpaired use of his allotted peremptory challenges.</u>

In contrast to his sixteenth ground for relief, where he challenged the failure of the trial court and defense counsel to remove certain jurors for cause in view of statements they had made during *voir dire*, Petitioner argues in his seventeenth ground for relief that the trial court erred in overruling three challenges for cause that defense counsel had raised. (Doc. # 13, at 51-55.) Petitioner had challenged for cause prospective jurors James Craig, Phyllis Kritz, and Delbert Bumgarder, but was forced to use peremptory challenges to remove those jurors after the trial court overruled the challenges for cause. Ultimately, Petitioner did exhaust all of his peremptory challenges.

Respondent urges the Court to dismiss Petitioner's claim as procedurally defaulted, arguing that Petitioner violated Ohio's doctrine of *res judicata* by raising the claim in postconviction instead of on direct appeal. (Doc. # 15, at 28-29.) Petitioner argues that there is

no procedural default because he raised this claim on direct appeal as his sixth proposition of law, because the Ohio Supreme Court rejected it on the merits, and because Petitioner did not include the claim in his postconviction action. (Doc. # 18, at 23-24.)

Review of the record supports Petitioner's argument. The allegations that comprise Petitioner's seventeenth ground for relief (Doc. # 13, at 51-55) repeat almost verbatim the factual and legal allegations that Petitioner presented on direct appeal to the Ohio Supreme Court in his sixth proposition of law (App. Vol. 5, at 108-118). Further, this Court was unable to find in Petitioner's postconviction petition and amendments thereto any claim resembling the seventeenth ground for relief before this Court. That being so, the Court concludes that Respondent's argument that Petitioner defaulted his seventeenth ground for relief by raising it improperly in postconviction instead of on direct appeal is belied by the record. Respondent's motion to dismiss Petitioner's seventeenth ground for relief as procedurally defaulted is **DENIED**.

      G.    Twenty-First Ground for Relief: It violates the Eighth and Fourteenth Amendments to rest an aggravated murder conviction and/or a death sentence on a rape and robbery of a different victim which occurred two hours after the aggravated murder of a separate victim.

In his twenty-first ground for relief, Petitioner essentially argues that the rape and aggravated robbery specifications were factually and legally insufficient to support his conviction for aggravated murder and/or his death sentence because those felonies were committed hours after the killing and against a different victim. (Doc. # 13, at 62-63.) Petitioner argues that because it is clear that the aggravated murder of Daniel Bailey did not occur while Petitioner was committing, attempting to commit, or fleeing immediately after committing or attempting to

55

commit the rape and aggravated robbery of Tina Bailey, the trial court erred when it instructed

the jury that the term "while" meant that "the death must occur as part of acts leading up to or

occurring during or immediately after the commission of kidnapping, rape, aggravated robbery

and the death was directly associated with the commission of the kidnapping, rape, or aggravated

robbery or flight immediately after the commission of those crimes." (Doc. # 13, at 63 (quoting

Tr. at 2255).) Petitioner reasons that by including the word "or" in the last part of the instruction

set forth above, the trial court permitted the jury to find Petitioner guilty of the felony murder

count and specification if it found that the term "while" applied to any of the felonies. Stated

another way, Petitioner argues that there was no jury finding that the aggravated murder of

Daniel Bailey was directly associated with the rape or aggravated robbery of Tina Bailey.

Respondent argues that Petitioner's claim is barred by procedural default because

Petitioner failed to object at trial to the jury instruction set forth above. (Doc. # 15, at 24-25.)

Petitioner concedes that his claim is subject to the procedural default asserted by Respondent, but

argues that he can demonstrate ineffective assistance of trial counsel as cause and prejudice

sufficient to excuse the default and permit review of the claim on the merits. (Doc. # 18, at 24-

25, 28-35.)

Review of the record confirms that Petitioner presented this claim on direct appeal and

that the Ohio Supreme Court rejected the claim on the basis of waiver due to Petitioner's failure

to object at trial. Further, as the Court noted earlier, the Sixth Circuit has consistently ruled that

Ohio's contemporaneous objection rule is an adequate and independent procedural rule that bars

federal habeas corpus review absent a demonstration of cause for the waiver and resulting

prejudice.

The first three parts of the *Maupin* test having been met, the issue before the Court is whether Petitioner can demonstrate ineffective assistance of trial counsel as cause and prejudice sufficient to excuse the default. The Supreme Court has refrained from establishing firm contours for the cause-and-prejudice standard that the Court adopted for excusing the default of constitutional claims during state court proceedings. *Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988). As a general rule, though, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Ineffective assistance of counsel is asserted frequently as "cause." In order to qualify as cause for a procedural default, counsel ineffectiveness must rise to the level of an independent constitutional violation under the standard established in *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *** So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986).

This Court's review of petitioner's cause argument is circumscribed in two important respects. First, this Court may not review as cause any claim of ineffective assistance of counsel that was not also properly presented to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (holding that an ineffective assistance of counsel claim offered as cause for the

default of a substantive federal claim must first be properly presented to the state courts).

Second, under amendments to the habeas corpus statute set forth in the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), a federal court cannot grant relief on a claim

that the state courts adjudicated on the merits unless the state court adjudication "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1),

or was based on "an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding," 28 U.S.C. § 2254(d)(2).

