**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MARVIN G. JOHNSON,**

        **Petitioner,**                  **Case No. 2:08-cv-55**

    **v.**

**DAVID BOBBY, Warden,**              **JUDGE. SARGUS,**
                                      **Magistrate Judge Kemp**

        **Respondent.**

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. §2254. This matter is before the Court upon Petitioner's first motion for discovery (Doc. # 35), Respondent's response in opposition (doc. # 37), and Petitioner's reply in support (Doc. # 38).

### I.  Overview

Petitioner seeks leave to conduct discovery on his fourth, sixth, seventh, eighth, ninth, tenth, twelfth, thirteenth, seventeenth, eighteenth, and twenty-fourth grounds for relief.  (Doc. # 35, at 3.)  Petitioner asserts that the majority of these claims relate to ineffective assistance of counsel and explains:

> [I]n his Fourth Habeas Ground, Petitioner alleges ineffective assistance of counsel for failing to object to victim impact evidence.  Petition pp. 14-15.  In his Sixth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for failing to present evidence from Petitioner's family regarding his history and background.  Petition pp. 17-22.  In his Seventh Habeas Ground, Petitioner alleges ineffective assistance of counsel related to the investigation for, preparation of, and presentation of psychological evidence.  Petition pp. 23-28.  In his Eighth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for failing to present neurological evidence, evidence regarding diabetes and cultural evidence.  Petition pp. 28-34.  In his Ninth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for failing obtaining [sic] a competent expert on substance abuse.  Petition pp. 34-37.  In his Tenth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for presenting Petitioner's criminal history after having obtained a ruling that it was not to be admitted.  Petition pp. 37-39.  In his Eleventh Habeas Ground, Petitioner alleges the ineffective assistance of counsel for failing to have the rape kit tested and compared.  Petition pp. 37-39.  In his Nineteenth Habeas Ground, Petitioner

alleges the ineffective assistance of counsel for various acts and omissions. Petition pp. 59-60.

(Doc. # 35, at 5-6.)  In support of these claims, Petitioner seeks to conduct the following discovery:

1) Deposition of Attorney Andrew J. Warhola, Jr. (as to each of the above habeas grounds);

2) Deposition of Attorney Jack A. Blakeslee (as to each of the above habeas grounds);

3) Deposition of Ms. Marsha Heiden, the mitigation specialist at trial (as to the Sixth-Ninth Habeas Grounds);

4) Deposition of Ms. Marianna Williamson, a testifying chemical dependency counselor (as to the Ninth Habeas Ground);

5) Deposition of Dr. Richard Jackson, a testifying psychologist (as to the Seventh and Ninth Habeas Grounds);

6) Deposition of Dr. Mark Fettman, a testifying psychologist (as to the Seventh and Ninth Habeas Grounds); and

7) Order the State of Ohio to test the rape kit in their possession (as to the Eleventh Habeas Ground).

(*Id.* at 7.)

Petitioner also seeks leave to conduct discovery on his twelfth ground for relief.  There, Petitioner alleges that investigating officers committed a "*Massiah/Henry*" violation by employing a jail house informant named Mickey Alexander to obtain post-indictment statements from Petitioner in violation of his Fifth, Sixth, and Fourteenth Amendment rights.  (*Id.* at 9.)  In support of that claim, Petitioner seeks live depositions of Mickey Alexander and Detective Harbin, as well as a records deposition of the Guernsey County Jail for records related to Mickey Alexander, inmate visitation logs from August 15, 2003 through August 28, 2003, inmate telephone logs from August 15, 2003 through August 28, 2003, and any retained audio tapes of any phone calls monitored where Mickey Alexander was involved.

In addition, Petitioner seeks leave to conduct discovery on the claim of appellate counsel ineffectiveness set forth in his thirteenth ground for relief.  Specifically, Petitioner seeks

2

discovery on his allegation that "appellate counsel failed to present the trial court's error in allowing hearsay evidence after sustaining an objection and trial counsel's ineffectiveness in not continuously objecting after the state ignored the sustained objections." (*Id.* at 11.)  In support of that claim, Petitioner asks leave to depose Attorneys Dennis L. Sipe and Kathleen McGarry.

Petitioner also seeks leave to conduct discovery on his eighteenth ground for relief. There, Petitioner claims as error the failure of the trial court to conduct a voir dire of the jury after an outburst by spectator and State's witness Utelius Barnes, who twice shouted a profanity-laced threat toward Petitioner.  Although acknowledging that the rules of evidence forbid the use of juror testimony to impeach an otherwise valid verdict, Petitioner points out that the rules of evidence allow such evidence to prove whether an extraneous influence improperly affected the jury's verdict.  (*Id.* at 13-14.)  Accordingly, Petitioner seeks leave to depose sitting jurors from his trial jury.

Finally, Petitioner asks to conduct discovery in support of his twenty-fourth ground for relief, in which he alleges a "systemic problem with the death penalty in Guernsey County and [that his] trial counsel were ineffective in failing to challenge [the same]." (*Id*. at 14.)  Asserting violations of his rights to equal protection and due process of law because capital indictments are sought disproportionately against African-Americans and/or improperly when the victim is white, Petitioner seeks leave to conduct the following discovery:

1) From Petitioner's First Requests for Admissions, attached as Exhibit A;

2) From Petitioner's First Set of Interrogatories, attached as Exhibit A;

3) From Petitioner's First Requests for Production of Documents, attached as Exhibit A;

4) Depositions of C. Keith Plummer, Esq. and Daniel G. Padden, Esq. on the Guernsey County, Ohio Prosecutor's Office's polices, procedures, and guidelines regarding who should be charged with capital murder before and at the time of Petitioner's prosecution, and the decision to charge Petitioner with capital murder;

5) Deposition of any other person, who worked in the Guernsey County prosecutor's office at the time of Petitioner's prosecution who had or could have had knowledge of that office's policies, procedures, or guidelines, in place before

or at that time, regarding who should be charged with capital murder, or who had or could have had knowledge of the reasons for charging Petitioner with capital murder;

6) Deposition of Attorney Andrew J. Warhola, Jr.;

7) Deposition of Attorney Jack A. Blakeslee.

(*Id.* at 15-16.)

Respondent opposes Petitioner's motion in its entirety.  In addition to raising arguments specific to each claim and discovery request that Petitioner makes, Respondent suggests that the same restrictions set forth in 28 U.S.C. § 2254(e)(2) that limit a petitioner's right to develop the record through an evidentiary hearing set forth in 28 U.S.C. § 2254(e)(2) should apply to limit a petitioner's right to conduct discovery.  (Doc. # 37, at 4-6.)

