## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MARVIN G. JOHNSON,**

    **Petitioner,**

**v.**

**DAVID BOBBY, Warden,**

    **Respondent.**

**Case No. 2:08-cv-55**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Terence P. Kemp**

### OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. §2254. The Magistrate Judge issued an *Opinion and Order* on September 30, 2010, granting in part and denying in part Petitioner's motion for leave to conduct discovery. (Doc. # 39.) This matter is before the Court upon Petitioner's objections to the Magistrate Judge's Opinion and Order regarding discovery. (Doc. # 41.)

Petitioner sought leave to conduct discovery on his fourth, sixth, seventh, eighth, ninth, tenth, twelfth, thirteenth, seventeenth, eighteenth, and twenty-fourth grounds for relief. (Doc. # 35, at 3.) Petitioner asserted that the majority of these claims related to ineffective assistance of counsel and explained:

> [I]n his Fourth Habeas Ground, Petitioner alleges ineffective assistance of counsel for failing to object to victim impact evidence. Petition pp. 14-15. In his Sixth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for failing to present evidence from Petitioner's family regarding his history and background. Petition pp. 17-22. In his Seventh Habeas Ground, Petitioner alleges ineffective assistance of counsel related to the investigation for, preparation of, and presentation of psychological evidence. Petition pp. 23-28. In his Eighth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for failing to present neurological evidence, evidence regarding diabetes and cultural evidence. Petition pp. 28-34. In his Ninth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for failing obtaining [sic] a competent expert on substance abuse. Petition pp. 34-37. In his Tenth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for presenting Petitioner's criminal history after having obtained a ruling that it was not to be admitted. Petition pp. 37-39. In his Eleventh Habeas Ground, Petitioner alleges the ineffective assistance of counsel for failing to have the rape kit tested and compared. Petition pp. 37-39. In his Nineteenth Habeas Ground, Petitioner alleges the ineffective assistance of counsel for various acts and omissions. Petition pp. 59-60.

(Doc. # 35, at 5-6.) In support of these claims, Petitioner sought to conduct the following discovery:

> 1) Deposition of Attorney Andrew J. Warhola, Jr. (as to each of the above habeas grounds);
>
> 2) Deposition of Attorney Jack A. Blakeslee (as to each of the above habeas grounds);
>
> 3) Deposition of Ms. Marsha Heiden, the mitigation specialist at trial (as to the Sixth-Ninth Habeas Grounds);
>
> 4) Deposition of Ms. Marianna Williamson, a testifying chemical dependency counselor (as to the Ninth Habeas Ground);
>
> 5) Deposition of Dr. Richard Jackson, a testifying psychologist (as to the Seventh and Ninth Habeas Grounds);
>
> 6) Deposition of Dr. Mark Fettman, a testifying psychologist (as to the Seventh and Ninth Habeas Grounds); and
>
> 7) Order the State of Ohio to test the rape kit in their possession (as to the Eleventh Habeas Ground).

(*Id.* at 7.)

In the September 30, 2010, *Opinion and Order*, the Magistrate Judge granted only Petitioner's request to depose his trial attorneys, reasoning that information about what strategy defense attorneys formulated and what investigation was conducted to arrive at that strategy is usually uniquely within the possession of those defense attorneys. (Doc. # 39, at 10.) The Magistrate Judge denied Petitioner's requests to depose the other four witnesses, as well as Petitioner's request for an order requiring the State to test the rape kit, explaining that the Magistrate Judge was not immediately persuaded that depositions of expert witnesses were warranted. (Doc. # 39, at 11.) The Magistrate Judge further explained that although those witnesses had significant contact with defense counsel and each other in preparation for the mitigation phase, defense counsel could speak to the strategy and preparation relating to these witnesses and the witnesses' own trial testimony provided evidence as to how the strategy and preparation did or did not translate into evidence presented at the mitigation hearing. (*Id.* at 11-12.) The Magistrate Judge left open the possibility, however, that "[i]n the event that issues

2

about the extent to which counsel effectively prepared and used these witnesses persist after counsel are deposed, Petitioner may make application for further depositions." (*Id.* at 12.) The Magistrate Judge denied Petitioner's request to test the rape kit because results from such testing could provide no information concerning the only issue that was in dispute–whether Petitioner had exerted force or coercion over Tina Bailey in connection with their sexual contact on the day of the murder.

