IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARVIN G. JOHNSON,

                    Petitioner,               Case No. 2:08-cv-55
                                          Judge Sarah D. Morrison
v.                                   Magistrate Judge Chelsey M.
                                   Vascura

DAVID BOBBY, Warden,

                    Respondent.

**OPINION AND ORDER**

      This capital habeas corpus case is before the Court on Petitioner's Motion to Alter or Amend the Judgement (ECF No. 138).

## I.    INTRODUCTION

      Petitioner was convicted and sentenced to death by a jury in Guernsey County, Ohio, for the murder of Daniel Bailey. After exhausting his state court remedies, he filed a Petition for Writ of Habeas Corpus in this Court on September 28, 2008. (ECF No. 13.) After dismissing several procedurally-defaulted claims in a September 29, 2009 Opinion and Order (ECF No. 28), the Court granted Petitioner's motion to expand the record and directed that the petition be stayed and the proceedings held in abeyance while Petitioner returned to state court to re-present several claims newly bolstered by evidence collected during federal habeas proceedings (ECF No. 65). The Court reinstated the instant habeas proceedings on July 6, 2015, and Petitioner filed an Amended Petition (ECF No. 86), the Warden responded in the Return of Writ (ECF No. 91), and Petitioner replied in the

Traverse (ECF No. 131). On December 28, 2021, the Court issued an Opinion and Order denying relief on Petitioner's remaining claims and dismissing the action. (ECF No. 136 and 137.) At the same time, the Court certified for appeal Petitioner's tenth and thirteenth grounds for relief. (ECF No. 137.) Petitioner now moves to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) with respect to his Sixth Ground for Relief and the preclusion of new evidence under *Pinholster* in his Fourth, Sixth, Seventh, Eighth, Ninth, Thirteenth, and Nineteenth Grounds for Relief. (ECF No. 138.) In the alternative, he asks that the Certificate of Appealability (COA) be amended to certify these two issues for appeal. He also asks the Court to grant an evidentiary hearing.

## II.    STANDARD OF REVIEW

Rule 59(e) allows a petitioner to file a motion to alter or amend a judgment within 28 days of the district court's entry of the judgment. It is a "one-time effort to bring alleged errors in a just-issued decision to a habeas court's attention, before taking a single appeal." *Banister v. Davis*, 140 S.Ct. 1698, 1710 (2020). Thus, it allows "a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Id.* at 1703, *quoting White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)).

To grant a motion filed under Rule 59(e), there must be "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014), *quoting Leisure Caviar v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612,

615 (6th Cir. 2010). "'[A] prisoner may invoke the rule only to request "reconsideration of matters properly encompassed' in the challenged judgment. . . . Courts will not entertain arguments that could have been but were not raised before the just-issued decision." *Banister*, 140 S.Ct. at 1708, *quoting White*, 455 U.S. at 451.

"A 'clear error of law' occurs where the original ruling 'overlooked or disregarded' some 'argument or controlling authority' or where the moving party 'successfully points out a manifest error. . . .'" *Penley v. NPC Int'l, Inc.*, No. 13-1031, 2014 WL 12634410, at *2 (W.D. Tenn. Dec. 3, 2014), aff'd sub nom. *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261 (6th Cir. 2015), *quoting United States v. Ladeau*, No. 3:10-CR-00242-1, 2012 WL 5838125, at *2 (M.D. Tenn. Nov. 15, 2012). While not well defined, it "clearly indicate[s] that a high standard applies." *Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019, *quoting Lonardo v. Travelers Indem. Co.*, 706 F. Supp.2d 766, 809 (N.D. Ohio 2010), on reconsideration in part (July 21, 2010) (internal quotation marks omitted).

Manifest injustice is likewise not clearly defined in case law, but the Sixth Circuit has previously looked to the plain meaning of the words to guide its application:

> Black's Law Dictionary defines the phrase "manifest injustice" to mean: "An error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." BLACK'S LAW DICTIONARY 982 (8th ed. 2004). Of course, as the examples suggest, more than a clear error is required; injustice must also result.

*Volunteer Energy Servs. v. Option Energy*, 579 F. App'x 319, 330–31 (6th Cir. 2014).