     Petitioner offers ineffective assistance of trial counsel as cause to excuse the apparent

procedural default of his twenty-first ground for relief. Petitioner presented that ineffective

assistance claim to the Ohio Supreme Court in his nineteenth proposition of law, albeit in a

single sentence. (App. Vol. 5, at 186.) Citing the two-part test set forth in *Strickland v.*

*Washington, supra,* and *State v. Bradley*, 42 Ohio St. 3d 136 (1989), at the outset of its

discussion of Petitioner's ineffective assistance claims (App. Vol. 6, at 144), the Ohio Supreme

Court rejected this claim of ineffective assistance on the merits. Specifically, the Ohio Supreme

Court reiterated that it had determined in rejecting Petitioner's fifteenth proposition of law that

the trial court had defined the term "while," contrary to Petitioner's argument that counsel were

ineffective for failing to request such a definition. (*Id.* at 147.)

     It was in his fifteenth proposition of law that Petitioner presented the allegations that form

the basis of his twenty-first ground for relief. Construing the proposition as both a challenge to

the sufficiency of the evidence supporting Petitioner's felony-murder conviction and a challenge

to the manner in which the trial court instructed the jury on the aggravated robbery and rape

specifications that formed the basis for Petitioner's felony-murder conviction, the Ohio Supreme

Court rejected the sufficiency of the evidence component on the merits in relevant part as

follows:

> In his fifteenth proposition of law, Johnson contends that the rape and aggravated robbery of Tina Bailey cannot be used to support the aggravated murder charge based on felony-murder or the felony-murder death specification because Johnson did not commit the rape and aggravated robbery *"while committing"* the aggravated murder of Daniel Bailey.
>
> However, "[T]he term 'while' does not indicate * * * that the killing must occur at the same instant as the [predicate felony], or that the killing must have been caused by the [felony]." *State v. Cooper* (1977), 52 Ohio St.2d 163, 179-180, 6 O.O.3d 377, 370 N.E.2d 725. Nor does it mean that the felony must have been the motive for the killing. *State v. Williams* (1996), 74 Ohio St.3d 569, 577, 1996 Ohio 91, 660 N.E.2d 724; *State v. McNeill* (1998), 83 Ohio St.3d 438, 441, 1998 Ohio 293, 700 N.E.2d 596.
>
> Rather, "while" means that "the killing must be directly associated with the [felony] as part of one continuous occurrence * * * ." *Cooper*, 52 Ohio St.2d at 179-180, 6 O.O.3d 377, 370 N.E.2d 725. See also *State v. Cooey* (1989), 46 Ohio St.3d 20, 23, 544 N.E.2d 895. "[T]he term 'while' means that the death must occur as part of acts leading up to, or occurring during, or immediately subsequent to the [relevant felony]." *Williams*, 74 Ohio St.3d at 577, 660 N.E.2d 724. "The sequence of events" may be "examined in light of time, place, and causal connection" to determine whether it "amounts to 'one continuous occurrence.'" *McNeill*, 83 Ohio St.3d at 441, 700 N.E.2d 596, quoting *Cooey*, 46 Ohio St.3d at 23, 544 N.E.2d 895.
>
> The evidence presented in this case supports a finding that Daniel's murder occurred sometime between 5:00 and 6:00 a.m., on August 15, 2003. Dr. Janet Brockwell, the Guernsey County Coroner, observed the autopsy performed by Dr. Lee and estimated Daniel's time of death at between 4:00 and 6:00 a.m. Johnson had been sleeping on Lisa Wilson's couch at 3:30 a.m., but had left by 5:30 a.m. Wilson testified that David Jones told her that "he had gotten up about 5:00, ten minutes [sic] after I had left at 3:30." According to Wilson, Jones "said he heard him rummaging through a bag in the kitchen and then he left." Based on this information, the jury could have found that Johnson left Wilson's house shortly before the time of Daniel's murder.
>
> The rape occurred sometime after 8:20 a.m. The aggravated robbery

began at about the same time, when Johnson demanded $ 1,000 from Tina while threatening her with the knife. Thus, two to three hours elapsed between Daniel's kidnapping and death on the one hand, and the rape and aggravated robbery of his mother, Tina, on the other.

However, the relationship between the victim s and the situs of the crimes connect these offenses. The aggravated murder, the kidnapping, the rape, and the aggravated robbery all occurred at Tina's home, where Johnson knew that Daniel would be alone and knew he could overpower and kill him. He did so and then waited for Tina to arrive home from work. He used Daniel's disappearance, in addition to the knife, as a means to commit the rape and the robbery.

Thus, when viewed "in light of time, place, and causal connection," *McNeill*, 83 Ohio St.3d at 441, 700 N.E.2d 596, the jury could have found that the aggravated murder "occurr[ed] as part of acts leading up to" the rape and aggravated robbery. *Williams*, 74 Ohio St.3d at 577, 660 N.E.2d 724. Based on this analysis, we conclude that the kidnapping, the aggravated murder, the rape, and the aggravated robbery constitute one continuous occurrence.

*Johnson*, 112 Ohio St. 3d at 218-19; (App. Vol. 6, at 139).