## II.  Standard

The discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply in habeas corpus actions.  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings.  As a result of the holding in *Harris*, the Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976.  Specifically, Rule 6(a) provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only " 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....' " *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300).  *See also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460

4

(6th Cir. 2001).  In keeping with the well settled principle that habeas petitioners are not entitled to go on a fishing expedition in search of damaging evidence, this "good cause" standard requires the petitioner to at least attempt to identify what he expects to uncover through his discovery requests.  *See Williams v. Bagley, supra*, 380 F.3d at 976.

### III.  Analysis

Before addressing Petitioner's specific claims and discovery requests, the Court turns first to Respondent's assertion that the restrictions set forth in 28 U.S.C. § 2254(e)(2) limiting a petitioner's right to an evidentiary hearing should limit a petitioner's right to conduct discovery. The Court disagrees.

In *Holland v. Jackson*, 542 U.S. 649, 653 (2004), the Supreme Court held that the restrictions on factual development set forth in 28 U.S.C. § 2254(e)(2) apply when a petitioner seeks to present new evidence not considered by the state courts, whether he seeks to present that new evidence through an evidentiary hearing or expansion of the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases.[1]  This Court is aware of at least one case in which *Holland*'s holding was extended to prohibit a discovery request that appeared to be fashioned as "an end run around the restrictions of Rule 7 as interpreted by *Holland v. Jackson*, 542 U.S. 649 (2004)."  *Stallings v. Bagley*, Case No. 505-CV-722, 2007 WL 437888, at * 2 (N.D. Ohio Feb. 6, 2007).

That said, as Respondent himself recognizes, when Congress amended the habeas corpus

---

[1]      Section 2254(e)(2) of Title 28 of the United States Code provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–

(A) the claim relies on–
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

statutes to include § 2254(e)(2)'s restrictions on evidentiary hearings, Congress left intact

Habeas Corpus Rules 6 and 7 governing discovery and expansion of the record.  Thus, it appears

that whether or to what extent a petitioner may conduct discovery continues to be governed only

by Rule 6's "good cause" standard.  *See, e.g., Simmons v. Simpson*, No. 3:07-CV-313-S, 2009

WL 4927679, at * 5 (W.D. Ky. Feb. 12, 2009) ("Contrary to the Warden's views, a petitioner

seeking discovery need not satisfy the stringent requirements established by 28 U.S.C. §

2254(e)(2) that govern the availability of evidentiary hearings in a habeas corpus proceeding.").

         If the foregoing establishes that the restrictions set forth in § 2254(e)(2) apply only when

a petitioner seeks to add new facts to the record and have the Court consider those new facts in

deciding his constitutional claims, then Respondent's argument is premature.  At this point,

Petitioner has not sought (and may never seek) to present new evidence in support of his claims.

At this point, he has asked only for leave to conduct discovery that may lead to new evidence.

The Court will address any arguments regarding whether § 2254(e)(2) precludes Petitioner from

introducing new evidence in support of his claims when and if he seeks to present that new

evidence.  It also bears mentioning that, to the extent that Petitioner may seek to present new

evidence for purposes other than demonstrating that he is entitled to relief on his constitutional

claims, such as attempting to satisfy the cause-and-prejudice exception to procedural default, the

restrictions set forth in § 2254(e)(2) would appear not to apply.  *See Cristin v. Brennan*, 281 F.3d

404, 417 n.14 (3rd Cir. 2002) (suggesting that the standard adopted in § 2254(e)(2) does not

apply to evidentiary hearings on whether a petitioner can establish an excuse for an earlier

procedural default); *see also Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001) (finding that §

2254(e)(2) should not be applied when expansion of the record is sought for purposes other than

introducing new evidence on the merits of a claim).

### A.  <u>Grounds Four, Six, Seven, Eight, Nine, Ten, Eleven, Nineteen – Ineffective Assistance</u>

         Petitioner's first set of discovery requests pertain to the numerous allegations of

ineffective assistance of counsel set forth in his fourth, sixth, seventh, eighth, ninth, tenth,

eleventh, and nineteenth grounds for relief.  As set forth above, Petitioner argues in his fourth ground for relief that his trial attorneys were ineffective for failing to object to the introduction of victim impact evidence that was improper and inadmissible.  In his sixth ground for relief, Petitioner argues that his trial attorneys were ineffective for failing to present testimony or evidence about Petitioner's family, character, upbringing, and background.  Petitioner argues in his seventh ground for relief that trial counsel were ineffective for failing to investigate and provide their defense psychologist with information and records, failing to ensure that the psychologist spent enough time with Petitioner to sufficiently evaluate him, failing to prepare the psychologist to testify effectively, and allowing the psychologist to present evidence that provided the jury with additional reasons to give Petitioner the death penalty.  In his eighth ground for relief, Petitioner argues that his trial counsel were ineffective for failing to investigate and present expert testimony about Petitioner's neurological deficits, behavioral problems stemming from diabetes, and cultural differences due to race and where he was raised.  Petitioner asserts in his ninth ground for relief that his trial attorneys were ineffective for failing to present during the mitigation hearing competent expert evidence concerning Petitioner's substance abuse problems.  In his tenth ground for relief, Petitioner argues that trial counsel were ineffective for permitting the jury to hear repeated testimony about Petitioner's criminal history.  Petitioner asserts in his eleventh ground for relief that his trial attorneys were ineffective for failing to have the victim's rape kit tested.  And in his nineteenth ground for relief, Petitioner argues that his trial attorneys were ineffective during the trial and mitigation phases of his capital trial for numerous acts and omissions.

Relying on the two-part showing necessary for demonstrating ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), Petitioner asserts that *Strickland*'s showing "is less than a preponderance of the evidence standard."  (Doc. # 35, at 6.) Petitioner asserts that this Court must conduct an objective review of counsel's performance measured for reasonableness under prevailing professional norms and including a context-

dependent consideration of the challenged conduct as viewed from counsel's perspective at the time of the trial.  In view of that, Petitioner argues, "[t]he best source of evidence related to this time and context-dependent inquiry is the defense 'team' and members of the defense team at the time of trial."  (*Id*. at 7.)  To that end, Petitioner requests the opportunity to depose trial attorney Andrew J. Warhola, Jr., trial attorney Jack A. Blakeslee, Marsha Heiden (Petitioner's mitigation specialist at trial), Marianna Williamson (a chemical dependency counselor who testified at trial), Dr. Richard Jackson (a psychologist who testified at trial), and Dr. Mark Fettman (an addiction psychiatrist who testified at trial).  Petitioner also asks the Court for an order directing the State of Ohio to test the rape kit from the victim.