Petitioner objects to the Magistrate Judge's decision not to allow depositions of the expert witnesses or a test of the rape kit. (Doc. # 41, at 4.) Petitioner argues that although "deposing trial counsel is necessary, there are others within the defense team that likely had information on what evidence existed to present or not present, and why defense counsel chose to present it or not present it." (*Id.*) For instance, according to Petitioner, a deposition of the mitigation specialist is essential for uncovering what tasks and guidance defense counsel gave her, and whether the decision as to evidence that was not presented at the penalty phase was the mitigation specialist's or defense counsel's. (*Id.* at 4-6.) As for psychologist Bud Jackson, Petitioner asserts that because the testimony of a mitigation psychologist often puts together all the pieces of the mitigation puzzle for the jury, it is critical to depose Dr. Jackson to determine what information, records, and guidance he received from defense counsel. (*Id.* at 7.) Petitioner also asserts that defense counsel are not in a position to speak to what records, interviews, and other information may be important to a psychologist. Finally, concerning chemical dependency experts counselor Marianna Williamson and Dr. Fettman, Petitioner points out that much of the defense mitigation centered on the drug and alcohol issues that Petitioner faced. (*Id.* at 8.) Thus, according to Petitioner, what information and records they received, how much time defense counsel spent with them preparing for the mitigation hearing, and whether or two what extent they communicated with each other and/or with psychologist Dr. Jackson critically informs the issue of whether defense counsel performed reasonably in this aspect of their case in mitigation. Petitioner maintains, as he did with Dr. Jackson, that defense counsel cannot adequately address

3

this issue because they can speak only as to their perspective.

Because it is defense counsel's perspective that is at the heart of any claim of ineffective assistance, the Court finds Petitioner's objections set forth above not well-taken. The Magistrate Judge's decision is a prudent way to approach fact-finding on a claim of ineffective assistance because any inquiry into a defense attorney's decision-making process necessarily begins with that defense attorney. Only if depositions of trial counsel prove wanting in information necessary to measure as fully as possible counsel's decision-making process–and information that one or more of the proposed experts might actually provide–would it be necessary to depose those experts. Doing so preemptively is neither necessary nor prudent. The Magistrate Judge's decision did not foreclose depositions of the proposed experts: it found a middle ground of allowing Petitioner to request further depositions in the event that issues about the extent to which counsel effectively prepared and used these witnesses persist after counsel are deposed. (Doc. # 39, at 12.) The Magistrate Judge's decision thus adequately protects Petitioner's ability to develop facts on his claim of mitigation-phase ineffectiveness without allowing depositions that may prove unnecessary. The Court **OVERRULES** Petitioner's objections and **ADOPTS** the Magistrate Judge's decision granting leave to depose both trial attorneys but denying leave, at this time, to depose the additional mitigation witnesses.

Petitioner also objects to the Magistrate Judge's decision not to order the state to test Tina Bailey's rape kit. Petitioner explains that Tina Bailey's credibility was important because as the mother of the deceased, she was a sympathetic witness whom the jury obviously believed. Petitioner maintains that if defense counsel had been able to prove that Bailey had not told the truth about whether Petitioner had raped her, it could have lead to an inference that she had not be truthful about other details important to the case. Petitioner also asserts that undermining the rape specification was not insignificant to Petitioner's attempt to evade a capital murder conviction, in view of the fact that the kidnapping specification was also suspect.

Petitioner's objection is not well-taken. Neither the importance of Tina Bailey's

credibility nor the importance of undermining the rape specification change the fact that testing the rape kit was unlikely to lead to information to inform the only issue that was in dispute–whether Petitioner had exerted force or coercion. Petitioner never denied that he and Tina Bailey had had sexual contact on the morning of the murder. Because Petitioner never denied the sexual contact described by Tina Bailey, even assuming that testing had proved negative or inconclusive for the presence of Bailey's DNA on Petitioner or Petitioner's DNA in Bailey, the Court is not persuaded that such test results would have materially advanced Petitioner's efforts to undermine Bailey's credibility or to challenge the rape charge. The Court agrees with the Magistrate Judge that counsel had no reason at the time of trial to ask that the rape kit be tested, that no reason exists now, and that depositions of defense counsel may very well confirm that they had reasonably informed and legitimate strategic reasons not to ask for testing. (Doc. # 39, at 12.) The Court **OVERRULES** Petitioner's objection and **ADOPTS** the Magistrate Judge's decision denying Petitioner's request for an order directing the state to test Tina Bailey's rape kit.

Petitioner also sought leave to conduct discovery on his twelfth ground for relief. There, Petitioner alleges that investigating officers committed a "*Massiah/Henry*" violation by employing a jail house informant named Mickey Alexander to obtain post-indictment statements from Petitioner in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (*Id.* at 9.) In support of that claim, Petitioner sought live depositions of Mickey Alexander and Detective Harbin, as well as a records deposition of the Guernsey County Jail for records related to Mickey Alexander, inmate visitation logs from August 15, 2003 through August 28, 2003, inmate telephone logs from August 15, 2003 through August 28, 2003, and any retained audio tapes of any phone calls monitored where Mickey Alexander was involved.