District courts have held that "manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Williams v. Shelby Cty. Bd. Educ.*, No. 217CV02050TLPJAY, 2021 WL 698861, at *3 (W.D. Tenn. Feb. 23, 2021), *quoting United States v. Allen*, No. 14-20191, 2020 WL 4592901, at *1 (E.D. Mich. Aug. 11, 2020) (internal quotation marks omitted). The "manifest injustice" provision within Rule 59 is "not meant to allow a disappointed litigant to attempt to persuade the Court to change its mind." *Lonardo*, 706 F. Supp.2d at 809, *citing GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). It is "a fact-specific analysis that falls squarely within the discretionary authority of the Court." *Id.* "[T]he Court should weigh the importance of bringing litigation to a firm conclusion and the need to render fair and just rulings." *Id.*, *citing GenCorp*, 178 F.3d at 834.

## III. ANALYSIS

### A. *Pinholster* Preclusion

Petitioner objects to the Court's application of *Pinholster v. Cullen* to exclude new evidence developed during federal habeas proceedings from its consideration of claims that were previously adjudicated on the merits in the state courts. (ECF No. 138, PageID 11298.) *Pinholster* held that a federal habeas court reviewing a claim under §2254(d) is restricted to the record that was before the state court that adjudicated the claim on the merits. 563 U.S. 170, 181 (2011). New evidence presented in support of Petitioner's fourth, sixth, seventh, eighth, ninth, thirteenth, and nineteenth grounds for relief was excluded as a result of *Pinholster*. (ECF No.

4

138, PageID 11298.) Petitioner contends that his case is distinguishable from *Pinholster* because he did in fact return to state court to present his new evidence in a second or successive petition for post-conviction relief and application for reopening, thus giving the state courts the first chance to review the new evidence developed during habeas proceedings. (*Id.* at PageID 11299.) Therefore, Petitioner says, he fulfilled AEDPA's goal of promoting comity and federalism and those concerns should not prevent the Court from considering his new evidence. (*Id.* at PageID 11299–300.)

Respondent asserts that Petitioner has merely repeated arguments in his Rule 59 motion that were previously considered and rejected by this Court in its Opinion and Order. (ECF No. 139, PageID 11335.) Indeed, Petitioner's arguments as to the preclusion of newly-developed evidence under *Pinholster* largely mirror those previously raised in his Traverse (ECF No. 131) and considered at length in the Court's Opinion (ECF No. 136, PageID 10989–993). " 'A motion under Rule 59(e) is not an opportunity to re-argue a case.' " *Mich. Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017), *quoting Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Because Rule 59(e) is not a vehicle to re-assert arguments already raised, the Court will not address those arguments previously considered and rejected in its Opinion and Order.

Petitioner contends that the Court's *Pinholster* analysis was a clear error of law and the failure to consider his new evidence results in a manifest injustice. (ECF No. 138, PageID 11298.) But beyond his bare assertions of error, Petitioner

5

fails to precisely identify any alleged error in the Court's decision. Ignoring the absence of any identified error, he asserts that "[a] manifest injustice is present when evidence that at least one juror would have found persuasive enough to insist on a life sentence is not considered." (*Id.* at PageID 11301.) Yet even if the Court subscribed to Petitioner's expansive definition of "manifest injustice," the exclusion of his new evidence due to *Pinholster* would not qualify because the evidence could not have changed the outcome for any of the grounds for which it was presented.

In Petitioner's fourth ground for relief, he presented the habeas depositions of his trial counsel to show that counsel's failure to object to victim-impact evidence during the guilt phase of trial was not a strategic decision. No other new evidence was offered to support the claim. The Court denied relief, holding that the state court had reasonably applied federal law when it concluded that counsel was not deficient and Petitioner was not prejudiced. (ECF No. 136, PageID 11000–01.) That is, the claim was denied because Petitioner could not satisfy either prong of the *Strickland* standard for ineffective assistance. Thus, the exclusion of new evidence supporting only the performance prong could not have changed the outcome because the lack of prejudice alone is fatal to Petitioner's claim.