Petitioner has not demonstrated, and it does not otherwise appear, that the Ohio Supreme

Court's decision contravened or unreasonably applied clearly established federal law. The Ohio

Supreme Court identified the controlling authority and correctly set forth the two-part standard

for establishing ineffective assistance of counsel in violation of the Sixth Amendment. The

extent of authority supporting an interpretation of the felony-murder statute that permitted

Petitioner to be charged with and convicted of the rape and aggravated robbery specifications that

supported his felony-murder conviction, as referenced by the Ohio Supreme Court in its

discussion of Petitioner's fifteenth proposition of law, persuades this Court not only that counsel

were within the realm of professional norms in not objecting to the jury instructions on those

specifications, but also that no amount of additional or more ardent objections from defense

counsel would have persuaded the trial court to rule differently concerning its instructions to the

jury on the rape and aggravated robbery specifications. In other words, Petitioner has not demonstrated that counsel performed unreasonably or that Petitioner was prejudiced by counsel's performance. That being so, having reviewed the record, Petitioner's arguments, and relevant case law, this Court cannot disagree with, much less find unreasonable, the Ohio Supreme Court's decision rejecting Petitioner's claim that his trial attorneys were ineffective for failing to object to the manner in which the trial court instructed the jury on the rape and aggravated robbery specifications. Petitioner has failed to establish cause and prejudice sufficient to excuse the default of his twenty-first ground for relief.

Accordingly, respondent's motion to dismiss as procedurally defaulted petitioner's twenty-first ground for relief is **GRANTED**.

H.      Twenty-Second Ground for Relief: Petitioner was deprived of the right to due process of law and the effective assistance of trial counsel contrary to the Fifth, Sixth, Eighth, and Fourteenth Amendments when counsel failed to properly voir dire jurors that actually sat on Petitioner's case.

Petitioner contends that, due to counsel's failure to voir dire jurors about their views on capital punishment, four jurors were permitted to sit on Petitioner's jury–Sara Danadic, Judith Conaway, Jennifer Hicks, and Russell Landers–who all admitted after the fact that there was nothing defense counsel could have done differently during the mitigation phase of Petitioner's trial to change their decisions about recommending the death penalty and who did not give credence to the defense psychologist's testimony. (Doc. # 13, at 63-65.) Petitioner also argues that Ms. Danadic shifted the burden from the prosecution to the defense during mitigation to prove that there were circumstances demonstrating that the murder was committed other than in cold-blood.

61

Respondent urges the Court to dismiss Petitioner's claim as procedurally defaulted, arguing that Petitioner violated Ohio's doctrine of *res judicata* by raising the claim in postconviction instead of on direct appeal. (Doc. # 15, at 28-29.)

Petitioner argues that he did not default his twenty-second ground for relief because he "previously raised a *similar* claim of ineffective assistance of counsel on direct appeal." (Doc. # 18, at 25 (emphasis added).) Asserting that the Ohio Supreme Court rejected the claim on the merits, Petitioner argues that because he raised the matter on direct appeal and obtained a merits ruling, Petitioner did not commit procedural default to bar habeas review. Petitioner goes on to argue that when he did subsequently raise this claim in postconviction, he supported the claim with evidence outside the trial record sufficient to justify his raising the claim in postconviction. Specifically, Petitioner asserts, he produced affidavits of his postconviction counsel and postconviction mitigation specialist recounting their interviews with jurors from Petitioner's trial. Asserting that such information was not available at the time of his trial, Petitioner argues that he properly presented the claim and evidence *dehors* the record in postconviction as well as on direct appeal. Finally, Petitioner argues that even assuming his claim was not properly raised in postconviction, the claim is still preserved to the extent that it was raised on direct appeal because the state courts' subsequent treatment of the claim in postconviction cannot, Petitioner asserts, convert a preserved claim into a defaulted claim.

The first issue before the Court is whether Petitioner preserved his twenty-second ground for relief on direct appeal to the Ohio Supreme Court. In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6, (1982); *Picard v. Connor*, 404 U.S.

62

270, 275 (1971). A petitioner "fairly presents" the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim. *Harless*, 459 U.S. at 6. With respect to the question of whether, or to what extent, new facts or evidence not presented to the state courts can affect a petitioner's ability to present that claim to the federal courts, the Sixth Circuit has held that the new facts or evidence presented in conjunction with the claim must not place that claim in a "significantly different posture" than that presented to the state courts. *Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986).[2] The United States Supreme Court reached a similar result in *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986), when it approved the district court's decision to direct the parties to supplement the record with updated, more expansive statistics regarding racial composition of the jury venire than the statistics that had been presented to the state courts. Observing that the district court had been "motivated by a responsible concern that it provide the meaningful federal review of constitutional claims that the writ of habeas corpus contemplated throughout its history," the United States Supreme Court held that additional facts or evidence may be considered by a federal habeas corpus court where that new information does not "fundamentally alter the legal claim already considered by the state courts." *Id; see also Bragen v. Morgan*, 791 F.Supp. 704, 720-21 (M.D. Tenn. 1992) (holding that a petitioner is not required to return to the state courts with new evidence which, although helpful, is not sufficiently compelling).