Petitioner asserts that if the facts are more fully developed through the discovery that he seeks, he will be able to demonstrate that he is entitled to habeas corpus relief.  Petitioner reasons that the depositions of trial counsel will enable this Court to determine whether or to what extent counsel's acts and omissions were based on reasonable tactical decisions.  Similarly, Petitioner asserts that the deposition of his mitigation specialist Marsha Heiden will assist the Court in ascertaining the extent of the mitigation investigation that defense counsel conducted and what sort of direction counsel provided Ms. Heiden.  Petitioner argues that depositions of other witnesses who testified--such as Marianna Williamson, Dr. Richard Jackson, and Dr. Mark Fettman–will enable to the Court to determine from those witnesses why defense counsel retained them, what information or assistance defense counsel provided them, and the extent to which counsel prepared them before they took the stand.  Petitioner asserts that the discovery he seeks is specific, limited, and reasonably calculated to lead to evidence supporting his ineffective assistance claims.  Petitioner emphasizes that *Strickland* and resulting Sixth Circuit law make it clear that counsel have a duty to conduct reasonable investigations or to make reasonable decisions that make certain investigations unnecessary, and that the discovery Petitioner seeks is the best source of information concerning the foregoing.

Respondent opposes Petitioner's requests to conduct depositions, asserting that Petitioner

8

based his requests on broad and unsupported allegations regarding defense counsel's investigation, preparation, and litigation of Petitioner's case.  (Doc. # 37, at 7.)  Respondent argues that Petitioner fails to satisfy Rule 6's "good cause" standard because Petitioner has neither related any of his proposed discovery to specific factual allegations nor identified any specific allegations that, if proven true through the discovery Petitioner seeks, would entitle him to habeas relief.  Respondent further asserts that Petitioner offers only vague speculations about what he expects or hopes to find from the proposed depositions.  With respect to Petitioner's request for an order directing the State to test the victim's rape kit, Respondent first notes that Petitioner offers no basis for the discovery request and then submits that testing of the rape kit would not be informative because no testing could substantiate or refute the victim's account of Petitioner's coercing her to perform oral sex on him.  (*Id*. at 7 n.1.)

In order to determine whether petitioner is entitled to conduct discovery on these claims, the Court must identify the essential elements of this claim.  *Bracy*, 520 U.S. at 904.  Regarding petitioner's ineffective assistance of counsel claim, the right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  With respect to the first prong of the *Strickland* test, the Court notes that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689.

To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the

9

proceedings would have been different.  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the Court determine that Petitioner has failed to satisfy one prong, it need not consider the other.  *Id*. at 697.

The Court is satisfied that good cause exists at this stage of the case for the depositions of some of the witnesses that Petitioner seeks to conduct in support of his ineffective assistance claims.  The allegations set forth in Petitioner's ineffective assistance claims are properly before the Court and are neither patently frivolous nor palpably incredible.  To a significant extent, the discovery that Petitioner requests is specific, limited, and reasonably calculated to lead to evidence in support of his various claims that his trial attorneys performed deficiently and to his prejudice through certain acts and omissions.  It is usually the case that information about what strategy defense attorneys formulated and what investigation was conducted to arrive at and implement that strategy is uniquely in possession of those defense attorneys and that is usually sufficient to establish good cause to depose trial counsel about their actions and omissions.

For example, in his tenth ground for relief, Petitioner challenges as ineffective the fact that counsel allowed the jury to hear about Petitioner's criminal history.  An accused's criminal history is inherently prejudicial and, under most circumstances, inadmissible.  Defense counsel in this case mentioned aspects of Petitioner's criminal history in their trial-phase opening statement. (Tr. Vol. 8, at 1343-44.)  Counsel also did not object when the prosecution introduced Petitioner's criminal history during direct examination of the murder victim's mother, Tina Bailey.  (Tr. Vol. 10, at 1904-05.)  In some cases, and perhaps in this one, there may be strategic reasons for alluding to, and not objecting to evidence of, a defendant's criminal history during the guilt phase of a capital murder trial, but it is by no means clear what that reason may have been.  The point is that the "why" for counsel's decision to allow the jury to hear about Petitioner's criminal history is something only counsel can provide.  It makes a significant

10

difference whether counsel was pursuing a calculated strategy informed by sufficient investigation, *see Strickland*, 466 U.S. at 690, or if counsel revealed Petitioner's criminal history out of inattention, *see, e.g., Wiggins v. Smith*, 539 U.S. 510, 526 (2003), or as part of an inherently risky strategy based on little or no investigation, *see, e.g., Ege v. Yukins*, 485 F.3d 364, 378-80 (6th Cir. 2007). Only by deposing counsel will Petitioner be able to shed light on which of these alternatives best describes counsel's conduct here.

The same is true with respect to the remaining ineffective assistance claims upon which Petitioner seeks discovery. That is, depositions of Petitioner's trial attorneys are the best, if not the only, source of information about counsel's investigation, impressions, preparation, and strategic decisions. Based on Petitioner's allegations and the record as it exists, good cause exists to believe that the facts, if more fully developed through depositions of Petitioner's trial attorneys, could conceivably entitle Petitioner to relief on his various claims of ineffective assistance of counsel. As noted above, the allegations set forth in Petitioner's ineffective assistance claims are specific, properly before the Court, and are neither patently frivolous nor palpably incredible. Without expressing any opinion as to the merits of Petitioner's claims, the Court is satisfied that Petitioner has laid a sufficient foundation to at least question his trial attorneys about the acts and omissions that resulted in such consequences as allowing the jury to hear about Petitioner's criminal history and certain victim impact evidence, as well as possibly failing to present to the jury available mitigation evidence concerning Petitioner's background, character, medical conditions, and mental or neurological incapacities.

The Court is not immediately persuaded, however, that depositions of expert witnesses who testified at Petitioner's mitigation phase are also warranted. Although it is apparent from the trial record that Marsha Heiden, Drs. Jackson and Fettman, and to a lesser extent, Marianna Williamson, had significant contact with Petitioner's counsel, as well as with one another, in preparation for the mitigation phase of Petitioner's trial, counsel can, at their depositions, speak to the strategy and preparation relating to these witnesses, and their trial testimony also provides

11

evidence as to how that strategy and preparation did or did not translate into the evidence put forward at the mitigation phase of the trial.  In the event that issues about the extent to which counsel effectively prepared and used these witnesses persist after counsel are deposed, Petitioner may make application for further depositions.