The Magistrate Judge denied Petitioner's discovery requests, concluding that all of the record evidence before this Court belied any suggestion that Mickey Alexander had been deliberately planted by the state to collect incriminating information from Petitioner in jail and

5

that Petitioner had offered no foundation for his belief otherwise. (Doc. # 39, at 14-16.) In his objections, Petitioner reiterates that several factors on the record give reason to believe that the state had planted Alexander–such as Alexander's significant history of providing information to the police in exchange for leniency, the fact that Alexander became Petitioner's cellmate <u>after</u> contacting the chief investigating officer about collecting information from Petitioner, and the various arrangements that police made for Alexander to assist him in collecting information, such as placing money in his prison account and arranging for medical furlough as a guise to allow Alexander to lead them to the location where Petitioner had stashed the money he stole from Tina Bailey. In addition to these factors, Petitioner asserts that "conclusive proof" of the government deliberately planting Alexander with Petitioner to gather information against Petitioner is solely within the possession of the state. (Doc. # 41, at 10-11.) All of the above, according to Petitioner, constitute good cause to believe that the discovery Petitioner seeks is likely to lead to evidence supporting his *Massaih Henry* claim.

      The Court cannot agree and is constrained to overrule Petitioner's objection. However persuasive Petitioner's arguments may be, the Court cannot ignore the wealth of evidence in the record refuting any suggestion that Mickey Alexander was deliberately placed by the state to gather incriminating information from Petitioner and establishing that Alexander acted of his own volition in providing that information to police in exchange for leniency. The record evidence consists of testimony by Alexander during a pretrial hearing repeatedly insisting that it was he who contacted police, not the other way around; testimony by Detective Greg Clark during trial denying any knowledge of any law enforcement officers planting or making contact with Alexander to elicit information from Petitioner; and the testimony of Detective Brian Harbin confirming that Alexander reached out to police and that the police did not deliberately plant him to gather information from Petitioner. By comparison, Petitioner's assertions amount to no more than speculation. Petitioner asks the Court to assume from Alexander's extensive history of providing information to police in exchange for leniency, from the fact that Alexander

was placed in Petitioner's cell after contacting police about gathering information from Petitioner, and from the various arrangements that police made for Alexander ostensibly to assist him in eliciting information from Petitioner that the state deliberately planted Alexander to collect information from Petitioner. In short, the assumptions offered by Petitioner fall short of overcoming the extensive record evidence belying Petitioner's claim, even for the purpose just of establishing good cause rather than actually proving the claim. For the foregoing reasons, the Court **OVERRULES** Petitioner's objection and **ADOPTS** the Magistrate Judge's decision denying Petitioner's discovery requests on the *Massiah/Henry* violation claimed in his twelfth ground for relief.

Petitioner also sought leave to conduct discovery on the claim of appellate counsel ineffectiveness set forth in his thirteenth ground for relief. Specifically, Petitioner requested discovery on his allegation that "appellate counsel failed to present the trial court's error in allowing hearsay evidence after sustaining an objection and trial counsel's ineffectiveness in not continuously objecting after the state ignored the sustained objections." (*Id.* at 11.) In support of that claim, Petitioner requested leave to depose Attorneys Dennis L. Sipe and Kathleen McGarry. The Magistrate Judge found good cause and granted Petitioner leave to depose Mr. Sipe and Ms. McGarry. Neither Petitioner nor Respondent objects to the Magistrate Judge's decision, and the Court is in full agreement with it and accordingly **ADOPTS** the Magistrate Judge's decision denying Petitioner discovery requests on the appellate counsel ineffectiveness claim set forth in his thirteenth ground for relief.

Petitioner also sought leave to conduct discovery on his eighteenth ground for relief, wherein he claims as error the failure of the trial court to voir dire the jury after spectator and State's witness Utelius Barnes twice shouted a profanity-laced threat toward Petitioner. Although acknowledging that the rules of evidence forbid the use of juror testimony to impeach an otherwise valid verdict, Petitioner pointed out that the rules of evidence allow such evidence to prove whether an extraneous influence improperly affected the jury's verdict. (*Id.* at 13-14.)

7

Accordingly, Petitioner sought leave to depose sitting jurors from his trial jury.