In Petitioner's sixth ground for relief, he claimed ineffective assistance of counsel based on counsel's alleged failure to investigate and present evidence of his background and upbringing from his family members during the mitigation phase of trial. He presented affidavits from three family members (Iveryl Robinson, Grenea Bridges, and Estoria Johnson) and an affidavit from his postconviction

6

mitigation specialist, Pam Swanson, reporting her interview with a fourth family member (Lulu Williams) in his initial state postconviction petition, which was adjudicated on the merits by the Ohio Court of Appeals. He also presented new evidence collected during federal habeas proceedings: the habeas depositions of trial counsel and affidavits from six family members (Marian Johnson, Grenea Bridges, Kizzy Edwards, Cornelius Johnson, Coretta Johnson, and Estory Johnson)[1] plus his private investigator during habeas who interviewed Petitioner's family members.

The new evidence collected during habeas would not change the outcome here. Despite Petitioner's repeated assertions that his family members were ready and willing to testify at this mitigation hearing, this is not true. Iveryl Robinson Johnson and Marian Johnson were en route to Ohio for the hearing but chose to turn around after Attorney Warhola informed them about the outburst that occurred on the last day of the guilt phase of trial. The Court found that counsel did not act unreasonably based on Iveryl Robinson Johnson's account of her conversation with Attorney Warhola in her initial 2005 affidavit, which was presented in Petitioner's initial postconviction proceedings. The statements of multiple family members in 2011 as to what Iveryl Robinson told them at the time about her telephone conversation with Attorney Warhola are not more probative as to the content of that discussion than the recollection of one of the two participants

_____

[1]The affidavits from Grenea Bridges and Estory Johnson presented for the first time in Petitioner's second postconviction petition were collected in 2011 during federal habeas proceedings and contain new information relative to the statements from Bridges and Johnson presented in Petitioner's initial postconviction proceedings.

in the call given at a date much closer in time to the actual conversation. Nor does Attorney Warhola's deposition shed much light on what was said given that he no longer clearly remembered it after the passage of so many years. It remains that, after considering all of the new evidence collected during federal habeas proceedings, the best evidence as to what Attorney Warhola told Iveryl Robinson is Iveryl Robinson's 2005 affidavit.

Nor do the affidavits from additional family members collected during habeas proceedings alter the prejudice determination. The new affidavits merely present additional testimonies of the same evidence in the four family affidavits already considered by the Court. That is, the new evidence is cumulative of the evidence presented in Petitioner's initial state postconviction petition, which itself is largely cumulative of evidence presented in mitigation at trial. The Court's determination as explained in its Opinion and Order is applicable whether or not the additional family affidavits are considered:

> [T]he Supreme Court has explained "that there is no prejudice when the new mitigating evidence 'would barely have altered the sentencing profile presented' to the decisionmaker," even in cases where little to no mitigation evidence was presented. *See* [*Sears v. Upton*, 561 U.S. 945, 954 (2010) (*per curiam*)], *quoting Strickland*, 466 U.S. at 700. In other words, prejudice turns not on the quantity of evidence presented or left out but on its substance. Here, the state court's finding of no prejudice is reasonable, not because counsel presented "some" mitigation evidence at trial, but because the new evidence Petitioner claims counsel should have presented does not alter the sentencing profile presented to the jury. That is, the new evidence is largely cumulative.

(ECF No. 136, PageID 11030.)

In Petitioner's seventh ground for relief, the Court considered all of Petitioner's new evidence in its *de novo* review of the performance prong of *Strickland*. The only new evidence Petitioner presented in support of the claim in his seventh ground were the habeas depositions of Attorneys Blakeslee and Warhola to establish deficient performance. (*See* ECF No. 85-1, PageID 8265–67.) All of the evidence Petitioner presented to demonstrate prejudice had been previously considered by the state courts during Petitioner's initial postconviction proceedings, and thus was part of the record before this Court in its § 2254(d) review of the state court's decision. In Petitioner's initial state postconviction proceedings, the Ohio Court of Appeals relied on only the prejudice prong of *Strickland* to deny Petitioner's ineffective assistance claim. *See Johnson*, No. 2006-CA-04, 2007 WL 1098106, at *14–15 (Ohio 5 App. Dist. Apr. 10, 2007). As the Court explained in its Opinion and Order, *Pinholster* limited the record to that before the state court in Petitioner's initial postconviction proceedings only as to review of the state court's prejudice determination, but the deficient performance prong would be reviewed *de novo* without any such limitation on the record:

> Because the decision of the Ohio Court of Appeals in Petitioner's initial post-conviction proceeding was the last state court adjudication on the merits of Petitioner's claim, the Court reviews that decision here. When a state court relies on only one prong of *Strickland* to decide an ineffective assistance claim, as the Ohio Court of Appeals did here, the unadjudicated prong is reviewed *de novo*. *Raynor v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012). Accordingly, the Court will examine the deficient performance prong *de novo* and the prejudice prong will be subject to AEDPA deference. . . . [T]his means that the Court's review of *prejudice* is limited to the record before the Ohio Court of Appeals in Petitioner's initial state post-conviction proceedings.

(ECF No. 136, PageID 11036 (emphasis added).)

9

The Court then proceeded, on the basis of all of the evidence presented, to find that Petitioner had not satisfied the standard for deficient performance under *Strickland*: "First, the Court finds that counsel's performance was well within the 'range of professionally competent assistance,' even under a *de novo* standard of review." (*Id.* at PageID 11038, *quoting Strickland v. Washington*, 466 U.S. 668, 687 (1984) (internal citation omitted).) In other words, *Pinholster* did not exclude any evidence in support of Petitioner's seventh ground as all of the new evidence he presented was in fact considered by the Court in its *de novo* review of counsel's performance.

In Petitioner's eighth ground for relief, he claimed ineffective assistance from counsel's failure to investigate or present expert testimony in mitigation regarding his potential neurological deficits, possible behavioral effects of diabetes, and the effects of growing up amid the rampant racism of rural Alabama in the 1960s and 70s. (ECF No. 86, PageID 9266–77.) In addition to the record before the state appellate court when it adjudicated his claim on the merits in postconviction, Petitioner presented new evidence he developed during federal habeas, including the report of neuropsychologist, Dr. Nicholas Doninger, in support of his neurological deficit and diabetes claims and an article written by Martin Luther King, Jr., as evidence of the culture of his rural county in Alabama during his childhood. He also presented counsel's habeas depositions to show that counsel did not consider hiring experts to examine potential neurological deficits, symptoms of diabetes, or the racism of his upbringing.

10

As to Petitioner's allegation that counsel failed to investigate or present evidence of potential neurological deficits, the Court explicitly considered the effect of Dr. Doninger's report and concluded that it did not show that Petitioner was prejudiced. (ECF No. 136, PageID 11062.)  The Court found that "the mental deficiencies Dr. Doninger cataloged are not altogether new or different than those identified by Dr. Jackson at trial. . . . The neuropsychological evidence does not provide new information relative to the psychological evidence presented at trial that it could have had any probable effect on the outcome." (ECF No. 136, PageID 11062.) Even if the habeas depositions were capable of altering the Court's analysis of counsel's performance, the lack of prejudice is decisive.

Dr. Doninger's report also does not alter the Court's conclusion that Petitioner was not prejudiced by counsel's failure to present evidence of the potential effects of diabetes. Any such effect on Petitioner's behavior the morning of the murder is entirely speculative and impossible to disentangle from the effects of Petitioner's drug and alcohol use, whether or not Dr. Doninger's report is considered. Dr. Doninger did not actually make any findings as to the effects of diabetes on Petitioner's cognitive functioning—either at the time of his examination in 2011 or at the time of the murder in 2003. (*See* ECF No. 85-1, PageID 8539.) He merely cited diabetes as one of the factors in Petitioner's background that could contribute to the impaired executive function he observed in 2011:

> Several events in his background reveal poor judgment and impulse control suggestive of executive dysfunction. The etiology of his current executive impairments is multi-factorial in nature reflecting the residual effects of traumatic brain injuries (TBIs) and poly-substance

> abuse. In addition, Mr. Johnson has a history of hypertension and poorly controlled diabetes placing him at risk for ischemic stroke possibly involving brain structures responsible for executive functioning.