In light of the foregoing, the Court cannot find that Petitioner presented the substance of

---

[2]     The Sixth Circuit in *Sampson* addressed this issue in the context of exhaustion, concluding that the petitioner had presented new evidence sufficient to place his claim in a significantly different posture and that there were available state remedies for the petitioner to present his new evidence.

his twenty-second ground for relief to the Ohio Supreme Court on direct appeal sufficient to preserve the claim for habeas corpus review. In arguing that he fairly presented his twenty-second ground to the Ohio Supreme Court, Petitioner directs this Court to the fifth and nineteenth propositions of law in his direct appeal brief. Neither of those individually or together include the allegations set forth in the twenty-second ground for relief before this Court. In his twenty-second ground before this Court, Petitioner asserts as error trial counsel's failure to challenge for cause for jurors who could not be fair and impartial: Sara Danadic, Judith Conaway, Jennifer Hicks, and Russell Landers. He argues that those jurors indicated during post-trial interviews that there was nothing defense counsel could have done to persuade them to recommend a sentence less than death and that they gave little credence to the testimony of Petitioner's mitigation mental health experts. Petitioner argues additionally that Ms. Danadic admitted to have shifted the burden of proof from the prosecution to the defense.

In his fifth proposition of law, however, Petitioner asserted as error defense counsel's failure to challenge for cause jurors Barbara Grant and Sara Danadic. (App. Vol. 5, at 105-107.) Petitioner argued that during *voir dire*, Ms. Grant voiced support fo the death penalty, concern about the amount of money it would cost to imprison someone for life, fear that without the death penalty society would not be protected, and equivocation whether she could recommend a sentence less than death if the jury found that Petitioner had deliberately killed a child. Petitioner further argued that Ms. Danadic, during *voir dire*, stated that she thought that the death penalty was appropriate for the intentional, premeditated murder of a child and that those were firmly held beliefs that she had had for some time and that she would have trouble setting aside. Although the allegations set forth in Petitioner's fifth proposition of law repeat nearly verbatim

Petitioner's *sixteenth* ground for relief, they bear no resemblance to Petitioner's twenty-second ground for relief.

Petitioner also directs the Court to his nineteenth proposition of law on direct appeal to the Ohio Supreme Court, but that proposition likewise contained none of the allegations set forth in the twenty-second ground for relief before this Court. Petitioner's nineteenth proposition of law raised numerous allegations of ineffective assistance during all phases of Petitioner's trial, but the only reference that proposition contained about *voir dire* was a single sentence assailing counsel's failure to challenge for cause certain jurors who could not be fair and impartial and incorporating by reference the fifth proposition of law described above. (App. Vol. 5, at 183.)

For the foregoing reasons, the Court concludes that Petitioner did not fairly present to the Ohio Supreme Court on direct appeal the allegations set forth in his twenty-second ground for relief before this Court. That leaves for the Court to determine whether Petitioner otherwise preserved the claim when he raised it in postconviction. Resolving that issue requires the Court to apply the *Maupin* test.

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule was applicable to petitioner's claim, and, if so, whether petitioner violated that rule. Ohio's *res judicata* rule prevents a criminal defendant from litigating in postconviction any claim that was or could have been litigated on direct appeal. Claims appearing on the face of the trial record must be raised on direct appeal or they will be barred by *res judicata. State v. Perry*, 10 Ohio St. 2d 175. Claims that involve matters outside the record must be raised and supported by competent, relevant, and material evidence *dehors* the record in state postconviction proceedings. In determining whether *res judicata* applies to a constitutional claim, the inquiry is

65

properly focused on whether the claim genuinely relies on and is supported by competent evidence that was not a matter of record. *State v. Cole*, 2 Ohio St. 3d 112. Thus, non-record evidence submitted during postconviction proceedings to support a constitutional claim cannot be superfluous or cumulative to the evidence of record; rather, that evidence must genuinely support the claim in a manner that no record evidence could. *See State v. Powell*, 90 Ohio App. 3d 260, 268 (Ohio App. 1 Dist. 1993) (holding that additional evidence offered in postconviction to support claim of trial counsel ineffectiveness during mitigation was merely cumulative to evidence presented at trial).

In the instant case, the precise claim at issue is that defense counsel failed to challenge for cause four jurors–Sara Danadic, Judith Conaway, Jennifer Hicks, and Russell Landers–who admitted in post-trial interviews that there was nothing defense counsel could have done to persuade them to recommend a sentence less than death and that they gave little credence to the testimony of Petitioner's mitigation mental health expert. According to Petitioner, Ms. Danadic additionally admitted that she shifted the burden of proof in mitigation from the State to defense counsel. Petitioner points to specific responses or statements that those jurors made during post-trial interviews reflecting that they thought such things as that no one could in good conscience recommend a life sentence in view of the way that Petitioner had brutally murdered Daniel Bailey, that Petitioner faked his mental health problems to fool the psychologist and the jury, that Petitioner was not taking drugs on the night/morning of the offense, that defense counsel needed during mitigation to prove why the jurors should not recommend death. To determine whether these allegations could and should have been litigated on direct appeal as required by Ohio's *res judicata* rule, the Court must determine whether the facts supporting the allegations appeared on

the face of the trial record. It does not appear that they did.

Petitioner presented this claim to the state courts in postconviction as his first claim for relief. Petitioner supported the allegation with affidavits by an attorney and mitigation specialist representing him in postconviction detailing their interviews with various jurors. In an affidavit by attorney Kimberly Rigby recounting her interview of juror Judith Conaway, Ms. Rigby stated in relevant part that:

- She [Ms. Conaway] does not think that there was anything the defense attorneys could have done during mitigation to persuade her to give Marvin anything other than death. * * * .

- The testimony regarding Marvin's mental health problems was questionable. He could have searched on the internet for those symptoms and faked them. Marvin was manipulative and was able to work the system.