Similarly, Petitioner has failed to persuade this Court that good cause exists to have Tina Bailey's rape kit tested.  Defense counsel's opening statement, as well as testimony by Detective Harbin and Tina Bailey, consistently established that Petitioner and Tina Bailey had had sexual relations within hours after Daniel's murder.  When Petitioner himself, briefly functioning as his own counsel, questioned Tina Bailey, Petitioner made no suggestion that he had not had sexual contact with Tina Bailey as she had described or that she had had sexual contact with anyone else on or around that morning. (Tr. Vol. 11, at 2121-23, 2128.)  All that was in dispute was whether Petitioner had exerted force or coercion, and the testing of Tina Bailey's rape kit would yield no information tending to prove or disprove that element.  In view of that circumstance, counsel had no reason to request that Tina Bailey's rape kit be tested, and arguably, plenty of reasons not to.  There exists no reason to test the kit now.  Depositions of Petitioner's defense attorneys might very well confirm that.  Further, the Court cannot discern any manner in which Petitioner was prejudiced by counsel's omission.  Accordingly, the Court is not persuaded that good cause exists for Petitioner's request to have Tina Bailey's rape kit tested.

For the foregoing reasons, Petitioner has demonstrated good cause, in support of his fourth, sixth, seventh, eighth, ninth, tenth, eleventh, and nineteenth grounds for relief, to conduct depositions of trial attorneys Andrew Warhola and Jack Blakeslee.

### B.  Ground Twelve – *Massiah/Henry* Violation for Use of Jailhouse Informant

As Petitioner states in his motion for discovery, he alleges in his twelfth ground for relief "that the investigating officers employed a jail house informant, Mickey Alexander, to obtain statements from Petitioner after those same officers had formally instituted charges against Petitioner."  (Doc. # 35, at 9.)  Petitioner explains that Alexander had had a lengthy criminal past

12

and a history of providing information to law enforcement in exchange for leniency.  When

Petitioner was detained on the murder charges and eventually became Alexander's cell mate,

Alexander began collecting information and passing it on to Detective Harbin.  It was Alexander,

Petitioner explains, who told the authorities where in Petitioner's wallet they could find

Petitioner's key to Tina Bailey's home and who, during a secretive furlough arranged by police,

led detectives to the location where Petitioner had stashed the money he had obtained from Tina

Bailey following Daniel's murder.  Petitioner contends "there was a purposeful planting of

Alexander next to Petitioner, and thus, all evidence derived from that illegal plant is tainted."

(Doc. # 35, at 10.)  To substantiate this contention, Petitioner seeks to conduct live depositions

of Mickey Alexander and Detective Harbin, and a records deposition of the Guernsey County

Jail records related to Mickey Alexander, inmate visitation logs from August 15, 2003 through

August 28, 2003, inmate telephone logs from August 15, 2003 through August 28, 2003, and any

retained audio tapes of any phone calls monitored where Mickey Alexander was involved.  (Doc.

# 35, at 10.)

Respondent urges the Court to deny Petitioner's discovery requests.  Asserting that

Petitioner is required to offer some evidence why discovery is necessary, Respondent argues that

Petitioner falls short by offering "only his own vague speculation as to what might be found."

(Doc. # 37, at 8.)  Respondent explains:

> There is nothing in the record which would allow Johnson to even allege that
> Alexander was working for the State.  There is not one scintilla of evidence that
> Alexander solicited the information about the crimes from Johnson, let alone at
> the asking of Det[ective] Harbin or any agent of the State.  To allow discovery on
> this issue would be the very definition of a fishing expedition and a waste of this
> Court's and the party's time and resources.

(Doc. # 37, at 8-9.)

In reply, Petitioner offers from the record what Petitioner perceives to be evidentiary

foundation for his assertion that Mickey Alexander was purposefully planted with Petitioner for

the purpose of obtaining incriminating information from Petitioner and passing it on to the State

to use against Petitioner at trial.  (Doc. # 38, at 8.)  Petitioner reiterates as presumptive evidence

13

that Alexander was a "plant" the fact that he had a lengthy criminal past and a history of providing information to police in exchange for leniency, the fact that he made contact with Detective Harbin about gathering information from Petitioner, the fact that he managed to get himself celled with Petitioner, the fact that he had several meetings with police to provide them with information that he had learned from Petitioner, and the fact that the police arranged a furlough for him under the guise of a doctor's appointment so that he could direct them to the location where Petitioner had stashed the money Petitioner had obtained from Tina Bailey.  From these facts, Petitioner posits that "[t]he police knew about Alexander's past and used him to obtain information about Petitioner after Petitioner was represented by counsel." (Doc. # 38, at 9.)

In order to determine whether Petitioner is entitled to conduct discovery, the Court must identify the essential elements of the claimed violation upon which Petitioner seeks to conduct discovery.  In *Massiah v. United States*, 377 U.S. 201, 206 (1964), the Supreme Court held that the Sixth Amendment prohibits the government from deliberately eliciting incriminating statements from an accused once the right to counsel has attached.  In *United States v. Henry*, 447 U.S. 264, 273 (1980), the Supreme Court held that *Massiah* applied to the use of jailhouse informants.  Thus, to establish a Sixth Amendment violation under *Massiah* and *Henry*, the petitioner must demonstrate that the government took some action that was designed to deliberately elicit incriminating remarks.  *See, e.g., Alexander v. Smith*, 311 F. App'x 875, 886-87 (6th Cir. 2009); *Massiah*, 377 U.S. at 72-73; *Henry*, 447 U.S. at 273.  To be clear, the petitioner must do more than demonstrate that an informant voluntarily reported incriminating remarks that the petitioner uttered.  *See, e.g., Kuhlman v. Wilson*, 477 U.S. 436, 459 (1986); *Alexander*, 311 F. App'x at 887.