The Magistrate Judge denied Petitioner's request, concluding that Petitioner's claim was all but foreclosed by Sixth Circuit precedent. Specifically, the Magistrate Judge pointed out that the outburst about which Petitioner complained did not appear to fall within the Sixth Circuit's definition of an "extraneous influence" sufficient to require a hearing or inquiry pursuant to *Remmer v. United States*, 347 U.S. 227, 229-30 (1954). (Doc. # 39, at 23-24.) Noting that the movant bears the burden of proving actual bias or prejudice from the alleged extraneous influence, the Magistrate Judge concluded that the only factors that Petitioner offered for good cause of actual bias–the outburst itself, the inherently prejudicial nature of the outburst, and the fact that the trial court conducted no hearing or other inquiry–fell short. The Court agrees. Review of the record, as well as the Magistrate Judge's *Opinion and Order*, confirms that Petitioner offers nothing beyond speculation to believe that depositions of jurors are likely to lead to facts proving that Petitioner was actually prejudiced by Barnes' outburst. That being so, although it would have been preferable for the trial court to have conducted a hearing or otherwise ascertained whether the outburst had prejudiced the jurors against Petitioner, nothing in the record now suggests that the matter warrants further investigation now. For the foregoing reasons, the Court **OVERRULES** Petitioner's objection and **ADOPTS** the Magistrate Judge's decision denying Petitioner's discovery requests on the claim that the trial court erred in failing to voir dire the jurors after outbursts from a spectator, as set forth in Petitioner's eighteenth ground for relief.

Finally, Petitioner asked to conduct discovery in support of his twenty-fourth ground for relief, in which he alleges a "systemic problem with the death penalty in Guernsey County and [that his] trial counsel were ineffective in failing to challenge [the same]." (*Id.* at 14.) Asserting violations of his rights to equal protection and due process of law because capital indictments are sought disproportionately against African-Americans and/or improperly when the victim is white, Petitioner requested leave to conduct the following depositions of relevant witnesses:

8

1) From Petitioner's First Requests for Admissions, attached as Exhibit A;

2) From Petitioner's First Set of Interrogatories, attached as Exhibit A;

3) From Petitioner's First Requests for Production of Documents, attached as Exhibit A;

4) Depositions of C. Keith Plummer, Esq. and Daniel G. Padden, Esq. on the Guernsey County, Ohio Prosecutor's Office's polices, procedures, and guidelines regarding who should be charged with capital murder before and at the time of Petitioner's prosecution, and the decision to charge Petitioner with capital murder;

5) Deposition of any other person, who worked in the Guernsey County prosecutor's office at the time of Petitioner's prosecution who had or could have had knowledge of that office's policies, procedures, or guidelines, in place before or at that time, regarding who should be charged with capital murder, or who had or could have had knowledge of the reasons for charging Petitioner with capital murder;

6) Deposition of Attorney Andrew J. Warhola, Jr.;

7) Deposition of Attorney Jack A. Blakeslee.

(*Id.* at 15-16.)

The Magistrate Judge denied Petitioner's discovery requests, explaining that the sample size upon which Petitioner had relied to demonstrate or suggest a prima facie showing of purpose discrimination–nine capital indictments over roughly a fifteen-year-period–was insufficient. (Doc. # 39, at 26.) Petitioner objects to the Magistrate Judge's reasoning, asserting that "the state should not be protected from a racial disparity just because they do not have a large enough history, as of yet, of discrimination." (Doc. # 41, at 13.) The Court is not unsympathetic to Petitioner's argument but agrees with the Magistrate Judge. Petitioner offers nothing beyond the modest numbers set forth above to demonstrate or even give rise to an inference of a subjective intent on the part of county prosecutors to purposefully discriminate in the prosecution of capital murder cases. Petitioner argues that "[i]f statistics cannot be used to establish discrimination, then statistics principles, in the form of sampling size, should not be used to refute a claim." (*Id.* at 14.) Petitioner's argument misses the mark. The Magistrate Judge did not hold that statistics cannot be used; the Magistrate Judge held that statistics alone, especially the modest sample size offered by Petitioner, are insufficient to give rise to an inference of purposeful discrimination.

9

Petitioner points to nothing but the modest numbers. And that is not enough under controlling case law to establish good cause to conduct discovery. Accordingly, the Court **OVERRULES** Petitioner's objection and **ADOPTS** the Magistrate Judge's decision denying Petitioner's discovery requests on discrimination challenge claimed in Petitioner's twenty-fourth ground for relief.

For the foregoing reasons, Petitioner's objections to the Magistrate Judge's *Opinion and Order* regarding discovery (Doc. # 41) are **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's September 30, 2010 *Opinion and Order*.

**IT IS SO ORDERED.**

                                                  4-29-2011
                                 **EDMUND A. SARGUS, JR.**
                                 **United States District Judge**