(*Id.*) With or without Dr. Doninger's report, Petitioner has not established as anything more than hypothesis that the effects of diabetes led to diminished mental capacity at the time of the murder. Speculation based on nothing more than the fact that Petitioner had both mental impairment—of which the jury heard evidence—and untreated diabetes had no reasonable probability of affecting the verdict.

Nor does Attorney Warhola's deposition alter the determination that counsel performed effectively in light of the fact that counsel had already retained a psychologist and substance abuse expert to testify as to Petitioner's mental problems and drug use. Even if the Court were to accept that counsel's failure to consider hiring an endocrinologist meant that their investigation was less than complete, a reasonable standard of professional competence does not require counsel to seek out multiple experts of every tangentially-relevant specialty to speculate as to possible contributing causes of Petitioner's mental deficiencies. *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.") Counsel investigated and presented evidence of Petitioner's mental impairment to the jury, and the failure to fully investigate every speculative theory as to potential causes does not render counsel's investigation constitutionally deficient.

And on the third subclaim concerning counsel's failure to present a cultural expert in mitigation, the only new evidence presented was the depositions of trial

counsel and the King article, neither of which provides any new information capable of affecting the outcome in habeas. The King article portrays generally the racial atmosphere of the county where Petitioner grew up, but Dr. Kwame'-Osagyefo Kalimara's report about the particular effects of racism on Petitioner and his family members' descriptions of the racism they and Petitioner witnessed and experienced growing up—presented in Petitioner's initial postconviction proceedings and therefore part of the state record this Court reviewed—remain far stronger evidence as to Petitioner's experiences and its effects on him.

In Petitioner's ninth ground for relief, he claims ineffective assistance based on counsel's failure to investigate his history of drug abuse and present a competent substance abuse expert.[2] The first ground of his claim—that counsel conducted a substandard investigation—was presented to the state courts in his initial postconviction petition and decided on the merits by the Ohio Court of Appeals. The only new evidence presented in his habeas petition that was not previously considered by the Ohio Court of Appeals when it adjudicated the claim is the habeas depositions of his trial counsel, presented here to show deficient performance. The Court held that the state court's determination that Petitioner had not suffered prejudice was reasonable, but did not reach the performance prong of *Strickland*. (ECF No. 136, PageID 11082.) Like in Petitioner's fourth ground, the prejudice

---

[2]The second ground of Petitioner's claim—that counsel failed to present a competent substance abuse expert—was procedurally defaulted because it was only raised for the first time in Petitioner's second state postconviction petition. (ECF No. 136, PageID 11085.)

finding alone is fatal to his claim, as the Court explicitly recognized in its opinion: "Even if trial counsel did fail to conduct an effective investigation—an issue which the Court does not reach—it does not constitute ineffective assistance when the evidence that counsel failed to discover does not change the sentencing profile and could not have affected the outcome." (*Id.* at PageID 11082.)

It is also worth mentioning that Petitioner did not re-present his failure-to-investigate allegation with the addition of trial counsel's habeas depositions to the state courts in his second postconviction petition. Therefore, the new evidence would be barred from consideration by *Pinholster* even under Petitioner's preferred interpretation.

In Petitioner's thirteenth ground for relief, he claimed ineffective assistance of appellate counsel based on appellate counsel's failure to raise on appeal the errors of the trial court and trial counsel for, respectively, allowing improper hearsay evidence in violation of the Confrontation Clause and failing to continuously object to the improper hearsay evidence. The only new evidence presented in federal habeas that was not before the Ohio Supreme Court when it dismissed the claim on the merits were the depositions of Petitioner's appellate counsel, Kathleen McGarry and Dennis Sipe. Despite finding that *Pinholster* barred consideration of the depositions, the Court also concluded that the new evidence would not affect the outcome:

> Regardless, the outcome would be the same with the inclusion of the [depositions]. The new evidence is only relevant to the question of counsel's performance, meaning that even if the [depositions] revealed that that performance was deficient, the ineffective assistance claim

> would still fail for lack of prejudice. But the [depositions] also do not
> establish that counsel's performance was substandard.