(App. Vol. 7, at 139-40.) In the same affidavit, Ms. Rigby recounted her interview with Sara Danadic in relevant part as follows:

- During voir dire, she [Ms. Danadic] told the court and defense counsel that defense counsel had to prove to her that there were circumstances to show cause for the crime other than that he committed it in cold-blood.

- She did not believe that Marvin was under the influence of any drugs or had any mental health issues at the time of the murder. Defense counsel did not prove it to them (the jury).

- She thinks Marvin made up the bipolar diagnosis when he attended drug and alcohol rehab. He is smart enough to copy someone with the disease, and to fool someone. She's been around people that are bipolar and have taken medication, and he showed none of the signs of that to her while he was in court.

- There was nothing in all good consciousness that would have swayed her to give Marvin a life sentence with the brutal way that Daniel was murdered.

67

- She believes that after you take a life, you should not be permitted to live. She does not care what the circumstances are. There is no way that I could have found any other charge for Marvin.

(*Id.* at 140-41.) Finally, Ms. Rigby recounted her interview with Russell Landers in relevant part as follows:

- There was nothing that Marvin's attorneys could have done differently that would have swayed him away from the death penalty. He is not certain that anything could given the nature of the crime.

- He is not certain that he bought into the psychologist's testimony regarding Marvin being bipolar and having a paranoid personality disorder. Still, the evidence was so overwhelming the other way that it did not matter.

- He was very affected by the fact that Daniel was a child. It would not have made a difference had Marvin expressed remorse because the murder was too methodical.

(*Id.* at 142.)

In an affidavit by mitigation specialist Pam Swanson recounting her participation in postconviction counsel's interview of juror Jennifer Hicks, Ms. Swanson recounted in relevant part:

- Mrs. Hicks was not impressed with the defense team's choice of experts. The psychiatrist was weird. He spent the first 2 minutes on the stand just staring at the jury.

- Mrs. Hicks admitted that there was not much that could be said to mitigate the aggravated nature of the crime. He would have to have been locked in a closet, burned and tortured, in order to mitigate this crime.

(*Id.* at 143.)

Nowhere does the information set forth above exist on the face of the trial record. And

without the information set forth above, Petitioner's twenty-second ground for relief could not have been fully and fairly decided on direct appeal because any assertion by Petitioner that he was prejudiced by defense counsel's failure to remove "automatic death penalty" jurors would have been purely speculative. That said, although Petitioner's twenty-second ground for relief relied on and was supported by evidence outside the trial record, there is another reason why that evidence was insufficient to overcome application of the *res judicata* bar and why Petitioner's claim appears to be procedurally defaulted.

As noted above, claims that involve matters outside the record must be raised and supported by *competent*, relevant, and material evidence outside the record in state postconviction proceedings. *See, e.g., State v. Lawson*, 103 Ohio App. 3d 307, 315 (1995) ("The presentation of competent, relevant, material evidence *dehors* the record may defeat the application of *res judicata*.") (citing *State v. Smith*, 17 Ohio St. 3d 98, 101 (1985)).) Ohio's aliunde rule prohibits consideration of jurors' thought processes during deliberations:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or to dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Ohio R. Evid. 606(B). Several state courts have held that non-record evidence consisting solely of affidavits reflecting a juror's thought processes during deliberations is not competent and therefore not sufficient to avoid application of *res judicata*. *See State v. McKnight*, No. 07 CA 665, 2008 WL 2124076 at *12 (Ohio App. 4 Dist. May 19, 2008) ("Because the juror statement is barred under the aliunde rule, which we discussed, supra, we find that McKnight lacks evidence dehors the record to support this claim. Thus, res judicata bars McKnight's seventh

claim for relief); *State v. Elmore*, No. 2005-CA-32, 2005 WL 2981797, at *23 (Ohio App. 5 Dist. Nov. 3, 2005) (same); *Hawkins v. Coyle*, No. 1:97-cv-296, 2004 WL 5708285, at *64 n.9 (S.D. Ohio Mar. 22, 2004).

In the instant case, the state trial court rejected Petitioner's claim on the basis of *res judicata*, holding specifically that Petitioner had already litigated the claim on direct appeal. As this Court demonstrated above, that is not the case. (App. Vol. 8, at 207.) Subsequently, the state appellate court rejected Petitioner's claim on the basis that the only non-record evidence that Petitioner offered in support of his claims was not competent and therefore was not sufficient to overcome the *res judicata* bar. (App. Vol. 9, at 184-87.) The state appellate court explained:

> In support of his argument that counsel should have challenged for cause or in the alternative exercised a peremptory strike against the four jurors, appellant offers the affidavit of one of his post-conviction attorneys which summarize her telephone conversations with each juror.
>
> As this affidavit contains or relies upon hearsay, the trial court could give it little or no weight. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905; *State v. Elmore*, 5th Dist. No. 2005-CA-32, 2005-Ohio-5740 at ¶109.
>
> Additionally, Evid.R. 606(B) governs the competency of a juror to testify "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict * * * or concerning his mental processes in connection therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes." Evid.R. 606(B) is subject to the exception embodied in the aliunde rule, which permits a juror to offer testimony impeaching his verdict upon the presentation of impeachment evidence from a competent source other than a juror. See *State v. Kehn* (1977), 50 Ohio St.2d 11, 18, 361 N.E.2d 1330, certiorari denied (1977), 434 U.S. 858, 98 S.Ct. 180, 54 L.Ed.2d 130; *State v. Poindexter* (Mar. 6, 1991), 1[st] Dist. No. C-890734.