For the following reasons, the Court concludes that Petitioner is not entitled to the discovery he seeks on this claim.  Assuming as true every fact that Petitioner sets forth above, the most that those facts establish is that Alexander endeavored to gather information from

14

Petitioner and pass it on to police in the hopes of obtaining favors from the police regarding Alexander's own criminal matters.  Those facts do not establish, or even suggest, that the police planted Alexander to collect information from Petitioner.  Simply put, the record evidence before this Court belies Petitioner's assertions that Mickey Alexander was purposefully planted to get incriminating information from Petitioner and pass it on to police.  Alexander testified during a January 1, 2004 pretrial hearing.  (Tr. Vol. 2, at 81-113.) Alexander confirmed his history of convictions and periods of incarceration.  Alexander agreed that he enjoyed a "familiarity" with various corrections officers and deputies, but insisted that whenever he provided them with information gleaned from fellow inmates, it was not in the hopes or with the expectation of receiving benefits in return.  (*Id*. at 91-92.)  With respect to Petitioner's case specifically, Alexander testified that he and Petitioner had known each other before they were detained together awaiting trial on their respective charges and that it was Petitioner who asked to be celled with Alexander, not the other way around (*Id*. at 99-100).  Alexander testified that Petitioner revealed information to Alexander unsolicited (*Id*. at 93) and that Alexander never asked Petitioner questions (*Id*. at 94, 97, 102).  Alexander also testified that he contacted authorities about providing information that he learned from Petitioner (*Id*. at 95-96) and that the authorities never instructed or asked Alexander to try to gather information from Petitioner (*Id*. at 101, 111-12.)  Alexander testified that he passed the information on to the authorities because he knew Tina Bailey and felt that what Petitioner had done was wrong.  (*Id*. at 108.)  Alexander denied that he received any leniency with respect to the charges that he was facing, insisting that the plea deal he received had been worked out already and was not altered or affected on the basis of the information he provided to authorities about Petitioner's case.  (*Id*.)

Detective Greg Clark testified during Petitioner's trial.  (Tr. Vol. 9, at 1564-1606.)  Clark testified on cross examination that he had no knowledge of any law enforcement officers either making contact with Mickey Alexander for the purpose of eliciting incriminating information from Petitioner or arranging for Alexander to cell with Petitioner.  (*Id*. at 1591-93.)  Clark denied

15

that authorities had any designs to use Alexander to collect incriminating information from Petitioner. (*Id*. at 1593.) Detective Brian Harbin also provided extensive testimony during Petitioner's trial. (Tr. Vol. 9, at 1607-1691.) Harbin testified that Alexander contacted him willing to provide information that Alexander was learning from Petitioner. (*Id*. at 1634.) When Harbin met with Alexander and heard what Alexander related to him, Harbin recognized that Alexander was providing details that only the assailant would have known. (*Id*. at 1635.) Harbin denied that he made any arrangements for Alexander to cell with Petitioner, denied that anyone from law enforcement placed Alexander with Petitioner, denied that authorities asked Alexander to solicit incriminating statements from Petitioner, and insisted that Alexander reached out to the authorities and not the other way around. (*Id*. at 1636-39.) Harbin reiterated on cross examination that the police did not <u>use</u> Alexander to collect incriminating information from Petitioner. (*Id*. at 1668.) Harbin insisted on cross examination that the government provided no "consideration" to Alexander in exchange for the information he was providing. Harbin explained during redirect examination that any money and cigarettes that authorities had given Alexander were to ensure his safety, not as a reward for his help or for use to entice Petitioner to make incriminating statements. (*Id*. at 1686.)

According to the trial record, therefore, the government did not purposefully plant Mickey Alexander to obtain incriminating statements from Petitioner and any information that Alexander provided to police was by his own volition. Petitioner may doubt that and may suggest that it is implausible on its face, but that is what the record establishes and Petitioner did not refute it during trial or postconviction. Petitioner offers no foundation to support his belief that Alexander was purposefully planted. Petitioner thus falls short of establishing good cause to believe that the discovery he seeks would yield evidence to substantiate his belief that Alexander was purposefully planted to obtain incriminating statements from Petitioner and demonstrate that he is entitled to relief on his *Massiah/Henry* claim. That being so, the Court denies Petitioner's motion to conduct discovery on his twelfth ground for relief.

16

## C.  Ground Thirteen – Appellate Counsel Ineffectiveness

Petitioner seeks leave to conduct discovery on his claim that his appellate counsel were ineffective for failing to raise on direct appeal a claim challenging both the trial court's alleged error in allowing hearsay evidence after sustaining an objection to the evidence and trial counsel's alleged ineffectiveness in failing to continuously object after the prosecution ignored the sustained objections.  (Doc. # 35, at 11.)  Petitioner refers specifically to certain testimony by Detectives Brian Harbin and Greg Clark in which they related information provided to them by jailhouse informant Mickey Alexander, who did not testify at trial.  Petitioner reasons that because not every decision made by appellate counsel can be insulated from review in habeas corpus by labeling it as "strategic," it is necessary to conduct discovery to explore what sort of investigation and decision making informed appellate counsel's decision in this regard.  Petitioner accordingly seeks permission to depose his appellate attorneys Dennis L. Sipe and Kathleen McGarry.

Respondent opposes Petitioner's request, arguing that Petitioner has failed to demonstrate good cause to depose his appellate counsel.  Relying, as Petitioner did, on the factors established by the Sixth Circuit in *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999), for reviewing claims of ineffective assistance of appellate counsel, Respondent asserts that Petitioner has failed to allege how any of his proposed discovery would shed light on any of the *Mapes* factors.  Respondent states that Petitioner has neither provided any evidence that the omitted claim was stronger than any claims included in the appeal, nor provided evidence that counsel's decision was based upon deficient performance, nor provided evidence that appellate counsel's omission of the claim prejudiced Petitioner.  (Doc. # 37, at 10.)

The Court disagrees and finds good cause for the discovery that Petitioner requests. The damaging nature of information possessed by Mickey Alexander that the prosecution managed to introduce without having Alexander testify, combined with the importance of an accused's Sixth Amendment right to confront his accuser, persuade this Court that there is good cause to believe

17

that deposing Petitioner's appellate attorneys could lead to relevant information supporting Petitioner's thirteenth ground for relief.

With respect to the essential elements of Petitioner's claim, the *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). *But see Smith v. Anderson*, 104 F. Supp. 2d 773, 839 (S.D. Ohio 2000) ("This Court believes that, in capital cases, appellate counsel should approach the traditional process of winnowing out claims with extreme caution."); *Jamison v. Collins*, 100 F. Supp. 2d 647, 740-41 (S.D. Ohio 2000) ("[W]e believe that any 'winnowing' or narrowing of issues must be done very cautiously when a person's life is at stake.").

Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

A.  Were the omitted issues "significant and obvious?"

B.  Was there arguably contrary authority on the omitted issues?

C.  Were the omitted issues clearly stronger than those presented?

D.  Were the omitted issues objected to at trial?

E.  Were the trial court's rulings subject to deference on appeal?

F.  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G.  What was appellate counsel's level of experience and expertise?