(ECF No. 136, PageID 11174–75.) Thus, all of the new evidence was in fact already
considered by the Court in its Opinion.

Finally, Petitioner raised several claims of ineffective assistance of trial
counsel in his nineteenth ground, two of which relied on counsel's habeas
depositions to demonstrate deficient performance. In the first instance, Petitioner
complained that counsel mishandled the issue of his competency at trial. The Court
held that the Ohio Supreme Court's conclusion on direct appeal that Petitioner had
shown neither deficient performance nor prejudice was reasonable. (*Id.* at PageID
11209–11.) As in Petitioner's fourth and eighth grounds for relief, the lack of
prejudice alone is decisive and the new evidence is irrelevant to that finding. Thus,
even if the Court considered the depositions *and* decided that counsel had
performed ineffectively, the outcome would be the same.

In the second instance, Petitioner claimed counsel's failure to object when the
trial court read the full list of statutory mitigating factors to prospective jurors
during *voir dire* was ineffective assistance and cited counsel's habeas depositions, in
which Attorneys Blakeslee and Warhola disagreed on the propriety of reciting the
full list of factors to the jury, as evidence of error. The exclusion of the depositions
due to *Pinholster* was irrelevant to the outcome though because the Court denied
the claim solely based on a lack of prejudice. (*Id.* at PageID 11213–14.)

In each of the seven grounds Petitioner cites as an example of manifest
injustice due to *Pinholster*'s bar on consideration of new evidence, the new evidence

presented would not have changed the outcome. Thus, even under Petitioner's own expansive definition of manifest injustice—and setting aside the absence of any legal error in the Court's opinion—the exclusion of the new evidence here is not manifest injustice.

Petitioner also contests the Court's reasoning that *Hughbanks v. Hudson* should be understood as limited to procedurally-defaulted *Brady* claims, arguing that the Sixth Circuit never said as much. (ECF No. 138, PageID 11302–03.) In *Hughbanks*, the Sixth Circuit considered new evidence collected during federal habeas proceedings in support of a procedurally-defaulted *Brady* claim. 2 F.4th 527 (6th Cir. 2021). The *Brady* claim had been previously adjudicated on the merits in state court on a record that did not include the evidence later gathered during habeas, and then dismissed on jurisdictional grounds when presented later with the new evidence in a second or successive state postconviction petition. In such circumstances, a federal habeas court will look through to the previous merits decision in state court, upon which the later state-court dismissal on procedural grounds has no affect. *See Williams v. Houk*, 676 F. App'x 524, 538 (6th Cir. 2017) (holding that review is limited to the record on direct appeal when the state court decided the claim on the merits, excluding evidence presented in state postconviction when the claim was dismissed as *res judicata*); *cf. Cone v. Bell*, 556 U.S. 449, 466–67 (2009) ("[W]hen a state court declines to revisit a claim it has already adjudicated, the effect of the later decision upon the availability of federal habeas is 'nil' because 'a later state decision based upon ineligibility for further

16

state review neither rests upon procedural default nor lifts a pre-existing procedural default.'") (*quoting Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991)).

But here, as the Sixth Circuit explained in its opinion, "Hughbanks limit[ed] his *Brady* claim [on appeal] to the grounds presented in his second state post-conviction application, relying exclusively on the evidence he obtained during federal discovery,"[3] and thus the *Brady* claim before the Sixth Circuit on appeal did not include the grounds that had been previously adjudicated on the merits in state court. *Id*. at 535, *citing* Appellant Br. at 35 & n.4. Whereas the state court's dismissal of Hughbanks's second postconviction petition on jurisdictional grounds would typically play no role in federal habeas review of the prior state merits adjudication, without a prior state merits adjudication pertaining to the only grounds raised in the Sixth Circuit, the dismissal instead served to procedurally default the claim. Procedural default bars federal habeas review unless the petitioner can show cause for the default and prejudice from the underlying constitutional violation. But as the court explained, the merits of a *Brady* claim can also serve as the cause and prejudice to excuse its procedural default:

> Because the Ohio Court of Appeals applied a state-law procedural bar to reject Hughbanks's *Brady* claim, we consider his claim to be procedurally defaulted. *Bies*, 775, F.3d at 396. Generally, "[u]nexcused procedural default precludes federal habeas review. However, federal courts can excuse procedural default upon a showing of either cause and prejudice or a fundamental miscarriage of justice." *Id*. (internal citations

---

[3]Contrary to Petitioner's assertion that this Court erroneously "claimed" Hughbanks's *Brady* claim was limited to the grounds raised in his second state postconviction, (ECF No. 138, PageID 11302), the Court was in fact citing the Sixth Circuit's own description of the claims before it and the applicable standard of review.

omitted). When considering procedurally defaulted *Brady* claims, the Supreme Court has held that two of the three elements of an alleged Brady violation, whether the evidence was suppressed by the State and whether such suppressed evidence was material, constitute the required cause and prejudice to excuse procedural default. *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Thus, if Hughbanks can demonstrate a meritorious *Brady* violation, he will have also made the requisite showing of cause and prejudice, allowing us to grant habeas relief.

*Hughbanks*, 2 F.4th at 535. In other words, the claim would not have been reviewed on the merits but for the fact that the merits of the defaulted *Brady* claim can also serve as the cause and prejudice necessary to excuse the default. Had the defaulted claim been anything other than a *Brady* claim, the cause for the default reviewed by the court would not have included the merits of the defaulted claim.

To assume, as Petitioner does, that the consideration of new evidence in *Hughbanks* was not particular to the procedural posture of a defaulted *Brady* claim but instead the announcement of a brand-new standard for considering new evidence in habeas more broadly, one would need to entirely disregard the Sixth Circuit's own explanation for the standard of review in the case, *see Hughbanks*, 2 F.4th at 535. One would also have to assume that the court chose, without any explanation of its intent, to repudiate all prior circuit precedent applying *Pinholster*. And that the court selected as the vehicle to announce its new standard for § 2254(d) review of state court decisions a claim to which § 2254(d) does not apply based on existing doctrine. *See Ege v. Yukins*, 485 F.3d 364, 379 n.7 (6th Cir. 2007) (holding that a claim is reviewed *de novo* as cause to overcome procedural default even if it is subject to AEDPA deference when reviewed as a free-standing claim).

18

These are not assumptions the Court will make without some indication from the Sixth Circuit that this was its intent.

Because Petitioner has not shown clear error or manifest injustice in the Court's application of *Pinholster* to limit review under § 2254(d) to the record before the state court when it adjudicated the claim on the merits, he is not entitled to an amendment or alteration of the judgment. Therefore, his motion with regard to the application of *Pinholster* to his fourth, sixth, seventh, eighth, ninth, thirteenth, and nineteenth grounds for relief is **DENIED**.

## B. Sixth Ground for Relief

In his sixth ground for relief, Petitioner claimed ineffective assistance of counsel based on counsel's failure to investigate or present testimony from family members in mitigation. The Court denied the claim, finding that Petitioner had failed to show that the state court's decision was contrary to or an unreasonable application of federal law, or based on an unreasonable determination of the facts. (ECF No. 136, PageID 11021, 11032.) Petitioner now asks the Court to either amend or alter its decision based on clear error of law. (ECF No. 138, PageID 111314.) He primarily reiterates the arguments previously offered in his Amended Petition (ECF No. 86) and Traverse (ECF No. 131), but avers that the Court's application of *Strickland*, *Wiggins*, and *Williams* to the facts of his case was a clear error of law—albeit without identifying the precise error he believes the Court made other than his general disagreement with the Court's assessment of the significance of the evidence. (*Id.* at PageID 11307–14.)