In the absence of evidence aliunde impeaching the jury's recommendation of sentences of death, Evid. R. 606(B) precluded consideration of the jurors' affidavits to show the effect upon the jurors' minds concerning capital punishment or the burden of proof.

The affidavit of the attorney merely summarizes the jurors' statements. This evidence is also barred by Evid. R. 606. "In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, *Wicker v. Cleveland* (1948), 150 Ohio St. 434, 38 O.O. 299, 83 N.E.2d 56, and the information must be from a source which possesses firsthand knowledge of the improper conduct... Similarly, where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying a foundation of evidence *aliunde*. See *Tasin v. SIFCO Industries, Inc.* (1990), 50 Ohio St.3d 102, 553 N.E.2d 257; *Dodd v. McCammon* (1920), 14 Ohio App. 160, 32 Ohio C.C. (N.S.) 68". *State v. Schiebel* (1990), 55 Ohio St.3d 71, 75-76, 564 N.E.2d 54, 61.

The affidavit of the investigator is not competent evidence and therefore is not properly considered in appellant's petition. *State v. Elmore*, 5th Dist. No. 2005-CA-32, 2005-Ohio-5940 at ¶158; 160. That leaves only the trial transcript to support appellant's claim.

In the case at bar, appellant is represented in his direct appeal by new counsel. Counsel in that appeal can cite to the transcript contained in the court file to support a claim of ineffective assistance of trial counsel in failing to challenge the jurors. To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *Cole*, syllabus. Appellant has failed in this burden.

In any event, the affidavits do not support appellant's claim. Rather they merely indicated that the jurors found that the evidence was overwhelming and that the felony-murder aggravating circumstances in this case outweigh the mitigating factors beyond a reasonable doubt. "The record contains overwhelming evidence of Johnson's culpability for Daniel's murder, and Johnson at no point claimed innocence." *State v. Johnson*, supra, 112 Ohio St.3d 228, 2006-Ohio-6404 at ¶135, 858 N.E.2d at 1176.

The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief concerning counsel's effectiveness

during voir dire. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

(App. Vol. 9, at 184-87.)

Returning to the *Maupin* test, the Court concludes under the first part that Ohio's *res judicata* rule applied to Petitioner's twenty-second ground for relief and that Petitioner violated the rule by failing to provide competent evidence outside the record to support his claim. The Court further concludes that the state courts actually enforced the procedural rule with a clear and express statement that they were rejecting Petitioner's claim on the basis of procedural default. In this regard, the Court finds that to the extent that the state appellate court rejected Petitioner's claim on the merits, it clearly did so as an alternative ruling.

The Court further finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-351 (1984)). *See also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440

F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001);

*Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521-22

(6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res*

*judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have

consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v.*

*Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981). Further, the doctrine

of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at

the earliest possible opportunity. With respect to the independence prong, the Court concludes

that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is

satisfied from its own review of relevant case law that the *Perry* rule is an adequate and

independent ground for denying relief.

According to the fourth part of the *Maupin* test, once the Court determines that a

constitutional claim is subject to procedural default, the Court may not address the merits of that

claim absent a showing by the petitioner of cause to excuse the default an actual prejudice from

the underlying constitutional claim. Petitioner offers no such argument and none is otherwise

apparent to the Court. The Court therefore concludes that Petitioner's twenty-second ground for

relief is procedurally defaulted. Respondent's motion to dismiss the twenty-second ground for

relief is **GRANTED**.

I.      Twenty-Fifth Ground for Relief: The trial court's independent
        review of whether to impose the death sentence violated the Eighth
        and Fourteenth Amendments.

Petitioner claims that several errors in the trial court's statutorily mandated sentencing

opinion demonstrate that the trial court's independent review of whether the aggravating

73

circumstance outweighed the mitigating factors beyond a reasonable doubt did not comport with the Eighth and Fourteenth Amendments. (Doc. # 13, at 72-73.) Petitioner points out that although the prosecutor elected to go forward with Count Two for sentencing purposes, the trial court weighed a wholly different aggravating circumstance than that found by the jury in Count Two. Petitioner argues that the trial court also weighed two separate aggravating circumstances, even though Petitioner had been indicted on only one. The trial court exacerbated that error, according to Petitioner, by conducting an expansive review of each circumstance. Finally, Petitioner argues that the trial court's consideration of the mitigating factors was flawed insofar as the trial court rejected numerous mitigating factors on the basis that other people with similar characteristics have not committed murder, weighed the fact that Petitioner had prior criminal offenses even though defense counsel had not raised Petitioner's lack of a significant criminal history as a mitigating factor, and dismissing any weight to the fact that Petitioner was religious or spiritual on the basis of Petitioner's failure to quote a particular portion of the Bible.