H.  Did the petitioner and appellate counsel meet and go over possible issues?

18

I.  Is there evidence that counsel reviewed all the facts?

J.  Were the omitted issues dealt with in other assignments of error?

K.  Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999). The Sixth Circuit cautioned, however, that this list is not exhaustive and need not produce a certain "score." *Id.* at 428.

Petitioner argues that his appellate counsel performed deficiently and to his prejudice by failing to raise on appeal a claim challenging the trial court's decision to allow, and trial counsel's failure to continuously object to, hearsay testimony during Petitioner's trial concerning information provided by jailhouse informant Mickey Alexander. As noted above, Alexander testified during a pretrial suppression hearing. The prosecution did not call Alexander during trial. Thus, the jury never heard directly from Alexander and Petitioner's defense attorneys never had an opportunity to cross-examine Alexander for the jury to hear. Most damaging to Petitioner was information provided by Alexander that led police to three key pieces of evidence that the prosecution introduced during trial: the $1000 that Petitioner obtained from Tina Bailey; the key to Tina Bailey's house hidden in Petitioner's wallet; and the shoes and shoe laces from Lisa Wilson's house. In lieu of calling Alexander as a trial witness, Petitioner complains, the prosecution introduced information that Alexander provided to police through the testimony of Detectives Brian Harbin and Greg Clark. Petitioner argues that Alexander was not unavailable as a witness and that the prosecution, by introducing Alexander's information through the testimony of Detectives Harbin and Clark, rather than Alexander himself, prevented the jury from assessing the credibility of a key witness against Petitioner. In view of the fact that the trial court initially sustained two hearsay–based objections by defense counsel but then proceeded to allow the prosecution to continue to elicit hearsay testimony, Petitioner argues that his appellate attorneys performed unreasonably and to his prejudice in failing to raise an issue challenging the trial court and defense counsel in this regard.

19

The Court is satisfied that there is good cause for Petitioner to depose his appellate attorneys.  There is sufficient factual and legal foundation to question appellate counsel's failure to raise this issue on direct appeal and only they can provide explanations concerning the issues they chose to raise, the issues they elected to omit, and why.  The discovery that Petitioner requests is specific, limited, and reasonably calculated to lead to evidence in support of his claim that his appellate counsel performed deficiently and to his prejudice by failing to challenge on appeal the failure of the trial court and/or trial counsel to prevent the jury from hearing testimony that at one point the trial court, defense counsel, and even the prosecution agreed was hearsay. (Tr. Vol. 9, at 1640.) Although the State's case against Petitioner was strong, the information that Mickey Alexander learned from Petitioner and in turn provided to detectives was particularly incriminating. The gravamen of Petitioner's argument is that had the trial court, at the behest of trial counsel, prevented Detectives Harbin and Clark from testifying about the information that Alexander provided them, then the prosecution might have been compelled to call Alexander himself, thereby enabling defense counsel to cross examine Alexander before the jury and to put Alexander's credibility front and center for the jury.  The fact that the trial court initially sustained several hearsay-based objections by defense counsel to Detective Harbin's testimony about the information that Alexander provided demonstrates the legitimacy of Petitioner's assertion that this was an issue important to his case and worth raising on appeal.

Beyond the factual foundation that supports Petitioner's discovery request, there is a legal foundation as well.  Initially, the Court notes that there existed a sufficient body of case law at the time of Petitioner's trial and direct appeal supporting a claim that testimony by Detectives Harbin and Clark relating information provided to them by a non-testifying informant constituted inadmissible hearsay, absent a showing that the informant was unavailable to testify.  *See, e.g., Crawford v. Washington*, 541 U.S. 36, 59 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."); *see also United States v. Cromer*, 389

20

F.3d 662, 675-79 (6th Cir. 2004) (holding that admission of non-testifying informant's statements via police officer's testimony violated accused's Sixth Amendment Confrontation Clause rights); *State v. Lewis*, Nos. C-050989, C-060010, 2007 WL 936571, at * 6 (Ohio App. 1 Dist. Mar. 30, 2007); *State v. Johnson*, No. L-05-1001, 2006 WL 664354 (Ohio App. 6 Dist. Mar. 17, 2006). In view of the fact that the omitted issue was arguably worthy of raising on appeal, good cause exists to believe that depositions of Petitioner's appellate counsel could yield relevant information concerning several of the *Mapes* factors for evaluating a claim of ineffective assistance of appellate counsel.  Petitioner's appellate attorneys may be the only, or at a minimum the best, source of information concerning such considerations as their impressions of the significance and strength of the omitted issue vis-a-vis the issues that they did raise, their level of experience and expertise, and whether or to what extent they reviewed all of the facts. In fact, *Mapes* contemplated the helpfulness of appellate counsel testifying collaterally about their strategy to the determination of whether their justifications were reasonable.

For the foregoing reasons, Petitioner has demonstrated good cause, in support of his thirteenth ground for relief, to conduct depositions of his appellate attorneys Dennis L. Sipe and Kathleen McGarry.

### D.  **Ground Eighteen – Trial Court's Failure to Voir Dire Jurors After Outburst**

Petitioner argues in his eighteenth ground for relief that the trial court erred in failing to allow or conduct a voir dire of the jurors following several obscenity-laced outbursts from a spectator threatening Petitioner.  While Petitioner, functioning as his own attorney, was questioning witness and victim Tina Bailey, "Utelius Barnes, a State's witness sitting in the gallery, blurted out twice: 'I'll kick your fucking ass.' " (Doc. # 35, at 12.)  Trial counsel requested a curative instruction and for an additional voir dire of the jurors, which requests the trial court denied.  Petitioner complains that the trial court failed to offer a curative instruction beyond the following: "The search for the truth very often is not pleasant yet I instruction you will judge the credibility of the witness that has just testified and not the defendant who was

21

asking the questions." (*Id.* (quoting Tr. Vol. 11, at 2134.)

Petitioner seeks to depose sitting jurors from his case. Petitioner explains that, "when a potential meritorious claim of extraneous influence is raised, the court must conduct a hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954), to give the defendant an opportunity to show bias." In an attempt to demonstrate good cause for his request, Petitioner reasons that the trial court in his case never conducted a hearing or inquiry into whether or to what extent jurors in his case were biased against Petitioner because of the extraneous influence. (*Id.* at 13.) Petitioner asserts that he would confine his inquiry of the jurors to whether the outburst had any impact on them and that he would not delve into the jury's deliberative process.