19

"A 'mere disagreement' with a court's initial decision will not support a Rule 59(e) motion." *Penley v. NPC Int'l, Inc.*, No. 13-1031, 2014 WL 12634410, at *2 (W.D. Tenn. Dec. 3, 2014), aff'd sub nom. *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261 (6th Cir. 2015), *citing Slate v. Am. Broad. Cos., Inc.*, 12 F. Supp. 2d 30, (D.D.C. 2013). As Respondent correctly points out, Petitioner's motion simply regurgitates his previous arguments that counsel's performance was deficient and he suffered prejudice in light of the testimony that his family members could have provided had they testified at his mitigation hearing. (ECF No. 139, PageID 11336–37.) These arguments were fully considered and decided in the Court's Opinion and Order (ECF No. 136), and the Court declines to re-address them here on Petitioner's attempt to have a second bite at the same apple. Therefore, Petitioner's request to alter or amend the judgment with regard to his sixth ground for relief is **DENIED**.

## C.  Request to Amend COA

If the Court will not amend its judgment, Petitioner requests that the issues raised in this motion instead be certified for appeal. The Court is not persuaded. "[A] claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable.*" *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (emphasis in original). Petitioner contends that reasonable jurists would find debatable whether Attorney Warhola's conversation with Iveryl Robinson about the outburst on the last day of trial was effective assistance. (ECF No. 138, PageID 11308.) But the question to be asked when considering a certificate is not whether the ineffectiveness of counsel is debatable, but whether any reasonable jurist would debate that the state court's decision was not objectively unreasonable under the

standards of §2254(d). *See Moody*, 958 F.3d at 488 ("If no fair-minded jurist (even one sympathetic to the claim) could doubt that the state-court decision was defensible, the claim should not be certified."). In other words, if it is merely the ineffectiveness of counsel that is debatable, AEDPA deference requires the Court to deny relief because the state court's decision was not objectively unreasonable.

Petitioner also argues that the "open question" left unresolved by *Pinholster*—how diligent petitioners with new evidence supporting an existing claim would be able to present that evidence to a federal court—must be considered by the Sixth Circuit. (ECF No. 138, PageID 11300.) Perhaps so, but Petitioner's case is not the appropriate vehicle for consideration because—as explained above—the exclusion of Petitioner's new evidence was not outcome determinative. "[A] court should not certify an ineffective-assistance-of-counsel claim where deficiency may exist but the lack of prejudice is indisputable (or vice versa). Again, a certificate is improper if *any* outcome-determinative issue is not reasonably debatable." *Moody*, 958 F.3d at 488, *citing Strickland*, 466 U.S. at 687 (emphasis in original) (internal citations omitted).

Because the Court concludes that there is no substantial reason to believe the denial of relief is incorrect, Petitioner's request to amend the COA to include the issues raised in his Rule 59(e) motion is **DENIED**.

### D. Request for Evidentiary Hearing

Petitioner asserts that it is clear error and a manifest injustice for the Court not to conduct an evidentiary hearing under § 2254(e)(2). (ECF No. 138, PageID 11304.) To hold an evidentiary hearing, § 2254(e)(2) requires a petitioner to show

that his claim relies on a new rule of constitutional law made retroactive or a factual predicate that could not have been discovered earlier **and** that the underlying facts establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the offense but for the constitutional error. Setting aside whether any of Petitioner's claims could even meet the standard of § 2254(e)(2)(B), § 2254(e)(2) applies to limit district courts' discretion to hold an evidentiary hearing "where § 2254(d)(1) does not bar federal habeas relief." *Pinholster*, 563 U.S. at 185, 186 n.10. But the Court is "precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013), *citing Pinholster*, 563 U.S. at 184–85, and *Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011); *Sheldon v. Black*, No. 20-4156, 2021 WL 1654419, at *3 (6th Cir. Apr. 20, 2021) ("[J]urists of reason would agree that the district court properly denied Sheldon's motion for an evidentiary hearing because the court was obligated to decide the § 2254 petition based solely on the state court record.") (*citing Pinholster*, 563 U.S. at 181–82, and *Mitchell v. Genovese*, 974 F.3d 638, 650 (6th Cir. 2020)). As the Sixth Circuit explained, "[w]hile allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* precludes it." *Ballinger*, 709 F.3d at 562; *see also Pinholster*, 563 U.S. at 185 ("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review."). Petitioner was not entitled to an evidentiary hearing on

22

his claims, and he has failed to show either court error or manifest injustice in the Court's decision to deny his claims without granting one.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's motion to alter or amend the judgment.


**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**