Respondent argues that Petitioner procedurally defaulted his claim when he failed to object to the sentencing opinion at the time of trial. (Doc. # 15, at 26-27.) Petitioner disputes that argument, insisting that he presented this claim on direct appeal as his twentieth proposition of law and that the Ohio Supreme Court rejected it on the merits, finding specifically that Petitioner's claim was well founded but harmless. (Doc. # 18, at 26-28.) Petitioner argues that the only mention that the Ohio Supreme Court made of waiver concerned defense counsel's failure to object to a related jury instruction and the jury's consideration of a different aggravating circumstance than that elected by the prosecution. Petitioner reasons that what the jury considered is constitutionally and analytically different from the manner in which the trial

74

court conducted its independent review of the aggravating circumstance and mitigating factors, only the latter of which forms the basis of the twenty-fifth ground before this Court. Petitioner also argues that even assuming the Ohio Supreme Court's mention of waiver extended to defense counsel's failure to object to the trial court's sentencing opinion, the Ohio Supreme Court merely noted the failure to object and found no prejudice, which Petitioner argues falls short of a clear and express statement enforcing procedural default. Petitioner raises the additional argument that Ohio's contemporaneous objection rule was not applicable to the precise claim at issue, insofar as there was no opportunity for Petitioner to object to the trial court's sentencing opinion and that the first place logically that Petitioner could challenge the trial court's sentencing opinion was on direct appeal. Petitioner concludes by arguing that in the event that this Court imposes an objection requirement in this context, the Ohio Supreme Court did not plainly rely on defense counsel's failure to object to the trial court's consideration of improper evidence and any reliance on the failure to object related only to one of the four components of Petitioner's twenty-fifth ground for relief.

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule was applicable to Petitioner's claim and, if so, whether Petitioner violated that rule. Respondent argues that Petitioner violated Ohio's contemporaneous objection rule by failing to object to various alleged errors the trial court's sentencing opinion. But it is not entirely clear to this Court that Ohio's contemporaneous objection rule applies in such a context. Neither the Ohio Supreme Court nor Respondent cited a decision in which an Ohio court found waiver due to a capital defendant's failure to object to the trial court's independent sentencing opinion. This Court need not resolve that issue, however, because even assuming that Ohio's

75

contemporaneous objection rule does apply with respect to challenges to a trial court's sentencing opinion, it is clear in this case that the Ohio Supreme Court enforced no such waiver, thereby failing to satisfy the second part of the *Maupin* test.

Petitioner presented the allegations set forth in his twenty-fifth ground for relief as the twentieth proposition of law on direct appeal. (App. Vol. 5, at 188-92.) The Ohio Supreme Court rejected the claim as follows:

> In his twentieth proposition, Johnson argues that flaws in the trial court's sentencing opinion constitute reversible error.
>
> Johnson argues that the trial court "weighed a wholly different aggravating circumstance than the jury found in Count Two." The basis for this claim is the error in the verdict form for Count 2. As we previously discussed, Johnson waived that error by failed to object. Further, as we also discussed, supra, nothing in the record suggests that the jury could have found someone else to be the "principal offender," and, in fact, the jury found Johnson to be the "principal offender" with regard to the specification to Count 1, for which the jury received an accurately drafted verdict form.
>
> Thus, the court did not commit prejudicial error by considering his principal offender status when weighing felony-murder specification.
>
> Johnson further contends that the trial court erroneously weighed two aggravating circumstances against his mitigation. The record supports Johnson's claim, as the trial court appears to have weighed the kidnapping and rape convictions as separate aggravating circumstances in its sentencing opinion. As we observed in *State v. Spivey* (1998), 81 Ohio St.3d 405, 420, 692 N.E.2d 151, fn. 2, when a single R.C. 2929.04(A)(7) specification charges two or more predicate felonies, those felonies must be weighed together, as a single aggravating circumstance.
>
> However, our independent review cures this error by the trial court. See generally *Clemons v. Mississippi* (1990), 494 U.S. 738, 745-746, 110 S.Ct. 1441, 108 L.Ed.2d 725; *State v. Lott* (1990), 51 Ohio St.3d 160, 170, 555 N.E.2d 293.
>
> Johnson also complains that the sentencing opinion discussed the facts surrounding his offenses. But discussing these facts does not necessarily constitute error, as we held in *State v. Reynolds* (1998), 80 Ohio St.3d 670, 684-

685, 1998 Ohio 171, 687 N.E2d 1358: "While the trial court discussed the facts surrounding the crime * * * in its opinion, it did not weigh those facts as aggravating circumstances. Instead the court reviewed the nature and circumstances of the crime, as it was required to do pursuant to R.C. 2929.03."

Here, the trial court did not weight the facts as aggravating circumstances in contravention of *Reynolds*. Moreover, our independent review cures any error in the trial court's sentencing opinion. *State v. Noling*, 98 Ohio St.3d 44, 2002 Ohio 7044, 781 N.E.2d 88, p 125, citing *State v. Fox* (1994), 69 Ohio St.3d 183, 191, 1994 Ohio 513, 631 N.E.2d 124.

Finally, Johnson contends that the trial court improperly minimized the weight of the mitigating factors. However, "[i]n imposing sentence, the assessment of and weight given to mitigating evidence are matters within the trial court's discretion." *State v. Cunningham*, 105 Ohio St.3d 197, 2004 Ohio 7007, 824 N.E.2d 504, P 76. Our independent review cures any error, here, as well. *State v. Ashworth* (1999), 85 Ohio St.3d 56, 67, 1999 Ohio 204, 706 N.E.2d 1231, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 173, 555 N.E.2d 293.

We overrule Johnson's twentieth proposition.

*Johnson*, 112 Ohio St. 3d at 248-49; (App. Vol. 6, at 157-58.)