Respondent opposes Petitioner's requested discovery, emphasizing a point that Petitioner concedes–namely that Evid. R. 606 forbids juror testimony for purposes of impeaching a verdict, absent a showing of outside influence. (Doc. # 37, at 11 (citing *Tanner v. United States*, 483 U.S. 107 (1987)).) To that point, Respondent argues that Petitioner "fails to illustrate how his broad discovery request to depose every single juror in this case would help substantiate a claim that a juror was improperly influenced by this innocuous outburst by the spectator." (*Id.* at 12.) Respondent further argues that the trial court twice gave a curative instruction and that Petitioner has pointed to no evidence supporting his assertion that the jury was improperly influenced.

In reply, Petitioner emphasizes that he is only requesting to exercise the right guaranteed him by *Remmer* and denied him by the trial court to question the jurors from his case about whether or to what extent they were influenced by the spectator outburst. (Doc. # 38, at 10-11.) Petitioner also disputes Respondent's assertion that the trial court gave two curative instructions, stating, "[t]he trial court provided only one, much belated instruction, well after the fact to be impactful." (*Id.* at 11.) Petitioner concludes by asserting that "Respondent's arguments simply beg the question of whether discovery should be granted," insofar as Petitioner requests discovery to produce the very evidence that Respondent claims he is lacking to support his discovery request: evidence to support Petitioner's allegation that one or more jurors were

22

improperly influenced by the spectator outburst and biased against Petitioner because of it.  (*Id.*)

Turning to the essential elements of Petitioner's claim, when credible evidence suggests that a juror has been exposed to improper extraneous influence, the trial court must conduct a hearing to determine the facts and circumstances, the impact on the juror, and whether the events at issue were prejudicial.  *See Remmer v. United States*, 347 U.S. 227, 229-30 (1954); *see also Smith v. Phillips*, 455 U.S. 209, 215 (1982).  The defendant bears the burden of proving actual bias or prejudice.  *See, e.g., State v. Zelinka*, 862 F.2d 92, 95-96 (6th Cir. 1988); *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984).  Whether Petitioner has shown good cause to conduct discovery appears to hinge on whether "credible evidence" exists, above and beyond the mere occurrence of the outburst, to suggest that the outburst had an impact on the jurors that prejudiced Petitioner.  In the instant case, it seems that the only factors offered by Petitioner to demonstrate good cause are the occurrence of the outburst, the inherently prejudicial nature of the outburst, and the fact that the trial court did not conduct a hearing, an additional voir dire, or any sort of inquiry into whether the outburst affected the jury.  That is not enough.

Petitioner asserts that a district court in the Northern District of Ohio recently granted a similar discovery request.  (Doc. # 35, at 14 (citing *Cunningham v. Hudson*, No. 3:06CV0167, 2008 WL 2390777 (N.D. Ohio Jun. 9, 2008)).)  That case is distinguishable, however, because there, the petitioner had offered some evidence, developed during state postconviction proceedings, that the jury foreperson from his trial had been improperly (and negatively) influenced by prior familiarity with the petitioner stemming from the foreperson's employment with the county's children's services.  *Cunningham*, 2008 WL 2390777, at * 6-7.  Petitioner herein offers no such evidence.

Mere exposure of the jury to some extraneous influence does not automatically give rise to a presumption that extraneous influence prejudiced the jury.  Strictly speaking, the outburst complained of by Petitioner appears to fall outside of the Sixth Circuit's definition of "extraneous influence."  The Sixth Circuit "has defined 'an extraneous influence on a juror [as]

23

one derived from specific knowledge about or a relationship with either the parties or their witnesses.' " *Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir. 2007) (quoting *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998)). Even so, a "*Remmer*" hearing is not normally required where the extraneous influence at issue is not directed at the jurors in a manner likely to influence the jury's verdict. *See, e.g., United States v. Rigsby*, 45 F.3d 120, 124 (6th Cir. 1995) ("By and large the cases following *Remmer* that have particularized a trial court's duty when faced with allegations of extraneous influences on a jury have dealt with intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury.") A trial court's failure to conduct a "*Remmer*" inquiry is further mitigated when the trial court gives some sort of cautionary or curative instruction to the jurors admonishing them not to consider the extraneous influence at issue. *See, e.g., White v. Smith*, 984 F.2d 163, 166-67 (6th Cir. 1993) (no error from trial court's failure to conduct hearing, concerning victim's mother remarked to jurors that she would pray for them, where accused did not request a hearing and where the trial court immediately gave a curative instruction); *Tucker v. Houk*, No. 2:04-cv-0964, 2005 WL 2861214, at * 19-22 (S.D. Ohio Nov. 1, 2005) (no error for failure to hold hearing or individually voir dire jurors where, following outburst involving spectators clapping during prosecution's closing argument, the trial court immediately gave a curative instruction); *Whitehead v. Cowan*, 263 F.3d 708, 723-24 (7th Cir. 2001) (no improper extraneous influence from mother's outburst in front of jury and in absence of trial court where the outburst was directed at the accused and the trial court immediately admonished the jury). The Court is mindful that Petitioner need not prove the essential elements of his claim in order to obtain discovery; at this point, however, Petitioner has offered nothing beyond speculation to believe that the discovery he requests is likely to lead evidence supporting his claim. *See, e.g., Orbe v. True*, 201 F. Supp. 2d 671, 681-82 (E.D. Va. 2002) (no good cause for petitioner's request, pre-petition, to depose jurors where "glares" from the victim's family during trial were not the type of extraneous influence reasonably likely to cast doubt on validity of jury's verdict).

24

Petitioner thus falls short of establishing good cause to believe that the discovery he seeks would lead to evidence to substantiate his belief that Utelius Barnes' threats to Petitioner in front of the jury improperly influenced the jurors and entitle Petitioner to relief.  That being so, the Court denies Petitioner's motion to conduct discovery on his eighteenth ground for relief.