This Court is of the view that the Ohio Supreme Court did not make a clear and express statement enforcing waiver because the Ohio Supreme Court erred in purporting to apply waiver against the component of Petitioner's claim alleging that the trial court weighed the wrong aggravating circumstance during its independent review. In his twentieth proposition of law, Petitioner challenged *not* the jury's consideration of the wrong aggravating circumstance, but the *trial court's* consideration of the wrong aggravating circumstance as set forth in the trial court's O.R.C. § 2929.03(F) sentencing opinion. (It was in his seventeenth proposition of law that Petitioner argued that, due to a faulty verdict form and related jury instructions on the specifications to Count 2, the jury weighed the wrong aggravating circumstance. *Johnson*, 112 Ohio St. 3d at 213-15; (App. Vol. 6, at 136-37.) In stating that the basis for Petitioner's claim

was the error in the verdict form for Count 2, when it was more plausibly the trial court's §

2929.03(F) sentencing opinion itself (App. Vol. 4, at 174-80), the Ohio Supreme Court

erroneously applied the waiver that it had applied against Petitioner's seventeenth proposition of

law–namely, the failure of Petitioner's defense counsel to object to the verdict form and related

jury instructions. The basis of Petitioner's twentieth proposition of law was neither the error in

the verdict form as to Count 2, nor the jury instruction related thereto, but the trial court's

2929.03(F) sentencing opinion. Petitioner is correct that those two claims are factually and

legally distinct. The failure of defense counsel to object to the verdict form or related jury

instruction and the failure of defense counsel to object to the trial court's 2929.03(F) sentencing

opinion are not interchangeable, and the only waiver referenced by the Ohio Supreme Court was

defense counsel's failure to object to the verdict form and related jury instruction. The Ohio

Supreme Court did not apply waiver against any other components of Petitioner's twentieth

proposition of law.

 For the foregoing reasons, notwithstanding whether Ohio's contemporaneous objection

rule requires objections to a trial court's § 2929.03(F) sentencing opinion, this Court cannot find

that the Ohio Supreme Court made a clear and express statement enforcing Ohio's

contemporaneous objection rule against the component of Petitioner's twentieth proposition of

law alleging that the trial court weighed the wrong aggravating circumstance in its § 2929.03(F)

sentencing opinion.    That being so, Respondent's argument that Petitioner defaulted his twenty-

fifth ground for relief by failing to object at trial fails the second part of the *Maupin* test.

Respondent's motion to dismiss Petitioner's twenty-fifth ground for relief must be **DENIED**.

78

J.      Twenty-Sixth Ground for Relief: Ohio's death penalty statute is
        unconstitutional.

In his twenty-sixth ground for relief, Petitioner raises multiple challenges to the
constitutionality of Ohio's capital punishment scheme. (Doc. # 13, at 73-81.) Respondent
argues that Petitioner's claim is procedurally defaulted in its entirety because Petitioner raised it
improperly in postconviction in violation of Ohio's *res judicata* rule. (Doc. # 15, at 27-29.)
Respondent argues that Petitioner erred by raising the claim in postconviction without sufficient
evidence *dehors* the record and by not raising it on direct appeal.

Petitioner argues that he did raise this claim on direct appeal as his twenty-third
proposition of law and that the Ohio Supreme Court rejected the claim on its merits. (Doc. # 18,
at 28.) Petitioner argues, therefore, that because he raised the claim on direct appeal and
obtained a merits ruling, he did not commit procedural default. Petitioner's argument is well
taken.

In the twenty-sixth ground for relief before this Court, Petitioner raises challenges falling
into four broad categories: (1) that Ohio's scheme permits arbitrary and unequal capital
punishment; (2) that Ohio's scheme employs unreliable sentencing procedures; (3) that O.R.C. §
2929.04(A)(7) is unconstitutional when used to aggravate O.R.C. § 2903.01(B) felony murder;
and (4) that O.R.C. § 2929.03(D)(1) and § 2929.04 are unconstitutionally vague. Within each of
the four broad categories, Petitioner makes several arguments assailing the constitutionality of
Ohio's capital punishment scheme. Every single argument set forth in Petitioner's twenty-sixth
ground for relief was included in Petitioner's twenty-third proposition of law on direct appeal.
*Compare* Doc. # 13, at 73-81 *with* App. Vol. 5, at 200-25. Accordingly, Respondent's assertion

79

that Petitioner neglected to raise his twenty-sixth ground for relief on direct appeal is completely belied by the record. Petitioner violated no state procedural rule in the presentation of his twenty-sixth ground for relief and fairly presented it in its entirety.

Respondent's motion to dismiss Petitioner's twenty-sixth ground for relief as procedurally defaulted is **DENIED**.

## V. Conclusion

For the foregoing reasons, Respondent's motion to dismiss procedurally defaulted grounds (Doc. # 15) is **GRANTED** in part and **DENIED** in part. Respondent's motion to dismiss is **GRANTED** as to grounds fourteen, fifteen (subject to reconsideration), twenty-one, and twenty-two; Respondent's motion to dismiss is **DENIED** as to grounds three, ten, sixteen, seventeen, twenty-five, and twenty-six.

Petitioner's motion for discovery, as set forth in his memorandum in response (Doc. # 18), is **DENIED**.

The parties are **DIRECTED** to contact the Magistrate Judge within ten (10) days of the date of this order for purposes of scheduling a status conference.

**IT IS SO ORDERED.**

9 - 29 - 2009

**EDMUND A. SARGUS, JR.**
**United States District Judge**

80