### E.  Ground Twenty-Four – Systemic Discrimination and Failure to Object

Petitioner raises in his twenty-fourth ground for relief "a systemic challenge to the death penalty in Guernsey County and trial counsel's failure to raise the systemic problem."  (Doc. # 35, at 14.)  "Specifically," according to Petitioner, "had defense counsel researched and presented available statistical data about the application of the death penalty in Guernsey County they would have been able to inform the court" that, concerning capital indictments between 1992 and 2010, four of the nine capital indictments returned were against African-Americans, even though African-Americans comprise only 1.5 per cent of the population in that county and that eight of the capital indictments for which information is available involved victims who were white.  (*Id*. at 14-15.)  Thus, the gravamen of Petitioner's claim is both that Guernsey County has a history of considering improper factors such as race in the decision to return capital indictments and that Petitioner's trial attorneys were ineffective for failing to investigate and present the matter.  Apparently relying on the numbers set forth above to establish good cause, Petitioner seeks to conduct the following discovery to prove his claim: 1) answers to his first requests for admission, attached as Exhibit A; 2) answers to his first set of interrogatories, attached as Exhibit A; 3) compliance with Petitioner's first requests for production of documents, attached as Exhibit A; 4) depositions of prosecutors C. Keith Plummer and Daniel G. Padden regarding the Guernsey County prosecutor's office policies, procedures, and guidelines regarding who should be charged with capital murder before and at the time of Petitioner's prosecution and the decision to charge Petitioner with capital murder; 5) deposition(s) of any other persons from the Guernsey County prosecutor's office regarding the policies, procedures, and guidelines described above; 6) deposition of trial attorney Andrew J. Warhola; and 7)

deposition of trial attorney Jack A. Blakeslee.

Respondent opposes Petitioner's discovery requests, arguing that Petitioner fails to satisfy the threshold showing of good cause.  (Doc. # 37, ast 12-16.)  Respondent asserts that Petitioner offers only broad and unsupported allegations that the Guernsey County Prosecutor's office indicted Petitioner for a capital offense only because he is African-American.  After noting the presumption of regularity that prosecutorial decisions enjoy, Respondent proceeds to discuss several decisions in which courts have considered and rejected the precise claim upon which Petitioner herein seeks discovery.  (*Id*. at 14-14 (discussing *Smith v. Mitchell*, 348 F.3d 177, 211-12 (6th Cir. 2003), and *Henderson v. Collins*, 101 F. Supp. 2d 866, 925 (S.D. Ohio 1999)).)

Petitioner asserts that Respondent's reliance on *Smith v. Mitchell* is misplaced because the Sixth Circuit there rejected the petitioner's claim only after the petitioner had received discovery and failed to prove his claim.  (Doc. # 38, at 12.)  Petitioner relies on *Hill v. Mitchell*, No. 1:98-cv-452, 2007 U.S. Dist. LEXIS 71975 (S.D. Ohio 2007)–a habeas corpus case in which this Court granted the precise discovery that Petitioner herein seeks.  (Doc. # 38, at 12-13.)

Petitioner's reliance on *Hill* is equally misplaced.  The primary basis upon which this Court granted discovery in *Hill* is readily distinguishable in Petitioner's case.  In *Hill*, the numbers giving rise to a statistical disparity between the percentage of African-Americans indicted for capital offenses and the percentage of African-Americans comprising the county population consisted of a far larger sample than the number relied on by Petitioner herein in an effort to establish the same statistical disparity.  The sample size relied upon by Petitioner–nine capital indictments over roughly a fifteen-year period–is too small to give rise to the prima facie showing necessary to establish good cause for discovery on claim alleging purposeful discrimination.

In order to determine whether Petitioner is entitled to conduct discovery on this claim, the Court initially must identify the essential elements of his claims.  *See Bracy*, 520 U.S. at 904. It is true that equal protection and due process prohibit prosecutors from basing their decision to

prosecute on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). To prevail on a claim of (discriminatory) selective prosecution, the petitioner must demonstrate that similarly situated defendants of a different race were not prosecuted on the sole basis of their race. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). "[A] defendant who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination." *McClesky v. Kemp*, 481 U.S. 279, 292 (1987) (citations omitted). More particularly, "'to prevail under the Equal Protection Clause, [a defendant] must prove that decisionmakers in *his* case acted with discriminatory purpose.'" *Smith v. Mitchell*, 348 F.3d 177, 211 (6ᵗʰ Cir. 2003) (quoting *McCleskey*, 481 U.S. at 292). Further, "[b]ecause discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused." *McCleskey*, 481 U.S. at 297. To be clear, petitioner need not prove these elements in order to justify discovery; rather, he must show that, if the facts are developed through the discovery he seeks, he could prove a constitutional violation and would be entitled to relief. *See Harris, supra*, 394 U.S. at 299.

In *Hill*, the petitioner asserted that various facts gave rise to an inference that Hamilton County prosecutors relied on race in pursuing a death sentence for the petitioner. The petitioner explained that of the 48 death sentences that had been imposed in Hamilton County since Ohio reinstated the death penalty in 1981, 60 % had been imposed on African-Americans, even though African-Americans comprised only 20 % of the Hamilton County population, according to the 1990 census. Petitioner herein, who was indicted in Guernsey County, relies on only 9 capital indictments over a shorter time period (1992 to present, as opposed to 1981 to present). Even under the lenient standard set forth in Habeas Corpus Rule 6 and *Bracy*, these statistics fall far short of providing reason to believe that Petitioner might prevail on his claim if the facts are fully developed. As noted *supra*, Petitioner must demonstrate a subjective intent on the part of the prosecutor to discriminate. No meaningful conclusions may be drawn from the modest

sampling offered by Petitioner.  *See Andrews v. Shulsen*, 600 F. Supp. 408, 426 (D. Utah 1984), *aff'd* 802 F.2d 1256 (10th Cir. 1986); *see also Harris v. Pulley*, 885 F.2d 1354, 1373 (9th Cir. 1988).  Thus, the statistics upon which Petitioner relies, without more, provide no basis for concluding that the Guernsey County prosecutor exercised discriminatory intent.  The Court appreciates the hurdles that Petitioner faces in proving such a claim.  And although proof of subjective intent may require information uniquely in the possession of the prosecutor and other people whom Petitioner seeks to depose, that fact does not remove Petitioner's duty to identify some basis in the record to support his discrimination claim–something beyond mere speculation–in order for this Court to allow the discovery that Petitioner seeks.

Petitioner thus fails to show good cause to believe that the discovery he seeks would lead to evidence in support of his claim that Guernsey County relied on the improper consideration of race in deciding to seek the death penalty against Petitioner.  That being so, the Court denies Petitioner's motion to conduct discovery on his twenty-fourth ground for relief.

## IV.  Conclusion

Petitioner's motion for leave to conduct discovery (Doc. #35) is GRANTED to the extent described above.  Although the Court finds that discovery is warranted as described above, the Court will not permit prolonged, unlimited discovery.  Since the discovery requests granted by this Court will consist only of depositions, Petitioner will have three (3) months from the date of this Order to complete the discovery allowed by this order.

## V.  Appeal Procedure

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside

any part of this Order found to be clearly erroneous or contrary to law.

       This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


                      /s/ Terence P. Kemp      
                      United States Magistrate Judge